**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

LEGENDS COLLISION, LLC, *et al.*,

                       Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, *et al.*,

                       Defendants.

**Case No. 6:14-MD-02557-GAP-TBS**

**RE: No. 6:14-CV-06006-GAP-TBS**

## GEICO CASUALTY COMPANY, GEICO GENERAL INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GOVERNMENT EMPLOYEES INSURANCE COMPANY, CSAA FIRE & CASUALTY INSURANCE COMPANY, METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, METROPOLITAN GROUP PROPERTY AND CASUALTY INSURANCE COMPANY AND METROPOLITAN CASUALTY INSURANCE COMPANY'S MOTION AND SUPPORTING MEMORANDUM TO DISMISS COMPLAINT

Defendants  GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company, Government Employees Insurance Company (collectively, "GEICO") CSAA Fire & Casualty Insurance Company and Metropolitan Property and Casualty Insurance Company, Metropolitan Group Property and Casualty Insurance Company and Metropolitan Casualty Insurance Company move to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  The grounds and authority for this motion are set forth in the following supporting memorandum, which is incorporated as part of this motion.

## MEMORANDUM

In June 2014, this Court dismissed the complaint in *A&E Auto Body, Inc., et al. v. 21st Century Centennial Ins. Co., et al.*, No. 6:14-cv-310-Orl-31TBS, (M.D. Fla. June 11, 2014) (Doc. 110) ("*A&E* June 2014 Order"), because, among other reasons, plaintiffs in that case (represented by the same counsel) failed to make any competent factual allegations that GEICO engaged in any wrongful conduct.

Nearly five months after this Court's order dismissing the complaint in *A&E*, Plaintiffs in this case filed their Complaint.  Doc. 1.  The allegations in *A&E* and the Complaint are substantively identical and Plaintiffs continue to ignore the Court's previous Order dismissing a nearly identical and facially-flawed complaint.

When this Court dismissed the *A&E* complaint in June it held that the complaint there, as is true here, "suffers from a host of problems," the most serious of which included:

- "[T]he Complaint is a prohibited 'shotgun pleading,' with each count incorporating irrelevant allegations" from the fact section of the complaint;
- "The Complaint fails to identify which Plaintiffs have DRP agreements with which (if any) Defendants"; and
- "With limited exceptions, the allegations of wrongdoing are attributed, collectively, to every Defendant and alleged to have been perpetrated upon every

---

[1]  This Motion refers to "GEICO" throughout, but the arguments made apply equally to CSAA Fire & Casualty Insurance Company, Metropolitan Property and Casualty Insurance Company, Metropolitan Group Property and Casualty Insurance Company and Metropolitan Casualty Insurance Company.

Plaintiff. While there may be situations in which such collective descriptions are sufficient, at least some of claims asserted here require individualized allegations."

*A&E June 2014 Order.* Plaintiffs here decided not to fix their facially-deficient claims, knowing as much.[2]

In January 2015, this Court again dismissed an amended complaint – identical in substance to the instant complaint. *A&E* Jan. 21, 2015 Order, amended January 22, 2015 to correct scrivener's error (Doc. 293) ("*A&E* January 2015 Order"). Applying Florida law, this Court dismissed claims for *quantum meruit*, unjust enrichment, quasi-estoppel, tortious interference and conversion. Here, the state law claims alleged by Plaintiffs are unjust enrichment, quasi-estoppel, tortious interference and conversion. With respect to these claims, the allegations are nearly identical to the allegations dismissed by this Court in *A&E*. Further, as to these claims, the central elements relied upon by this Court in dismissing these claims in *A&E* are functionally equivalent to the corresponding elements under Arizona law.[3] Accordingly, the instant unjust enrichment, quasi-estoppel, tortious interference and conversion claims should be dismissed.

Also in its January 2015 Order, this Court dismissed the *A&E* antitrust claims. The Court held the allegations were insufficient as a matter of law to prove a conspiracy existed or that any of the defendant-insurers – including GEICO – joined the purported conspiracy. *A&E* January 2015 Order at 17-21. The *A&E* January 2015 Order concluded that the

---

[2] *See* Stacey Phillips, *Antitrust Multidistrict Litigation in FL Motions Granted in Part and Denied in Part*, Autobody News (January 23, 2015), http://autobodynews.com/2014-07-31-03-39-53/industry-news/item/9474-updateonantitrustmultidistrictlitigationinfl.html ("John Eaves . . . the lead lawyer . . . said this was not a surprise. 'We anticipated [the dismissal],' said Eaves. 'This is what was done the first time we filed a complaint in Florida. My interpretation is that [Judge Presnell] wanted a lot more of the actual facts and details in the complaint… instead of something so general.'").

[3] This Court asked Defendants to explain if and how the common law of any state in which an action was originally filed differs from Arizona law with respect to the state common law claims. As GEICO has demonstrated, with regard to the elements of each common law cause of action that led this Court to dismiss the claim in *A&E,* Arizona law mandates the same result because the analysis of the specific elements this Court considered in *A&E* is substantially similar given the nearly identical facts alleged here. GEICO does not, however, concede that Arizona law and Florida law are otherwise identical on these causes of action, as different factual allegations or analysis of different elements of the causes of action would require further focus on Arizona law.

allegations only tended to prove that the defendant-insurers were lawfully acting out of their own economic self-interest, rather than acting pursuant to any allegedly illegal agreement. *Id.* at 17-18. The U.S. Supreme Court has made clear that antitrust conspiracy allegations must contain facts that create a plausible theory of an actual conspiracy and that the defendant joined that conspiracy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009); and their progeny. Plaintiffs fail to meet their pleading obligation. Notably, Plaintiffs' Complaint does not contain any allegations of face-to-face meetings, phone calls, emails, texts or letters, or trade association meetings involving GEICO, nor does it allege that pricing information was shared with or by GEICO, or of even a "wink and a nod" towards or by GEICO. Plaintiffs have not alleged a single fact—plausible or otherwise—that GEICO did anything whatsoever that could support a Sherman Act conspiracy claim against it. With respect to the antitrust claims, the allegations here are nearly identical to the allegations dismissed by this Court in *A&E*. The law is exactly the same. Accordingly, the instant antitrust claims should be dismissed.

In addition to this Court's June 2014 and January 2015 Orders in *A&E*[4], the instant complaint should be dismissed because:

1.  *Plaintiffs' "shotgun" pleading and nonspecific references to "Defendants" are improper.* Plaintiffs' 160-paragraph Complaint includes six causes of action, each of which purport to incorporate each allegation in the Complaint. The Eleventh Circuit Court of Appeals does not allow such "shotgun" pleading. Indeed, other than statements initially identifying the GEICO parties in Paragraphs 15-18 and GEICO's alleged percentage of the market share in Paragraph 58, the Complaint does not mention GEICO anywhere else, making nonspecific references to "Defendants" instead. The Eleventh Circuit Court of Appeals also

---

[4] Although GEICO acknowledges it has already made these, or similar, arguments in *A&E* and other briefs, GEICO maintains Plaintiffs' Complaint should be dismissed for these additional reasons and restates these arguments here so that these Plaintiffs have the opportunity to demonstrate otherwise. In particular, GEICO's additional arguments in favor of dismissal of Plaintiffs' Sherman Antitrust Act claims (sections III and IV) are nearly identical to similar sections in GEICO's *A&E* brief.

does not allow the repeated nonspecific references to "Defendants" that Plaintiffs attempt.

2.    *Plaintiffs' attempted antitrust claims do not allege any of the required substantive elements*.  The rule of reason applies to Plaintiffs' antitrust claims but, in addition to the elements of conspiracy and joining the conspiracy, Plaintiffs fail to allege the following substantive elements:

- A product/service market that is relevant for antitrust purposes.
- A geographic market that is relevant for antitrust purposes.
- Market power in a relevant product/service and geographic market.
- Barriers to entry.
- How the purported restraints result in anticompetitive effects.
- How purported anticompetitive effects outweigh the purported restraints' procompetitive benefits, particularly since Plaintiffs allege that the purported restraints lower prices.
- That they suffered antitrust injury from anticompetitive effects.

3.    *Plaintiffs' attempted state law claims do not allege necessary elements or satisfy the Twombly/Iqbal requirements*.  Plaintiffs fail to allege one or more required substantive elements for each of their purported state law claims.  And each of their attempted state law claims further fail to satisfy the *Twombly/Iqbal* plausibility requirement.

Furthermore, both this Court's June 2014 and January 2015 Orders in *A&E* gave specific directives on how to *start* to fix the instant complaint.  *A&E* June 2014 Order at 1-2; *A&E* January 2015 Order at 9-10, 14, 15, 17-21.  Plaintiffs ignored this Court's directives.  On this basis, the Court should dismiss the instant Complaint with prejudice.

I.    **DISMISSAL IS APPROPRIATE BECAUSE PLAINTIFFS FAIL TO ALLEGE PLAUSIBLE FACTS IN SUPPORT OF THE ELEMENTS OF THEIR CLAIMS AS TO GEICO**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A complaint is insufficient if it offers "only labels and conclusions."  *Id.*  The Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."  *Id.*  Conclusory

-4-

allegations are "not entitled to the assumption of truth" on a motion to dismiss. *Id.* at 679. Further, to survive a motion to dismiss, "[t]here must be 'more than a sheer possibility that a defendant has acted unlawfully.'" *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. Plaintiffs' Complaint against GEICO contains nothing more than labels, conclusory statements and threadbare recitals of the elements of various causes of action, and oftentimes, it lacks even such minimal pleading.

## II.   PLAINTIFFS' SHOTGUN PLEADING AND GROUP REFERENCE TO "DEFENDANTS" ARE IMPROPER

Plaintiffs in this case continue to improperly rely on "shotgun pleading." "Shotgun pleading is most commonly used to describe a Complaint in which each count incorporates by reference all of the preceding paragraphs and counts." *McMahon v. Hunter*, 2:06-CV-00179-34DNF, 2007 WL 1952906 (M.D. Fla. July 2, 2007); *see also Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (describing shotgun pleading as a complaint which "begin[s] with a long list of general allegations, most of which are immaterial to most of the claims for relief"). "The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." *Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir. 2001).

The Eleventh Circuit has frequently criticized this manner of pleading:

> Shotgun pleadings impede the administration of the . . . courts' civil dockets in countless ways. The . . . court, faced with a crowded docket and whose time is constrained by the press of other business, is unable to squeeze the case down to its essentials. It is therefore left to this court to sort out on appeal the meritorious issues from the unmeritorious ones, resulting in a massive waste of judicial and private resources; moreover, the litigants suffer, and society loses confidence in the courts' ability to administer justice.

*Peavy v. Black*, 476 Fed. Appx. 697, 699 (11th Cir. 2012) (alteration, citation and quotation marks omitted) (quoting *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802,

806 n.4 (11th Cir. 2010)).  It is neither the job of defense counsel nor the trial court to sift through the pleadings to determine which facts are material to which causes of action. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009).  This Court has already dismissed a nearly identical shotgun-pled complaint for this very reason.  *A&E* June 2014 Order at 1.

Plaintiffs also may not plead in the "common" or "group" rather, Plaintiffs must adequately connect specific defendants to the acts they are alleged to have committed.  *See Pierson v. Orlando Reg'l Healthcare Sys., Inc.,* 619 F. Supp. 2d 1260, 1271-74 (M.D. Fla. 2009) *aff'd,* 451 F. App'x 862 (11th Cir. 2012) (holding that the lumping together or "[t]he grouping of Defendants . . . does not afford these Defendants fair notice of the basis for the claims against them," particularly in situations where the role of each Defendant in the conduct at issue is not described).  When a plaintiff alleges nothing about a defendant, as Plaintiffs continue to do here with respect to GEICO, the claims are not plausible and fail as a matter of law.  *Id.*; *see also Synergy Real Estate of SW Florida, Inc. v. Premier Prop. Mgmt. of SW Florida, LLC*, No. 2:11-CV-707- FTM-29, 2012 WL 4009534, at *2 (M.D. Fla. Sept. 12, 2012) (holding that "indiscriminately lumping 'defendants' together" fails to comply with Federal Rule of Civil Procedure 8).  Plaintiffs' Complaint improperly contains a laundry list of defendants grouped together with no particular allegations against GEICO or virtually any other Defendant.  In fact, Plaintiffs' allegations make every effort to conceal which Plaintiff may be alleging claims about what conduct against GEICO.  In this regard, Paragraph 52 alleges that each Plaintiff may have done business at some time "over the course of [an indeterminate number of] years" with at least one of Defendant's policyholders and claimants." Compl. ¶ 52.  Whether any Plaintiff has ever done any business at any time with any of GEICO's policyholders and claimants is not stated in the Complaint.

Plaintiffs' Complaint contains only conclusions and vacuous allegations—as to GEICO, there are no alleged statements or actions—and each of the six claims restate the

allegations set forth in all of the prior paragraphs.  Plaintiffs' Complaint as to GEICO should therefore be dismissed.

### III.   PLAINTIFFS' PURPORTED ANTITRUST CLAIMS DO NOT ALLEGE A PLAUSIBLE CONSPIRACY (OR ANY CONSPIRACY) INVOLVING GEICO

Plaintiffs' purported antitrust allegations do not state a plausible illegal conspiracy or that GEICO joined any allegedly illegal conspiracy.  This Court looked at nearly identical allegations in the *A&E* matter and held that the allegations do not state a plausible illegal conspiracy or that GEICO joined any allegedly illegal conspiracy.  *A&E* January 2015 Order at 15-21.  For these reasons, the instant antitrust allegations should be dismissed.

Further, this Court previously directed the plaintiffs to amend their antitrust allegations.  *A&E* June 2014 Order at 1-2; *A&E* January 2015 Order at 17-21.  Plaintiffs apparently made the tactical decision not to amend.[5]  For this reason, the antitrust claims should be dismissed with prejudice.

Plaintiffs' antitrust conspiracy claims turn on the adequacy (or, rather, inadequacy) of the generalized conspiracy allegations.  *See* 550 U.S. at 555-56.  In *Twombly*, the plaintiffs generally alleged that the defendants in that case acted similarly, or "in parallel," with each other, so they must have been "conspiring" together to violate Section 1 of the Sherman Act.  *Id.* at 550-51; *A&E* January 2015 Order at 18, 20.  The Supreme Court made clear that such generalized allegations, without express allegations of any plausible facts tending to prove an actual conspiracy, fail to state a claim.  *Twombly*, 550 U.S. at 556-57.  As this Court has held, antitrust plaintiffs must allege plausible facts demonstrating (a) how the defendants conspired together and (b) how a particular defendant, like GEICO, joined the illegal conspiracy.  *A&E* January 2015 Order at 17 ("Plaintiffs offer no details at all in the Amended Complaint about

---

[5] This is not the first time Plaintiffs' counsel made a tactical decision not to amend despite knowing the claims would be dismissed.  The instant Plaintiffs ignored this Court's *A&E* June 14 Order and did not fix the flaws this Court identified in that Order.  After the *A&E* Order by this Court on January 21, 2015, *A&E* January 2015 Order, and this Court's Order directing Plaintiffs to amend and fix the complaint, *A&E* June 2014 Order, as noted above, Plaintiffs' lead counsel admitted he knew that the Court would be dismissing the *A&E* complaint.

the alleged agreement, such as how the Defendants entered into it, or when."); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319-22 (3d Cir. 2010); *see Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989) (failure to "identify the alleged conspirators, when or how they functioned, or the nature and extent of [the defendant's] participation in the alleged conspiracy" warranted dismissal of complaint for failure to "state a claim of horizontal price-fixing").

With respect to the conspiracy element, the Sherman Act also requires the agreement amount to "a conscious commitment to a common scheme designed to achieve an unlawful objective," not simply concerted activity. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). As this Court explained, "[t]o prove an agreement to restrain trade, a plaintiff must demonstrate a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *A&E* January 2015 Order at 20 (citing *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 569 (11th Cir. 1998)). "A naked allegation of conspiracy or agreement, without more specific factual allegations, *is not to be accepted as sufficient to state a claim under Section 1 of the Sherman Act.*" *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (emphasis added).

*Twombly* also recognized that "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." 550 U.S. at 558. To prevent prolonged and costly discovery in antitrust cases, the Supreme Court limited the range of inferences that can be drawn at the pleading stage from bare allegations of parallel conduct. *See id.* at 559-60. "[I]t is only by taking care to require allegations that reach the level suggesting a conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence to support a § 1 claim." *Id.* (citations omitted). GEICO should not be required to defend itself in a long and protracted litigation when Plaintiffs have not even cited a single fact implicating GEICO

in any alleged conspiracy.

To fulfill their pleading requirement with respect to the alleged conspiracy, Plaintiffs must allege facts showing that:

1. GEICO knew about the alleged conspiracy **and** its unlawful objective;

2. GEICO intended to join the alleged conspiracy; and

3. GEICO acted in a manner that was interdependent with – not independent of – the other Defendants in that GEICO's conspiratorial benefits depended on the success of the overall conspiracy.

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Communications, Inc.,* 376 F.3d 1065, 1078 (11th Cir. 2004) (stating elements of conspiracy); *see also United States v. Tarantino*, 846 F.2d 1384, 1392 (D.C. Cir. 1988); *In re Vitamins*, 320 F. Supp. 2d 1, 15-17 (D.C. Cir. 2004); *A&E* January 2015 Order at 17-20.

Counts One and Two fail because Plaintiffs fail to allege any plausible facts tending to prove the Defendants agreed or conspired to engage in price fixing (Count One) or a boycott (Count Two) in *violation* of Section 1 of the Sherman Act.  Plaintiffs must allege that "the challenged anticompetitive conduct 'stem[s] from . . . an agreement, tacit or express'" with competitors and not from independent decisions.  *A&E* January 2015 Order at 16 (quoting *Twombly*, 550 U.S. at 553); *Twombly*, 550 U.S. at 557 ("An allegation of parallel conduct . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief.") (citations omitted); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy").  Plaintiffs also fail to allege any facts tending to show that GEICO or any Defendant made a conscious commitment to an unlawful objective.  *A&E* January 2015 Order at 20 ("To prove an agreement to restrain trade, a plaintiff must demonstrate a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement.  To adequately plead that such an agreement

exists requires allegations plausibly suggesting – not merely consistent with – agreement."). Plaintiffs' Complaint contains nothing more than a naked allegation of conspiracy.

In addition to failing to allege a conspiracy, Plaintiffs also fail to allege a single fact— plausible or conclusory—that GEICO **joined** the alleged conspiracy or agreed to conspire with any of the Defendants or 70 plus other insurance companies in Arizona.[6]  *See A&E* January 2015 Order at 17 ("To start with, aside from conclusory allegations that it exists, the Plaintiffs offer no details at all in the Amended Complaint about the alleged agreement, such as how the Defendants entered into it, or when.").  First, there are no allegations that GEICO knew of the purported conspiracy's general scope or purpose; Plaintiffs fail to allege that GEICO ever discussed or heard about the purported conspiracy.  *See* Compl. ¶¶ 122, 124-29 (alleging that Defendants generally engaged in the putative conspiracy, but *not* alleging facts tending to prove that GEICO knowingly or intentionally joined the purported conspiracy, or acted interdependently with the purported coconspirators).  Second, Plaintiffs fail to allege any facts tending to prove GEICO's purported intent to advance the unlawful purpose of the purported conspiracy.  *See id.*; *A&E* January 2015 Order at 20.  Third, Plaintiffs do not allege that GEICO and any of the Defendants took a single interdependent act for a common purpose.  *A&E* January 2015 Order at 20.  Indeed, the only fair reading of Plaintiffs' Complaint is that GEICO did nothing whatsoever, or, if it acted, GEICO acted entirely independent of the other Defendants.  In sum, Plaintiffs' allegations of a conspiracy are conclusory at best, and any allegations that GEICO knowingly and intentionally joined a conspiracy are nonexistent.  Plaintiffs therefore fail to state a valid antitrust conspiracy claim as a matter of law.

---

[6]  The Supreme Court in *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984) ruled that in a Section 1 claim, which is the only provision cited by Plaintiffs, it is fundamental that a plaintiff establish an agreement between two or more persons to restrain trade and that unilateral or independent conduct is not actionable.  In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986), the Court held that antitrust claimants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary" where "the factual context renders [the] claim implausible," such as where the number of competitors is high and "the claim is one that simply makes no economic sense."

**IV.**  **PLAINTIFFS FAIL TO ALLEGE THE REQUIRED SUBSTANTIVE ELEMENTS OF THEIR ANTITRUST CLAIMS**

Count One of the Complaint is subject to the rule of reason because Plaintiffs do not allege facts tending to prove that the alleged conduct is the type of hard core pricing conduct that is subject to the *per se* illegal test.  *Iqbal,* 556 U.S. 679-80; *see also Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006) (explaining the rule of the reason is the presumptive standard); *Cha-Car, Inc. v. Calder Race Course, Inc.*, 752 F.2d 609, 613 (11th Cir. 1985) ("The *per se* doctrine should not be extended to restraints of trade that are of ambiguous effect; any departure from the rule of reason standard must be based upon demonstrable anticompetitive economic effect, rather than formalistic line drawing.").  Here, as alleged, the purported pricing conduct is efficiency-enhancing and lowers costs that are used to set premiums charged to consumers.  Compl. ¶¶ 82, 84-86.  Boycott claims are also subject to the rule of reason when plausible justifications exist, as do with respect to Plaintiffs' Count Two.  *Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*, 472 U.S. 284, 295-97 (1985)[7]; *Leegin Creative Leather Prods., Inc. v. PSKS, INC.*, 551 U.S. 877, 881-82 (2007); *Am. Needle v. Nat'l Football League*, 560 U.S. 183, 202-04 (2010).

Under the rule of reason, Plaintiffs must allege plausible facts that tend to prove:

1.   A product or service market that is relevant for antitrust purposes;

2.   A geographic market that is relevant for antitrust purposes;

3.   Market power in the relevant product/service and geographic markets;

4.   Barriers to entry;

5.   Wrongful conduct resulting in anticompetitive effect (*i.e.*, conduct that raises prices above competitive levels, suppresses payments below competitive levels, or suppresses output below competitive levels);

6.   The anticompetitive effects outweigh the pro-competitive benefits;

7.   Antitrust injury or standing (*i.e.*, plaintiff has suffered injury caused by the anticompetitive conduct); and

8.   Damages.

---

[7]   The Supreme Court applied the rule of reason to a group boycott because it "would seem to be designed to increase economic efficiency and render markets more, rather than less, competitive" by, among other things, reducing costs.  472 U.S. at 295 (internal quotation marks omitted).  The same is true here.  Plaintiffs allege that the purpose of the alleged group boycott is to reduce costs, by capping the maximum prices paid.  Comp. ¶ 137.

*See, e.g.*, *Image Technical Servs., Inc. v. Eastman Kodak, Inc.*, 125 F.3d 1195, 1202 (9th Cir. 1997) ("*Kodak*"); *Levine v. Cent. Florida Med. Affiliates, Inc.*, 72 F.3d 1538, 1552-54 (11th Cir. 1996) (stating the rule of reason test more generally);  *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US LLC*, No. 8:10-CV-2008-T-33TGW, 2011 WL 3035226, at *9-10 (M.D. Fla. July 25, 2011) (same); *Spanish Broad. Sys. of Fla.,* 376 F.3d at 1071-72 (same).  Plaintiffs fail to plead facts in support of these elements.

### A.     No Plausible Facts Supporting a Product/Service Relevant Market

In a rule of reason case, an antitrust claimant must allege plausible facts that tend to prove a relevant product or service market.  *See, e.g.*, *id.* at 1071-72; *Levine*, 72 F.3d at 1551; *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417-19 (5th Cir. 2010) (affirming dismissal based on conclusory and implausible relevant market allegations).  A product or service market that is relevant for antitrust purposes amounts to the "commodities reasonably interchangeable by consumers for the same purpose . . . , monopolization of which may be illegal."  *Moecker v. Honeywell Int'l, Inc.,* 144 F. Supp. 2d 1291, 1302-03 (M.D. Fla. 2001) (quoting *U.S. v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956)).  "To define a market is to identify producers that provide customers of a defendant firm (or firms) with alternative sources for the defendant's product or services."  *Levine*, 72 F.3d at 1552 (quoting 2A Phillip E. Areeda et al., *Antitrust Law* ¶ 530a at 150); *see also U.S. v. Rockford Memorial Corp.*, 717 F. Supp. 1251, 1261 (N.D. Ill. 1989) ("The geographic 'market [should be in an] area in which the seller operates, and to which the purchaser can practicably turn for supplies.'") (quoting *U.S. v. Philidelphia Nat'l Bank*, 374 U.S. 321, 359 (1963)); *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 995 (11th Cir. 1993) (holding that a relevant product market is primarily a process of describing those groups of producers which, because of the similarity of their products, have the ability – actual or potential – to take significant amounts of business away from each other).  A relevant market includes all existing firms that would compete in the event of a small but significant, non-transitory price increase.  *Id.*;

*Kodak*, 125 F.3d at 1203 ("Without a proper definition of the relevant market, it is impossible to determine a party's influence over that market."). Plaintiffs allege no facts tending to prove any relevant product or service market or even make conclusory allegations of a relevant product or service market.

## B.   No Plausible Facts Supporting a Relevant Geographic Market

Similarly, an antitrust claimant must allege plausible facts that tend to prove a relevant geographic market. *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010); *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 711-12 (11th Cir. 2014). A relevant geographic market is the geographic area of effective competition, including firms that would enter in the event of a price increase. *See, e.g.*, *Standard Oil Co. v. United States*, 337 U.S. 293, 299 n.5 (1949). Again, Plaintiffs allege no facts tending to prove a relevant geographic market. Arguably, the Complaint attempts to suggest the market at issue is the entire State of Arizona. Relying on an arbitrary state line or company marketing area, however, is insufficient as a matter of law. *See Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 626-27 (5th Cir. 2002) ("[T]he economic significance of a geographic area does not depend upon singular elements such as population, income, ***political boundaries***, or geographic extent, but rather upon the relationship between these elements and the characteristics of competition in the relevant product market within a particular area.") (emphasis added) (internal quotation marks omitted). There are reasons the relevant geographic market might be smaller (*e.g.*, Phoenix versus Flagstaff) or overlap two states (*e.g.*, variable actuarial standards and analyses may include Mohave Valley, AZ and Needles, CA), or might be nationwide (*e.g.*, marketing and advertising). Establishing a relevant geographic market is entirely Plaintiffs' burden, and Plaintiffs fail to allege any facts that establish a relevant geographic market or exclude other markets. *See*, *e.g.*, *id.* at 630-33 (affirming dismissal under Rule 12(b)(6) for failure to plead a plausible relevant geographic market); *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1071-74.

-13-

### C.  Plaintiffs' Market Share Allegations Are Immaterial under *Twombly and Iqbal*

Under the rule of reason, Plaintiffs must allege the putatively conspiring Defendants have market power in a properly-alleged relevant market.  *See, e.g.*, *Levine*, 72 F.3d at 1538, 1551; *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1073.  High market share – absent proper market definition – does not tend to prove market power and is inconsequential. Fed. R. Evid. 104(b), 401; *see Cont'l Airlines v. United Airlines*, 277 F.3d 499, 509 (4th Cir. 2002) (absent market power in a relevant market, any purported restraint of trade does not implicate Section 1 of the Sherman Act).  Again, Plaintiffs allege no facts tending to prove market power.

### D.  No Allegations of Barriers to Entry

Even if market share were meaningful (because Plaintiffs had alleged relevant product/service and geographic markets or otherwise, which they have not done), Plaintiffs' failure to allege barriers to entry in the relevant market is yet another reason that Counts One and Two fail.  *See, e.g.*, *Levine*, 72 F.3d at 1551, 1555; *Moecker v. Honeywell Int'l Inc.*, 144 F. Supp. 2d 1291, 1308 (M.D. Fla. 2001).  A barrier to entry is any market feature capable of constraining the normal operation of a relevant market to the extent that the relevant market is unlikely to be self-correcting over time.  *Kodak*, 125 F.3d at 1208.  But, if the purported barrier to entry does not prevent self-correction over time, then the claimant's antitrust claim fails.  *Id.*  To succeed in establishing barriers to entry under the rule of reason, Plaintiffs must also show that new competitors (or existing competitors with excess capacity) seeking to enter the relevant market face high market barriers to entry.  *See, e.g.*, *id.* at 1207-08; *Lockheed Martin Corp. v. Boeing Co.*, 390 F. Supp. 2d 1073, 1078, 1079, n.6 (M.D. Fla. 2005)

Plaintiffs' failure to allege barriers to entry is incurable in this instance, particularly given the fact that Plaintiffs concede that there are at least 72 companies already providing automobile insurance in Arizona.  Compl. ¶¶ 8-46, 58-59 and Ex. 1.  Where barriers to entry are low – that is, where new firms could readily enter or existing firms could readily expand capacity – a large market share does not indicate market power.  *See Nat'l Bancard Corp. v.*

*VISA USA Inc.*, 596 F. Supp. 1231, 1259 (S.D. Fla. 1984) (defendant would lack market power, even if it had a large market share, where there were no significant barriers to entry); *Reazin v. Blue Cross and Blue Shield of Kan., Inc.*, 899 F.2d 951, 968 (10th Cir. 1990) (substantial market power can persist only if there are significant and continuing barriers to entry).  After all, if barriers to entry were high, so many companies could not be providing insurance services in Arizona.

> **E.      No Allegation that the Purported Restraints, Even If True, Result in Anticompetitive Effects and that the Anticompetitive Effects Outweigh the Procompetitive Benefits**

In Count One, Plaintiffs fail to allege how the particular pricing conduct (*i.e.*, ensuring lower prices) might be anticompetitive.  *See, e.g.*, *Aspen Skiing v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985);  *Levine*, 72 F.3d at 1551 ("Rule of reason analysis requires the plaintiff to prove [ ] an anticompetitive effect of the defendant's conduct on the relevant market . . . .").  The anticompetitive effects element cannot be met by simply alleging a restraint—particularly when that restraint is merely lower prices.  Instead, Plaintiffs must allege how this purported restraint is anticompetitive; they have not.  Low prices generally do not raise antitrust concerns but, instead, are precisely the type of conduct the antitrust laws are designed to promote.  *See, e.g.*, *Matsushita Electric*, 475 U.S. at 594.  Low prices typically indicate competition, not the lack of it.  *See, e.g.*, *id.*  Indeed, Plaintiffs' own allegations state that there are at least 72 competitors engaging in inter-brand competition and prepared to capitalize on any anticompetitive conduct by GEICO. Compl.   ¶¶ 8-46, 58-59 and Ex. 1. Plaintiffs have only alleged a purported restraint, but they have not alleged plausible facts tending to prove that the purportedly illegal restraint is anticompetitive.

In Count Two, Plaintiffs allege a boycott of them—as suppliers, not competitors, of the Defendants.  In *Northwest Wholesale Stationers,* the Supreme Court held that a group boycott "does not necessarily imply anticompetitive animus and thereby raise a probability of anticompetitive effect."  472 U.S. at 295.  Since that decision, courts closely scrutinize group

boycott allegations for the adequacy of anticompetitive effects allegations.   Indeed, the Supreme Court held that rule of reason, as opposed to *per se*, analysis applies to agreements by buyers "to purchase goods and services from one supplier rather than another," even when there is "no legitimate business reason for that purchasing decision."   *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998).   The Complaint alleges a strong procompetitive benefit – lower prices – and that the purpose of the alleged boycott was to ensure these lower prices. Compl. ¶ 133.   Because Plaintiffs do not allege any cognizable anticompetitive effects whatsoever, Plaintiffs have not adequately alleged that the procompetitive benefits are outweighed by anticompetitive effects.   *Nw. Wholesale Stationers*, 472 U.S. at 296.

### F.    Plaintiffs Have Not Adequately Alleged Antitrust Injury

Finally, Plaintiffs have not made sufficient allegations of antitrust injury.   A claimant must show an "antitrust injury" to have standing to bring a Sherman Act claim.   *See, e.g.*, *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 540-42 (1983).   Because the antitrust laws protect competition and not competitors, many injuries – including direct injuries – suffered by plaintiffs are not cognizable under the antitrust laws.   *See*, *e.g.*, *id.; Tucci v. Smoothie King Franchises, Inc.*, 215 F. Supp. 2d 1295, 1299-300 (M.D. Fla. 2002) ("The purpose of the Sherman Antitrust Act is to protect competition, not individual competitors."); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1413 (7th Cir. 1989) ("The Sherman Act protects competition, not competitors, and does not reach conduct that is only unfair, impolite, or unethical.").   As a result, Plaintiffs must allege more than mere conclusory statements that they suffered injuries from the anticompetitive effects of purported restraints, and not simply injuries from Defendants' alleged goal of paying lower prices.   Plaintiffs fail to do so.   *See* Compl. ¶ 125.

## V.      PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW

### A.      Plaintiffs' Tortious Interference With A Business Relationship Claim (Count Three) Fails For The Same Reasons It Failed In *A&E* Because The Elements Relied On By This Court In *A&E* Are Functionally Equivalent To Arizona Law

Although Florida and Arizona law are not the same, the elements of intentional interference with a business relationship in Arizona are applied in the same way as the elements of a tortious interference with business relations claim in Florida on the deficiencies identified by this Court in *A&E* and Plaintiffs' claim here should be dismissed for the same reason this Court dismissed this claim in *A&E*.   In Arizona, a plaintiff must demonstrate (1) "the existence of valid contractual relationship or business expectancy;" (2) "knowledge of the relationship or expectancy" on the part of the interferer; (3) "intentional interference inducing or causing a breach or termination of the relationship or expectancy;" and (4) "resultant damage to the party whose relationship or expectancy has been disrupted." *Miller v. Hehlen*, 209 Ariz. 462, 471, 104 P.3d 193, 202 (Ariz. Ct. App. 2005) (quoting *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors,* 184 Ariz. 419, 427, 909 P.2d 486, 494 (Ariz. Ct. App. 1995)).   As in Florida, Arizona requires Plaintiffs to "identify a specific relationship with which defendant interfered . . . the speculative hope of a business expectancy is not enough."[8]

In *A&E,* this Court dismissed this claim because "no cause of action exists for tortious interference with a business's relationship to the community at large" and plaintiffs failed to demonstrate "actual or identifiable understandings or agreements" between plaintiffs and insureds.   *A&E* January 2015 Order at 14.   Plaintiffs' factual allegations here are nearly identical to those in *A&E* and likewise demonstrate that "so far as the [ ] Complaint discloses, the insureds to whom the Defendants made misrepresentations never had any contact with the

---

[8] *Compare ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, 871 F. Supp. 2d 905, 912 (D. Ariz. 2012) (quoting *Dube v. Likins*, 216 Ariz. 406, 414, 167 P.3d 93 (App. 2007)) *with Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985) (requiring "the existence of a business relationship, not necessarily evidenced by an enforceable contract" *and Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994) (requiring an "actual and identifiable understanding or agreement").

repair shop that was being disparaged," *id.*, much less a "specific relationship" that rises above "the speculative hope of a business expectancy." *See ThermoLife*, 871 F. Supp. 2d at 912; Compl. ¶¶ 109-14 (alleging that Defendants generally steer customers away from Plaintiffs but failing to describe any specific relationship between one or more repair shops and the insureds). The Complaint alleges unspecified insurers "steered" unspecified insureds, who might conceivably have considered one or more of the Plaintiffs for their auto repair work, to other shops to get cheaper prices. Because Plaintiffs do not identify specific third parties, or an identifiable class of third persons with whom valid and enforceable contracts or business expectancies existed, this claim should be dismissed.

The *A&E* Order also discussed whether the alleged interference could be considered "unjustified" given the Defendants' financial interest in the relationship. *A&E* January 2015 Order at 13. In Florida, if the defendant has a financial interest in the business relationship, the interference will be justified and privileged, so long as the defendant's actions were not otherwise "improper" (defined to include misrepresentations). *See A&E* January 2015 Order at 13. Just as in Florida, in Arizona, a defendant may interfere with another's prospective contractual rights for a legitimate competitive reason, such as a financial interest in the transaction. *See Hill v. Peterson*, 201 Ariz. 363, 366, 35 P.3d 417, 420 (Ariz. Ct. App. 2001) ("[S]omeone who interferes with the prospective contractual rights of another 'for a legitimate competitive reason does not become a tort-feasor simply because he may also bear ill will toward his competitor.'") (quoting *Bar J Bar Cattle Co., Inc. v. Pace,* 158 Ariz. 481, 485, 763 P.2d 545, 549 (App. 1988)).

Florida and Arizona both require the interference to be "unjustified" or "improper" to support a tortious interference claim, although the tests are different. In Florida, courts look at whether improper methods were used to accomplish the interference. *A&E* January 2015 Order at 13-14 (identifying improper methods as threats, intimidation, conspiratorial conduct, physical violence, misrepresentations, illegal conduct or threats of illegal conduct). Arizona

considers seven factors to determine if the interference was "improper." *See Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 387, 710 P.2d 1025, 1042 (1985) *superseded on other grounds by* A.R.S. §§ 23-1501-02  (The factors are "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties").  Plaintiffs have not alleged facts about GEICO to demonstrate improper conduct under *Wagenseller.*

Even if misrepresenting facts and failing to verify facts alone could be considered "improper" interference under Arizona law without considering the other *Wagenseller* factors, Plaintiffs' claim that **unspecified** Defendants "steered" **unspecified** customers away from their businesses by misrepresenting facts and failing to verify facts should be dismissed because it is not pled with the specificity required by Fed. R. Civ. P. 9(b).  *See* Compl. ¶ 141; *Postel Indus., Inc. v. Abrams Grp. Const., L.L.C.*, No. 6:11-CV-1179-ORL-28, 2012 WL 4194660, at *2 (M.D. Fla. Sept. 19, 2012) (holding that even negligent misrepresentation claims require heightened pleading); *Sweeney v. Darricarrere*, No. 2:09-cv-00266 JWS, 2009 WL 2132696, at *12 n.109 (D. Ariz. July 14, 2009) (same, applying Arizona law).  Even Fed. R. Civ. P. 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiffs provide no information to identify any misrepresentations made by GEICO (or any Defendant) to anyone.  *See* Compl. ¶ 141.

In addition to the reasons this Court dismissed this claim in *A&E*, this claim should be dismissed because Plaintiffs do not plead plausible facts to support that GEICO (or any Defendant) **knew** of any specific relationship or **intended** to cause the breach or termination of the relationship.  *Compare Miller*, 209 Ariz. at 471, 104 P.3d at 202 *with A&E* January

-19-

2015 Order at 12-13 (citing *Tamiami*, 463 So.2d at 1127) (requiring "knowledge" and "intentional interference").[9]   Further, because Plaintiffs improperly group all of the Defendants in their Complaint and it is impossible to analyze the elements of this cause of action with respect to GEICO, Plaintiffs' improper group pleading constitutes independent grounds for dismissal of this claim.

> **B.   Plaintiffs' Unjust Enrichment Claim (Count Four) Fails For The Same Reasons It Failed In *A&E* Because The Elements Relied On By This Court In *A&E* Are Functionally Equivalent To Arizona Law**

Although Florida and Arizona law are not the same, the elements of unjust enrichment in Arizona are applied in the same way as the elements of unjust enrichment/quasi-estoppel relied upon by this Court in *A&E* with respect to Plaintiffs' allegations.   In Arizona, as in Florida "a plaintiff must demonstrate that the ***defendant*** received a benefit, that by receipt of that benefit the defendant was unjustly enriched at the plaintiff's expense, and that the circumstances were such that in good conscience the defendant should provide compensation." *Freeman v. Sorchych,* 226 Ariz. 242, 251, 245 P.3d 927, 936 (Ariz. Ct. App. 2011) (emphasis added).[10]   In *A&E*, this Court dismissed this claim because "Plaintiffs have not conferred a benefit upon the Defendants." *See A&E* January 2015 Order at 9.   Just as in Florida, Plaintiffs here allege the repairs they performed benefitted the owners of the vehicles,

---

[9] Plaintiffs' only allegation even arguably related to Defendants' intent, found in a section titled "Intentional Nature of Defendants' Conduct," is based entirely on a 1963 consent decree purportedly entered into in *United States vs. Association of Casualty and Surety Companies*, et al., Docket No. 3106 in the Southern District of New York.  Compl. ¶¶ 115-19.  As this Court already held in *A&E*, "none of the parties in this case were parties to the 1963 case, and the Court does not find the 1963 consent decree to have any relevance to the instant case." *A&E* January 2015 Order at 4, n.6; *accord Mosley v. GEICO Ins. Co.*, Cause No. 3:13CV161-LG-JCG, 2014 U.S. Dist LEXIS 181651, at *4, n.2 (S.D. Miss. Dec. 16, 2014) (Memorandum Opinion and Order Granting Defendants' Motions for Summary Judgment "*Mosley* Order")  ("[P]laintiffs have not demonstrated how they would have standing to enforce the Consent Decree, or that any of the defendants were parties to that litigation or are otherwise bound by the Consent Decree. Moreover, the Consent Decree was entered by the United States District Court for the Southern District of New York, and this Court would not have jurisdiction to enforce it.").  The 1963 consent decree is equally irrelevant here.

[10] A plaintiff must demonstrate "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318, 283 P.3d 45, 49 (Ariz. Ct. App. 2012) (citing *Freeman*, 226 Ariz. at 251, 245 P.3d at 936).

not the Defendants.  *See* Compl. ¶ 52 (admitting that motor vehicle collision repair services were provided to policyholders and claimants, not Defendants); *see A&E* January 2015 Order at 9 ("[T]he only effect of such a repair on the insurance company is the incurring of an obligation to pay for it.").  Arizona law requires dismissal for the same reason.

In addition to the reason this Court dismissed this claim in *A&E*, this claim should be dismissed here because Plaintiffs do not demonstrate GEICO's alleged enrichment was ***unjust***.  As a matter of law, the mere allegation that "[b]y failing to make payment and/or full payment for the necessary and reasonable costs of repairs, Defendants have obtained or retained money which, in equity and good conscience, rightfully belongs to the Plaintiff," does not amount to unjust enrichment  *See* Compl. ¶ 147.  In a similarly styled case where the plaintiffs alleged "if the defendant[s] have not paid Plaintiff[s] a reasonable amount for services to the insured, then defendant[s] have been unjustly enriched," the court held this alleged non-payment does not amount to unjust enrichment.  *Mosley* Order at *12 ("The plaintiffs do not cite any case in which a court has held that an insurance company was unjustly enriched because it failed to pay in full the charges incurred by an insured at a repair shop (or any analogous context), and the Court is not aware of one.").

Moreover, Plaintiffs allege they were told exactly what Defendants would pay before they completed the repairs and decided to perform the work anyway. *See, e.g.*, Compl. ¶¶ 84-86 (stating State Farm's "market rate" is the maximum Defendant's will pay, whether or not a given shop is a DRP shop); ¶ 88 (explaining Defendants' reimbursement policies relating to repair parts); ¶ 96 (explaining Defendants' reimbursement policies for materials).  If Plaintiffs' allegations are taken as true, Plaintiffs knew exactly what the Defendants were willing to pay and had no reasonable expectation to be paid any additional amount. Defendants' actions were, therefore, not "unjust" as a matter of Arizona law.  *See, e.g.*, *Flooring Sys., Inc. v. Radisson Grp., Inc.*, 160 Ariz. 224, 227, 772 P.2d 578, 581 (1989) ("In determining whether it would be unjust to allow the retention of benefits without

compensation . . . . What is important is that it be shown that it was not intended or expected that the services be rendered or the benefit conferred gratuitously, and that the benefit was not conferred officiously.") (internal quotation marks omitted).

Finally, to the extent any Plaintiff entered into an agreement with GEICO, it could not maintain an unjust enrichment claim because its only remedy would be under the agreement. *See Wang Elec.,* 230 Ariz. at 318, 283 P.3d at 49 (citing *Freeman*, 226 Ariz. at 251, 245 P.3d at 936 (stating that unjust enrichment is an equitable remedy when parties are ***not*** contractually obligated to each other). Because Plaintiffs improperly group all of the Defendants in their Complaint, it is impossible to analyze this element with respect to any given Defendant. *See* Compl. ¶ 54; *supra* § II. This improper group pleading constitutes independent grounds for dismissal of this claim. *See, e.g.*, *A&E* January 2015 Order at 6 (Citing identical provisions in the *A&E* complaint and ordering that "Plaintiffs should insure that their references to 'the Defendants' are, in fact, intended to encompass every single Defendant.").

### C. Plaintiffs' Quasi-Estoppel Claim (Count Five) Fails Because As In Florida, Quasi-Estoppel Is Not A Cause Of Action In Arizona

Plaintiffs' quasi-estoppel claim should be dismissed for three reasons: (1) quasi-estoppel is not a cognizable affirmative claim in Arizona; (2) Plaintiffs have not alleged plausible facts that GEICO took an inconsistent position; and (3) Plaintiffs have not alleged plausible facts that GEICO engaged in conduct that is unconscionable. As in Florida, the doctrine of quasi-estoppel has only been applied to preclude a change in legal position; no case has recognized an affirmative claim for relief in Arizona for quasi-estoppel.[11] *See, e.g.*,

---

[11] Under Arizona law, quasi-estoppel precludes a litigant from accepting the benefits of certain conduct and then taking an inconsistent position simply to avoid the corresponding obligations or effects of its original conduct "where it would be unconscionable to permit a person to maintain a position inconsistent with one in which he acquiesced or one in which he accepted a benefit." *Sailes v. Jones,* 17 Ariz. App. 593, 597, 499 P.2d 721, 725 (1972); *see also Donaldson v. LeNore,* 112 Ariz. 199, 202, 540 P.2d 671, 674 (1975). Under Florida law, the doctrine is defined as merely prohibiting inconsistent positions, and does not include the "unconscionable" prong of the Arizona analysis. *See A&E* January 2015 Order at 10-11 (citing *Campbell v. Kauffman Milling Co.,* 29 So. 435, 439 (Fla. 1900)).

*Graybar Elec. Co. v. McClave*, 91 Ariz. 223, 226, 371 P.2d 350, 352 (1962) (discussing the "defense" of quasi-estoppel); *Unruh v. Indus. Comm'n*, 81 Ariz. 118, 120-21, 301 P.2d 1029, 1031 (1956) (estopping a woman from challenging the validity of her mail order Mexican divorce in an action seeking workers' compensation benefits related to her prior husband's death where she previously relied upon the divorce to remarry); *Sailes*, 17 Ariz. App. at 598, 499 P.2d at 726 (analyzing whether quasi-estoppel could be invoked to preclude a litigant from first asserting paternity in lawsuit for insurance proceeds after previously denying he was the father); *cf. A&E* January 2015 Order at 12 (holding the doctrine of quasi-estoppel is recognized in Florida but not as a cause of action).

Even if Arizona recognized an affirmative claim for quasi-estoppel, Plaintiffs do not allege that GEICO took an inconsistent position. Plaintiffs' claim centers on the use of three collision repair estimating databases that are, by Plaintiffs' own admission, no more than indicia of "industry standards for auto repairs." Compl. ¶¶ 89-90. Plaintiffs merely allege that GEICO sometimes relied on the databases for guidance on pricing and sometimes did not. *See* Compl. ¶¶ 92-94, 152-53 ("Over the course of years, the Defendants have admitted the accepted position of the estimating databases within the industry, but have nonetheless engaged in a course of conduct refusing to make full payment for procedures and materials."). Assuming the facts pled by Plaintiffs are true, it is not "inconsistent" to assert that a database's guidance is correct as to some repairs or procedures and incorrect as to others over an untold number of unique transactions. Plaintiffs do not allege GEICO took an "inconsistent position" as to any particular repair or procedure.

Plaintiffs do not demonstrate that GEICO acted unconscionably, particularly where Plaintiffs openly admit that **Plaintiffs selectively rely upon the databases "subject to the shop's expert opinions."** *See* Compl. ¶ 91 ("These databases and the estimates they generate are accepted within the industry as reliable starting points, ***subject to the shop's expert opinions***.") (emphasis added). Plaintiffs ask this Court to find it unconscionable for

GEICO or any other Defendant to sometimes rely on a databases and sometimes not when Plaintiffs admit that they also sometimes rely on the databases and sometimes do not. Moreover, no Arizona court has ever held that an insurance company setting the price it is willing to pay for a repair and sticking to that price is unconscionable.  Finally, because Plaintiffs improperly group all of the Defendants in their Complaint and it is impossible to analyze the elements of this cause of action with respect to GEICO, *see* Compl. ¶¶ 150-54, Plaintiffs' improper group pleading constitutes independent grounds for dismissal of this claim.

> **D.    Plaintiffs' Conversion Claim (Count Six) Fails For The Same Reasons It Failed in *A&E* Because The Elements Relied On By This Court In *A&E* Are Functionally Equivalent To Arizona Law**

Plaintiffs' conversion claim should be dismissed because "Plaintiffs are seeking sums that they believe should have been paid to them, not specific money of which they have been deprived or that could be returned, as required to state a claim for conversion."[12]  *See A&E* January 2015 Order at 15.  In both Florida and Arizona, "money can be the subject of a conversion action if the funds can be described, identified or segregated and there is an obligation to treat the funds in a specific manner."  *Koss Corp. v. Am. Exp. Co.*, 233 Ariz. 74, 90, 309 P.3d 898, 914 (App. 2013), *as amended (Sept. 3, 2013)*; *U.S. v. Bailey*, 288 F. Supp. 2d 1261 (M.D. Fla. 2003).  An Arizona claim for conversion "does not lie to enforce the mere obligation to pay a debt which may be discharged by the payment of money generally." *Autoville v. Friedman*, 20 Ariz. App. 89, 92-3, 510 P.2d 400, 403 (Ariz. Ct. App. 1973) (holding that an agreement to pay plaintiff out of vehicle sale proceeds merely triggered a

---

[12] In Arizona, a conversion claim is defined as "[a]n intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Strawberry Water Co. v. Paulsen*, 220 Ariz. 401, 406, 207 P.3d 654, 659 (Ariz. Ct. App. 2008).  Under both Florida and Arizona law, "the plaintiff must have the right to immediate possession of the property at the time of the conversion." *Compare Koss Corp. v. Am. Exp. Co.*, 233 Ariz. 74, 90, 309 P.3d 898, 914 (Ariz. Ct. App. 2013), *as amended (Sept. 3, 2013) with U.S. v. Bailey*, 288 F.Supp.2d 1261 (M.D.Fla. 2003).  In contrast, Florida has the additional requirement that plaintiff make a demand for payment. *See A&E* January 2015 Order at 15 (citing *U.S. v. Bailey*, 288 F.Supp.2d 1261 (M.D.Fla. 2003).

debt obligation which could have been discharged from a source other than the sale proceeds and did not give rise to a conversion claim).   Here, Plaintiffs allege that "Defendants are [ ] wrongfully in possession of monies which should have been expended to pay repair bills of their policyholders and claimants, specifically set aside for that purpose, and which rightfully belongs to Plaintiffs as a result of Plaintiffs performing necessary and customary repairs to vehicles."   *See* Compl. ¶ 158.   As in *A&E*, Plaintiffs allege nothing more than a purported obligation to pay a debt which could be discharged by the payment of money generally; for the same reason, this claim must be dismissed.   Further, because Plaintiffs improperly group all of the Defendants in their Complaint and it is impossible to analyze the elements of this cause of action with respect to GEICO, *see* Compl.   ¶¶ 155-58, Plaintiffs' improper group pleading constitutes independent grounds for dismissal of this claim.

## VI.   <u>CONCLUSION</u>

GEICO, CSAA Fire & Casualty Insurance Company, Metropolitan Property and Casualty Insurance Company, Metropolitan Group Property and Casualty Insurance Company and Metropolitan Casualty Insurance Company request that Plaintiffs' Complaint be dismissed for the reasons set forth above, together with such further relief as the Court deems proper.   To the extent the Court finds this action arises out of a contract, express or implied, GEICO, CSAA Fire & Casualty Insurance Company, Metropolitan Property and Casualty Insurance Company, Metropolitan Group Property and Casualty Insurance Company and Metropolitan Casualty Insurance Company  also seek their attorneys' fees in the defense of this action pursuant to Arizona Revised Statute § 12-341.01.

DATED this 19th day of February, 2015.

SNELL & WILMER L.L.P.

/s/ Dan W. Goldfine
Dan W. Goldfine (*admitted pro hac vice*)
Joshua Grabel (*admitted pro hac vice*)
Jamie L. Halavais (*admitted pro hac vice*)
Ian Fischer (*admitted pro hac vice*)
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone: 602-382-6000
Facsimile:  602-382-6070
Email:  dgoldfine@swlaw.com
            jgrabel@swlaw.com
            jhalavais@swlaw.com
            ifischer@swlaw.com

Counsel for GEICO Casualty Company,
GEICO General Insurance Company,
GEICO Indemnity Company, and
Government Employees Insurance Company

CODDINGTON, HICKS & DANFORTH

/s/ R. Wardell Loveland
R. Wardell Loveland
555 Twin Dolphin Drive, Suite 300
Redwood Shores
Redwood City, CA 94065
Telephone: (650) 592-5400
Facsimile:  (650) 592-5027
rloveland@chdlawyers.com

Counsel for CSAA Fire & Casualty
Insurance Company

STEPTOE & JOHNSON, LLP

_/s/ P. Bruce Converse_
Floyd P. Bienstock (Az Bar No. 006299)
P. Bruce Converse (Az Bar No. 005868)
201 E. Washington St., Suite 1600
Phoenix, AZ 85004
Telephone: 602-257-5200
Facsimile: 602-257-5299
fbienstock@steptoe.com
bconverse@steptoe.com

Counsel for Defendants Metropolitan
Property and Casualty Insurance Company,
Metropolitan Group property and Casualty
Insurance Company and Metropolitan
Casualty Insurance Company

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of February, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

*/s/ Dan W. Goldfine*

20932080.7