## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**IN RE: AUTO BODY SHOP**
**ANTITRUST LITIGATION**

| | |
|---|---|
| **MDL Case No.** | **6:14-md-2557-Orl-31 TBS** |
| **Individual Case Nos:** | **6:14-cv-6006-Orl-31 TBS** |
| | **6:14-cv-6007-Orl-31 TBS** |
| | **6:14-cv-6008-Orl-31 TBS** |
| | **6:14-cv-6009-Orl-31 TBS** |
| | **6:14-cv-6010-Orl-31 TBS** |
| | **6:14-cv-6011-Orl-31 TBS** |
| | **6:14-cv-6012-Orl-31 TBS** |
| | **6:14-cv-6013-Orl-31 TBS** |
| | **6:14-cv-6014-Orl-31 TBS** |
| | **6:14-cv-6015-Orl-31 TBS** |
| | **6:14-cv-6018-Orl-31 TBS** |
| | **6:14-cv-6019-Orl-31 TBS** |
| | **6:14-cv-6020-Orl-31 TBS** |
| | **6:14-cv-6022-Orl-31 TBS** |

---

## OMNIBUS OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION

---

_____Come now, Plaintiffs in the above-captioned cause and submit this, their Objection to Magistrate's Report and Recommendations, and state to the Court the following:

The Report and Recommendations improperly create and add elements to multiple state law causes of action which do not exist in the respective states, omit relevant facts set forth in the respective complaints as justification recommendations to dismiss, as well as fail to take in account relevant and applicable law.  For these reasons, the Plaintiffs object.

## I.      UNJUST ENRICHMENT

In analyzing the various state-law unjust enrichment claims, the Court recommended dismissal of Plaintiffs' unjust enrichment claim in part because, "Plaintiffs have failed to allege facts

showing that it would be unjust to allow Defendants to retain any benefit Plaintiffs may have conferred." The Court further discussed the law of compensation due a volunteer, an officious volunteer, and concluded with the following:

> Plaintiffs must therefore plead facts sufficient to support a conclusion that their failure to bargain with Defendants before performing repairs was justified under the circumstances. . . . Plaintiffs do not allege that it was impossible or even impractical for them to bargain with Defendants over price before agreeing to perform repairs. . . . Nor do they allege that agreeing to perform and performing any particular repairs was necessary to discharge a legal duty of their own or to otherwise protect their own interests.

Plaintiffs courteously submit the Report and Recommendation erred as to the facts alleged in the Complaint and improperly incorporated legal duties which do not exist into its determinations.

A.    The Plaintiffs have no duty or obligation to bargain, negotiate or discount their prices

The Court's conclusion that Plaintiffs must plead facts that support their "failure" to bargain presupposes some obligation on their part to engage in negotiation or discount their prices. Respectfully, diligent research of authority nationwide has not disclosed any legal compulsion for a privately owned business to negotiate or discount its prices in the ordinary marketplace.

On the contrary, cast in antitrust situations most commonly, the national judiciary has recognized for over a century the inherent authority of a private business to set its prices as it sees fit:

> The right of each competitor to fix the prices of the commodities which he offers for sale, and to dictate the terms upon which he will dispose of them, is indispensable to the very existence of competition. Strike down or stipulate away that right, and competition is not only restricted, but destroyed.

*Whitwell v. Continental Tobacco Co.*, 125 F. 454, 459-460 (8th Cir. Minn. 1903). See also, *Brosious v. Pepsi-Cola Co.*, 59 F. Supp. 429, 431 (D. Pa. 1945), *Rolley, Inc. v. Merle Norman*

*Cosmetics, Inc.*, 129 Cal. App. 2d 844, 849 (Cal. App. 1954), *First Nat'l Bank v. Missouri Glass Co.*, 169 Mo. App. 374, 397-398 (Mo. Ct. App. 1912).

The Plaintiffs are free to set their own prices so as to compete with each other.  They are not required to accept the Defendants' own determination of what their prices should be, nor are they required to negotiate, bargain or discount those prices.

Respectfully, the Court appears to be creating a new element into the various states' laws of unjust enrichment by ruling the Plaintiffs must plead facts sufficient to justify their "failure" to bargain with Defendants.  The Court cites no authority from any affected jurisdiction that Plaintiffs are under any obligation whatsoever, much less a legal duty, to negotiate or bargain with anyone over their respective prices.

Such a requirement does not appear in <u>any</u> state law recitation of the respective elements of this cause of action.  It conflicts with other well-established legal recognition that a private business may fix its own prices and ignores the complete absence of any legal duty for that private business to negotiate or bargain or discount those prices.

In the absence of a legal duty to do so, the Court's recommendation that such facts must be pled constitutes a de facto rewriting of state law.  Federal courts are not free to alter or amend state law in this fashion.  See, e.g., *Genereux v. Raytheon Co.*, 754 F.3d 51, 57 (1st Cir. Mass. 2014), *Mauriello v. Great Am. E & S Ins. Co.*, 554 Fed. Appx. 382, 385 (6th Cir. 2014), *Jones v. England*, 402 Fed. Appx. 326, 328 (10th Cir. 2010), *Tunick v. Safir,* 209 F.3d 67, 76 (2d Cir. N.Y. 2000) *Blue Cross & Blue Shield v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997), *Bonney v. Canadian N. R. Co.*, 800 F.2d 274, 280 (1st Cir. Me. 1986).

Plaintiffs respectfully submit the Report and Recommendation has erred by importing an

element into the Plaintiffs' claim of unjust enrichment which does not exist in any state law.  Should the Court determine it will accept this recommendation, Plaintiffs request the Court provide authority setting out the Plaintiffs' legal duty to bargain, negotiate or discount its prices.

  B.   The Court erred in its recommended finding that Plaintiffs were able to negotiate with Defendants prior to commencing repairs

As set out directly above, diligent research has uncovered no obligation whatsoever for Plaintiffs to negotiate or bargain their prices.  Despite this, the Report and Recommendation further held that, "Plaintiffs do not allege that it was impossible or even impractical for them to bargain with Defendants over price before agreeing to perform repairs."

Factually, Plaintiffs submit this does not reflect the allegations of the various complaints. In numerous paragraphs, the Plaintiffs set forth facts showing bargaining was not possible, even if the Plaintiffs had been so inclined.  The facts set forth that an overwhelming majority of each Plaintiff's business is generated by customers for whom defendant insurers are responsible for repair payment; that Defendants exert substantial influence over where consumers take their vehicles for repairs; that Defendants collectively have control of the vast majority of the insurance market in the respective states;  that Defendants arbitrarily define "market rate" for labor, paint and materials and refuse to honor the Plaintiffs' actual rates, refuse to pay for necessary processes and procedures to return vehicles to pre-accident condition; that Plaintiffs' refusal to abide by the unilateral imposed "rates" prompts coercion and retribution by the Defendants; and that Defendants simply refuse to adhere to the requirements of safe and professional repairs.[1]

_____

[1]A representative sampling of factual allegations are:
Alabama Complaint:   ¶¶ 75, 94-99, 100-101, 107, 108, 131, 136-37.
Arizona Complaint:   ¶¶ 61, 79-86, 87-89, 92, 96-98, 146.
California:   ¶¶ 44, 66-71, 72-74, 77, 81-82, 88-91, 106-108.

Even if Plaintiffs were inclined to attempt negotiations, under the facts asserted, Plaintiffs were not required to do so.  The history of unilateral action by the Defendants as set forth by the Complaints establishes that bargaining would have been futile.  The law of each state at issue has recognized for decades, in some instances for over a century, that a party is not required to engage in futile gestures.[2]

---

| | |
|---|---|
| Illinois: | ¶¶ 92, 100-101, 110-116, 117-18, 121, 124-26, 133-34. |
| Kentucky: | ¶¶ 48, 52, 56, 63-65, 74-81, 82-84, 87, 89, 91-93, 98-103, 109. |
| Missouri: | ¶¶ 40-41, 45-46, 50, 53, 58, 69-76, 77-79, 82, 84, 86-89, 98-99. |
| Michigan: | ¶¶ 87 |
| New Jersey(6:14-cv-6013): | ¶¶ 37, 40, 44-46, 57-63, 64-66, 68-73, 78-82, 94-95. |
| New Jersey (6:14-cv-6012): | ¶¶ 31-32, 36, 38, 41, 45-47, 56-62, 63-65, 67, 69-72, 77-80, 81, 92-93, 97-98. |
| Pennsylvania: | ¶¶ 82-84, 87, 91-92, 95, 99-101, 110-116, 117-19, 121, 123-130, 145-46. |
| Virginia: | ¶¶ 53, 54, 58, 60, 62, 70-71, 80-86, 87-89, 91, 93-96, 101-104, 116-17, 121-22. |
| Washington: | ¶¶ 5.4-5.5, 5.9, 5.13-5.14, 5.17, 5.21-5.23, 5.32-5.41, 5.43, 5.45-5.52, 6.25-6.26, 6.29-6.31. |

| | |
|---|---|
| [2]Alabama: | *Root v. Johnson*, 99 Ala. 90, 92 (Ala. 1891)(" The law does not exact the observance of a vain ceremony."). |
| Arizona: | *Schmitt v. Sapp*, 71 Ariz. 48, 53 (Ariz. 1950)("The law does not require one to do a vain and futile thing.")(superceded on other grounds). |
| California: | *Levy v. Larson*, 61 Cal. App. 754, 757 (Cal. App. 1923)("The law does not require idle acts."). |
| Illinois: | *Baker v. Ellis*, 244 Ill. App. 330, 335 (Ill. App. Ct. 1927), ("The principle that the law does not require a vain and useless act would seem to apply to such a state of facts.") |
| Kentucky: | *Bell v. Hatfield*, 121 Ky. 560, 562 (Ky. 1905) ("The law never requires a vain thing."). |
| Missouri: | *Luthy v. Woods*, 1 Mo. App. 167, 169 (Mo. Ct. App. 1876)("If it be an empty form, the court will not compel him to comply with it. Lex neminem cogit ad vana seu inutilia--the law compelleth no man to do a vain or useless thing.") |
| New Jersey: | *Alexander v. Cunningham Roofing Co.*, 125 N.J.L. 277, 279 (E. & A. 1940)(..." it is to be  borne in mind that the law does not command the doing of a vain or futile thing.") |
| Oregon: | *Hodges & Wilson v. Silver Hill Mining Co.*, 9 Ore. 200, 204 (Or. 1881)("It is one of the maxims of the common law, which is a dictate of common |

Thus, as there is no legal compulsion requiring Plaintiffs to bargain, negotiate or discount

their respective services for anyone, and the facts set out in the Complaints at issue establish such

was not practical given the Defendants' history of unilateral action, coercion, retribution and

---

sense, that law will not attempt to do an act which is vain, or to enforce an act which would be fruitless.").

Pennsylvania: *Slotsky v. Gellar*, 1969 Pa. Dist. & Cnty. Dec. LEXIS 140 (Pa. C.P. 1969) ("Equity does not compel the performance of a vain and useless act (Commonwealth Title Insurance & Trust Company v. Seltzer, 227 Pa. 410 (1910) ) or an "idle ceremony";).

Virginia: *Reiber v. James M. Duncan, Jr., & Associates, Inc.*, 206 Va. 657, 662 (Va. 1965) ("The law does not require one to do a vain thing.")

Washington: *Livieratos v. Commonwealth Sec. Co.*, 57 Wash. 376, 380 (Wash. 1910)("The record shows conclusively that a tender, if made, would not be accepted, and the law does not require one to do a vain or useless thing.")

retaliation when Defendants' unilateral payment pronouncements were disputed,  Plaintiffs respectfully submit the Report and Recommendation erred in its findings as to this purported deficiency.

C.    The Court erred in its finding that Plaintiffs did not assert facts supporting full completion of repairs is necessary to execute a legal duty or protect a personal       interest

The Court also found, "[the Plaintiffs] do [not] allege that agreeing to perform and performing any particular repairs was necessary to discharge a legal duty of their own or to otherwise protect their own interests."

Respectfully, this conclusion once again presupposes a legal compulsion which does not exist, as well as ignoring numerous pertinent facts set forth in the various complaints which contradict this statement.

With respect to legal duty, the Recommendation's language appears to imply a Plaintiff may be legally excused from performing full, complete and safe repairs to vehicles entrusted to them by the consumers who chose their services.  However, the Recommendation provides no authority for the apparent proposition.

This is consistent with the Recommendation's omission of the myriad facts set forth in the complaints showing the Plaintiffs must perform full, complete and safe repairs in order to protect their own interests and execute their independent obligations to the consumers whose vehicles they are repairing.

These facts include but are not limited to the following: Defendants coerce shops to work at a loss on each repair by refusing to fully compensate for necessary repairs and parts to the financial detriment of the Plaintiffs; Defendants' refusing to permit shops to complete necessary repairs which

leaves the shop in the position of either performing incomplete, substandard repairs or work at a loss; Defendants' selectively asserting database application to avoid payment for repairs while using those same databases for their own profit; refusing to pay or fully pay for paint and materials required to complete repairs; that Defendants have tremendous influence over where consumers take vehicles for repairs and have exercised that tremendous influence to steer consumers away from Plaintiffs' businesses which has substantial impact on the Plaintiffs' financial ability to remain an open and operating concern.[3]

Plaintiffs would also ask the Court to take judicial notice of two interrelated facts: first, businesses which regularly and routinely fail to perform the services for which they are hired will not stay in business long;[4] and businesses which regularly and routinely fail to perform the services for which they are hired often find themselves involved in frequent litigation.  The first is a well-

---

[3]
Alabama:            ¶¶ 74-75, 100-101, 104, 106-107, 109, 112 and 114-115.

Arizona:            ¶¶ 59, 61, 87-88, 92, 94, 96, 98, 106 and 109-10.

California:         ¶¶ 41, 44, 72-73, 77, 79-80, 82, 90 and 92-93.

Illinois:  ¶¶ 91-92, 117-118, 121, 123-124, 126, 133, and 135-136

Kentucky:           ¶¶ 54, 56, 82-83, 87, 89, 91, 93, 101, and 104-105

Michigan:           ¶¶ 62-63, 88-89, 91, 94-95, 97, 104, and 106-107

Missouri:           ¶¶ 48, 50, 77-78, 82, 84, 86, 89, 97, and 100-101

New Jersey (6:14-cv-6012-Prestige):        ¶¶ 37-38, 63-64, 67, 69-70, 72, 79, and 82-83

New Jersey (6:14-cv-6013-Ultimate)         ¶¶ 36-37, 64-65, 68, 70-71, 73, 80, and 83-84

Pennsylvania (6:14-cv-6008): ¶¶ 91-92, 117-118, 121, 123-124, 126, 129, and 131-132

Pennsylvania (6:14-cv-6020): ¶¶ 25-26, 51-52, 55, 57-58, 60, 63, and 65-66

Washington:         ¶¶ 5.13-5.14, 5.39-5.40, 5.43, 5.45-5.46, 5.48, 5.51, and 5.53-5.54

Virginia:           ¶¶ 60, 62, 87-88, 91, 93, 94, 96, 103, 105-06.

[4]There are, of course, exceptions to every well known business fact.  For example, as set out in the *A & E Auto Body* Second Amended Complaint, several Florida body shops including Lakeland Gerber, Valrico Gerber, and Chevrolet Center are known to have multiple poor repairs attributed to them but they remain in business as "preferred providers" of multiple Defendants who regularly steer business to them, often in direct contravention of the consumer's explicitly stated wishes.

known and rather obvious fact of business.  The latter is well-known to the Court through its own docket.

The Plaintiffs do indeed have a personal interest to protect by completing repairs of such quality as to return consumer vehicles to its pre-accident condition–the ongoing viability of the business.  Plaintiffs set forth numerous facts to this respect in each of the operant complaints.

Should the Court decide to accept the Recommendation, Plaintiffs respectfully request the Court set forth legal authority which legally excuses a business from fully performing the service it was hired to perform during the course of regular business.

## II.      THE PLAINTIFFS ARE NOT VOLUNTEERS

Within its unjust enrichment discussion, the Report and Recommendation quotes extensively from various sources regarding the effect of volunteering on the right to compensation.  This is incorporated within the "failure to bargain" portion of the Report, discussed above.

The Report does not state directly the Plaintiffs were volunteers.  Drawing a reasonable inference from the inclusion of this part of the discussion within this context, Plaintiffs can only conclude the Report intimates the Plaintiffs were volunteers in that they performed services and expended materials not agreed to by the Defendants.

Respectfully, this inference omits the unique relationship between body shop, consumer and insurer.  As was pointed out at oral argument on motions in November, 2014, and in various pleadings since then, the relationship amongst the participants in auto repair is unique.  It is not an ordinary buyer-seller transaction and ordinary buyer-seller principles simply cannot always be applied, despite the obvious appeal of their ease of use.

The procurer of services in this unique setting is the consumer, the vehicle owner.  The provider of services is the body shop.  The insurer Defendants are neither.

The choice of repair facility belongs to the consumer.  No state law or administrative code in any state with relevant complaints at issue requires an insured to utilize a preferred or insurer-designated body shop in order to receive covered repairs, whether the claimant is a first-party insured or a third-party claimant.  On the contrary, most states have explicitly expressed this reservation of right to the consumer in affirmative language.  See, e.g., Arizona Revised Statute § 20-468 ("For repair facilities other than glass repair facilities and subject to the rights of an insurer to receive notice of loss or claim consistent with the provisions of its policy, a person in this state has the right to choose any repair facility for the repair of a motor vehicle loss."), California Insurance Code 758.5(a)("No insurer shall require that an automobile be repaired at a specific automotive repair dealer"), Kentucky Revised Statute § 304.12-275 ("An insurer shall inform a claimant upon notification of a motor vehicle damage claim that he or she has the right to choose the repair facility of his or her choice to repair a damaged vehicle."), and New Jersey Administrative Code 11:3-103.(e)("Subject to the requirements of (d) above, the insured may use any repair facility of his or her own choice.")[5]

In the instant transaction, the Defendants retain no right to approve, disapprove or otherwise decide where an insured or claimant has a vehicle repaired.  The Defendants' role is by analogy that of surety.  The repair agreement is between the consumer and the body shop.  The Defendants duty,

---

[5]The subsection (d) referred to in this regulation reads as follows in its entirety:  (d) No insurer shall negotiate the settlement of any physical damage claim involving an automobile as defined at N.J.S.A. 39:13-1b with an unlicensed auto body repair facility or in any manner utilize an unlicensed facility in the adjustment, negotiation or settlement of such a claim. It shall be the responsibility of the insurer to make a reasonable and diligent effort to determine whether the facility is properly licensed.

by virtue of its separate obligations to policyholders and claimants, is to pay.  That is all.

Plaintiffs are specifically employed by their customers to repair damaged vehicles.  As the choice of repair facility belongs to the consumer and the Plaintiffs are the selected facilities, under no definition of the word can any Plaintiff be deemed a volunteer.  Wording from state to state may vary slightly but definitions of "volunteer" are extremely consistent–a volunteer is one who performs an act or service without expectation of compensation.[6]  In every event, the Plaintiffs were performing the services they were hired to perform by the consumer; Plaintiffs fully expected and were entitled to payment for those services; the Defendants' position on the preference or wisdom of that hiring is irrelevant.

Additionally, even if there was some question as to the voluntary nature of Plaintiffs' work, which there is not, establishing that is also a question of fact and one for which the <u>Defendants</u> bear the burden of proof and production.  Assertion of gratuitous actions (volunteer) is generally considered an affirmative defense.[7]  There is no obligation whatsoever for Plaintiffs to negate an

---

[6]Alabama:        *Armstrong v. Green*, 260 Ala. 39, 43 (Ala. 1953)
Arizona:         *Bond v. Cartwright Little League,* 112 Ariz. 9, 14 (Ariz. 1975)
California:      *Pacific Tel. & Tel. Co. v. Pacific Gas & Electric Co.*, 170 Cal. App. 2d 387, 392 (Cal. App. 1st Dist. 1959)
Illinois:  *Anderson v. Poray, Inc.*, 42 Ill. App. 2d 1, 15 (Ill. App. Ct. 1st Dist. 1963)
Kentucky:        *Anderson v. Homeless & Housing COA*, 135 S.W.3d 405, 412-413 (Ky. 2004)
Michigan:        *Pace v. Gibson*, 357 Mich. 315, 316-320 (Mich. 1959)
Missouri:        *Hoover v. Whisner*, 373 S.W.2d 176, 182 (Mo. Ct. App. 1963)
New Jersey:      *State v. D'Addario*, 196 N.J. Super. 392, 395 (Law Div. 1984)
Pennsylvania:    *Fekete v. Lehigh & Wilkes-Barre Coal Co.*, 71 Pa. Super. 231, 233 (Pa. Super. Ct. 1919)
Virginia:        *Mullins v. Mingo Lime & Lumber Co.*, 176 Va. 44, 51 (Va. 1940)
Washington:      *Baxter v. Morningside, Inc.*, 10 Wn. App. 893, 896 (Wash. Ct. App. 1974)

[7]See, e.g.,:
Arizona:         *Hegel v. O'Malley Ins. Co.*, 122 Ariz. 52, 57 (Ariz. 1979)
California:      *Commercial Union Ins. Co. v. Ford Motor Co.,* 599 F. Supp. 1271, 1273 (N.D. Cal. 1984)
Illinois:  *Enright v. Cgh Med. Ctr.,* 1999 U.S. Dist. LEXIS 370 (N.D. Ill. Jan. 12, 1999)
Missouri:        *Gramex Corp. v. Green Supply*, 89 S.W.3d 432, 437 (Mo. 2002)
Oregon:  *Tig Ins. Co. v. Travelers Ins. Co.*, 2003 U.S. Dist. LEXIS 26844 (D. Or. Mar. 24, 2003)

affirmative defense in the Complaint, particularly one which has not been asserted by any Defendant as a defense to any claim.

As set forth in all relevant complaints, the Plaintiffs are in the business of recovery and repair of wrecked vehicles.  At all times, Plaintiffs were specifically engaged to perform those tasks by the consumers.  At all times, Plaintiffs expected to be compensated for their services.  There is no legitimate question as to whether the Plaintiffs were acting as volunteers.

Should the Court decide to accept the apparent recommendation that Plaintiffs were acting as volunteers, Plaintiffs respectfully request the Court set forth the applicable state authority upon which the Court's decision has been made.

## III.   WHETHER OR NOT COMPENSATION PAID TO PLAINTIFFS IS REASONABLE IS AN ISSUE OF FACT NOT SUSCEPTIBLE TO 12(b)(6) DISMISSAL

The Defendants have repeatedly argued and the Report and Recommendations appear to accept the theory that Plaintiffs expectation of compensation for services rendered is not reasonable because it was well-known that Defendants have repeatedly and will continue to pay only that which they unilaterally choose to pay.

This, however, is not the law of any state.  Again, though worded differently amongst the states, a consistent element of the cause of action for unjust enrichment is the reasonable expectation of payment from the party sought to be held accountable for same.  In this case, that is the Defendant insurers.

---

Washington:   *Walsh v. W. Coast Coal Mines*, 31 Wn.2d 396, 398 (Wash. 1948)

Defendants do not deny they are accountable for payment.  Indeed, they have admitted they are through issuance of partial payment.  What they argue, as noted above, is that they need not pay for all of Plaintiffs' services if they unilaterally choose not to do so and expectation of any additional compensation is unreasonable, again, because they say so.

Respectfully, that is not the law in any applicable state and the Recommendations' apparent acceptance of the Defendants' argument is in error.  In each and every affected state, the law provides that once it has been determined compensation is owed, the Plaintiff is entitled to recover the reasonable value.  This "reasonable value" is the measure of damages, not an element of the claim.[8]

How much constitutes "reasonable value" is an issue of fact reserved to the jury or other fact finder as is the measure of all other damages absent specific statutory or other direction.[9]

---

[8]Alabama:    *Campbell v. Tennessee Valley Authority*, 421 F.2d 293, 296 (5th Cir. Ala. 1969), *Willow Lake Residential Ass'n v. Juliano*, 80 So. 3d 226, 246 (Ala. Civ. App. 2010)

Arizona:    *Turnkey Corp. v. Rappeport,* 149 Ariz. 514, 516 (Ariz. Ct. App. 1986)

California:    *Phillippe v. Shapell Indus.*, 43 Cal. 3d 1247, 1275-1276 (Cal. 1987)

Illinois:    *County of Champaign v. Hanks*, 41 Ill. App. 3d 679, 684 (Ill. App. Ct. 4th Dist. 1976)

Kentucky:    Diligent research has not disclosed a Kentucky state authority which speaks to this issue. However, Plaintiffs' cite *C.A.F. & Assocs., LLC v. Portage, Inc*., 2012 U.S. Dist. LEXIS 149984, 9-10 (W.D. Ky. Oct. 17, 2012), wherein the district court discussed this void of authority, analyzed relevant analogous Kentucky cases and expressed an *Erie* conclusion consistent with the authority of other states cited herein.

Michigan:    *B & M Die Co. v. Ford Motor Co.*, 167 Mich. App. 176, 181 (Mich. Ct. App. 1988)

Missouri:    *Patrick v. Koepke Constr., Inc. v. Woodsage Constr. Co.*, 844 S.W.2d 508, 516 (Mo. Ct. App. 1992)

New Jersey:    *Shapiro v. Solomon*, 42 N.J. Super. 377, 383-384 (App.Div. 1956)

Pennsylvania:    *Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc*., 2003 PA Super 332, P31 (Pa. Super. Ct. 2003)

Virginia:    *Lauten Carpentry Contr., Inc. v. Wood Swofford & Assocs*., 1998 Va. Cir. LEXIS 563 (Va. Cir. Ct. May 22, 1998)

Washington:    *Young v. Young*, 2006 Wash. App. LEXIS 1768 (Wash. Ct. App. Aug. 11, 2006)

[9]See, e.g.,:

Alabama:    *Nix v. Key*, 682 So. 2d 1371, 1372 (Ala. Civ. App. 1996).

Arizona:    *Phoenix v. Brown*, 88 Ariz. 60, 67 (Ariz. 1960)

California:    *United States v. CB & I Constructors, Inc.,* 685 F.3d 827, 837 (9th Cir. Cal. 2012)

Illinois:  *Cerveny v. American Family Ins. Co.*, 255 Ill. App. 3d 399, 406-407 (Ill. App. Ct. 1st Dist. 1993).

## IV.    RETENTION OF BENEFITS BY DEFENDANTS IS UNJUST

The Report and Recommendation suggests the Plaintiffs' unjust enrichment claims must fail because Plaintiffs failed to set forth facts showing the retention of benefits conferred was unjust. Respectfully, this is an inaccurate recitation of fact as well as law.

The Complaint sets out that Plaintiffs completed work required to fully and safely repair the vehicles entrusted to them for that purpose by their respective customers; that work performed was necessary to fulfil that obligation; that Defendants interfered with or attempted to interfere with Plaintiffs' completing complete repairs in numerous ways (refusing to compensate for all necessary procedures; requiring use of substandard and unsafe salvaged and imitation parts; refusing to permit execution of necessary repair processes and procedures, etc.);[10] that Defendants utilize the same

| | | |
|---|---|---|
| Kentucky: | *Stanley v. Caldwell*, 274 S.W.2d 383, 385 (Ky. 1954) | |
| Missouri: | *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 180 (Mo. Ct. App. 2006) | |
| New Jersey: | *Ming Yu He v. Miller*, 207 N.J. 230, 251-252 (N.J. 2011) | |
| Pennsylvania: | *Simmons v. Mullen*, 331 A.2d 892, 900 (Pa. Super. Ct. 1974) | |
| Washington: | *Kadmiri v. Claassen*, 103 Wn. App. 146, 150 (Wash. Ct. App. 2000) | |
| Virginia: | *Kritselis v. Petty*, 129 Va. 175, 181 (Va. 1921) | |

[10]Alabama:     ¶¶ 63, 65, 82-83, 101-02, 104, 106-109, 111-113, 130-131 and 136-37.
Arizona:     ¶¶ 50, 52, 68-69, 88-90, 92, 94-98, 105-106, 108 and 146-147
California:     ¶¶ 31-32, 53-54, 73-75, 77, 79-82, 88, 90-91, 103-109.
Illinois:     ¶¶ 81, 83, 99-100, 118-119, 121, 123-126, 132-134, 149-150, and 154-155
Kentucky:     ¶¶ 45, 47, 63-64, 83-85, 87, 89-93, 100-101, 103, 137-138, and 142-143
Michigan:     ¶¶ 51, 53, 70-71, 89-90, 92, 94-97, 103-105, 122-123, 128-129
Missouri:     ¶¶ 38, 40, 57-58, 78-80, 82, 84-89, 96-97, 99 and 133-134
New Jersey(6:14-cv-6012):     ¶¶ 29, 31, 45-46, 64-65, 67, 69-72, 78-79, 81, 92-93, and 97-98
New Jersey(6:14-cv-6013):     ¶¶ 28, 30, 44-45, 65-66, 68, 70-73, 79-80, 82, 94-95 and 99-100
Pennsylvania(6:14-cv-6008):     ¶¶ 80, 82, 99-100, 118, 119, 121, 123-126, 128-30, 145-46, 150-51.
Pennsylvania (6:14-cv-6020):     ¶¶ 14, 16, 33-34, 52-53, 55, 57-60, 62-64, 79-80, and 84-85
Virginia:     ¶¶ 51, 53, 69-70, 88-89, 91, 93-96, 102-104, 116-117, and 121-122
Washington:     ¶¶ 5.2, 5.4, 5.21-5.22, 5.40-5.41, 5.43, 5.45-5.48, 5.50-5.52, 6.24

industry-approved databases as the shops and are fully aware the processes and procedures are necessary to make complete and safe repairs; that making said repairs permits Defendants to fulfil its duties to insureds and claimants but by failing to make full payment, the Defendants have enriched themselves to the detriment of Plaintiffs–the Defendants have received the benefit of Plaintiffs' work but retained and withheld funds specifically set aside by each for payment of claims by refusing to make full payment on those claims.

In summary, the Plaintiffs performed services for which they are entitled to compensation. The Defendants are obliged to pay the costs of services.  Defendants have refused to pay the bill for services in full, not because the services rendered were unnecessary to complete the repairs or other legitimate reason, but simply because the Defendants choose not to.

In assessing the allegations of a complaint, the Court is <u>required</u> to accept these facts as true and draw all reasonable inferences from these facts.  The Court is not permitted to assess the value of evidence which may be presented later by the Defendants.

There is no question the necessary work was performed by Plaintiffs.  Not a single motion to dismiss has alleged non-performance. If any Defendant wishes to allege work was not actually performed and no monies due, they may do so in an answer and as an affirmative defense.  However, as the Court is aware, the allegations of the Complaint must be accepted as true for purposes of a motion to dismiss.

What that leaves the Court with is the fact that necessary work was performed for which full payment was not received from the party obliged to pay.  Plaintiffs have alleged retention of funds due and owing to them is inequitable.

That Defendants contend otherwise is of no moment to a motion to dismiss.  "[Defendants']
denials of Plaintiff's allegations will not be considered by the Court. The proper vehicle for the denial
of allegations is in an answer, not a motion to dismiss." *Ulbrich v. GMAC Mortg.*, LLC, 2012 U.S.
Dist. LEXIS 114941 (S.D. Fla. Aug. 15, 2012).

Claims of unjust enrichment are highly fact- and circumstance-specific and the success or
failure of such claims turn on those facts and circumstances.[11]  As such, they are not susceptible to
12(b)(6) dismissal under ordinary circumstances.

Additionally, it is irrelevant that Defendants had no intention of paying the entire amounts
due.  Unjust enrichment attends not the intentions of the parties but rather whether under equitable
considerations the enrichment is unjust.[12]

Furthermore, although the Complaints allege all the elements of unjust enrichment, the
Report takes the position that this is insufficient because Defendants argue they have paid all they
are going to pay and therefore there are no facts to establish the Defendants' enrichment was unjust.

---

[11]See, e.g., *Ulbrich*, LLC, 2012 U.S. Dist. LEXIS 114941, *5,  (S.D. Fla. Aug. 15, 2012),  *Manntiply v.
Mantiply*, 951 So. 2d 638, 655 (Ala. 2006),  *Morris Pumps v. Centerline Piping, Inc.,* 273 Mich. App. 187 (Mich.
Ct. App. 2006*), Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993)

[12]See, e.g.:

| | |
|---|---|
| Alabama: | *Avis Rent A Car Sys. v. Heilman,* 876 So. 2d 1111, 1123 (Ala. 2003) |
| Arizona: | *Murdock-Bryant Constr., Inc. v. Pearson*, 703 P.2d 1197 (Az. 1985). |
| California: | *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (Cal. App. 1st Dist. 2004) |
| Missouri: | *Patrick v. Koepke Constr., Inc. v. Woodsage Constr. Co.*, 844 S.W.2d 508, 516 (Mo. Ct. App. 1992) |
| New Jersey: | *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 108 (App.Div. 1966) |
| Pennsylvania: | *State Farm Mut. Auto. Ins. Co. v. Jim Bowe & Sons, Inc.*, 539 A.2d 391, 393 (Pa. Super. Ct. 1988) |
| Virginia: | *Gutterman Iron & Metal Corp. v. Figg Bridge Developers, L.L.C.*, 82 Va. Cir. 304, 307 (Va. Cir. Ct. 2011). |

In other words, the Court is accepting Defendants' arguments that they have paid enough and are demanding additional facts to counter that.

This is direct contradiction to the Court's obligation.  The Court is required to accept the well-pleaded factual allegations of the complaint as true and give reasonable inferences from those facts in the light most favorable to the Plaintiff.  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006).  See also, *Caruso v. Galencare, Inc.,* 2014 U.S. Dist. LEXIS 62468 (M.D. Fla. May 6, 2014), *APR Energy, LLC v. Pak. Power Res., LLC*, 653 F. Supp. 2d 1227, 1239 (M.D. Fla. 2009).

By accepting the Defendants' factual statements rather than those of the Complaint, the Report recommends actions directly contrary to its explicit and well-established obligation and duty.

Should the Court decide to accept this Recommendation, Plaintiffs respectfully request the Court provide citation to appropriate state authority supporting the conclusion that an obliged payer's refusal to make full and complete payment for services rendered does not constitute unjust enrichment.

## V.     PLAINTIFFS ARE ENTITLED TO ASSERT CLAIMS IN THE ALTERNATIVE

In discussing Plaintiffs' equitable claims, the Report and Recommendation opined that with only a few exceptions, there was no substantive legal distinction between unjust enrichment and quantum meruit.  The claims were more than once referred to as "functionally" equivalent. As a result, it was recommended the claims be dismissed.  With respect to the exceptions, the Reports recommended dismissal on other grounds.

Overall, the Report recommended dismissal on the ground that "the quantum meruit claims in the Michigan, Pennsylvania, and Arizona cases have no independent legal significance and should

be dismissed for the same reasons as the unjust enrichment claims . . ." and similar conclusions for other states.

Plaintiffs respectfully submit the Recommendations do not comport with applicable Federal Rule or the respective state laws which govern the claims.

Rule 8(d) of the Federal Rules of Civil Procedure states:

(d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.
 (1) In General. Each allegation must be simple, concise, and direct. No technical form is required.
 (2) Alternative Statements of a Claim or Defense. A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
 (3) Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency.

This court has repeatedly recognized application of this Rule. *Tech Data Corp. v. Mainfreight, Inc.*, 2015 U.S. Dist. LEXIS 45296 (M.D. Fla. Apr. 7, 2015), *Hayes v. City of Tampa*, 2014 U.S. Dist. LEXIS 139752, 13-14 (M.D. Fla. Oct. 1, 2014), *FDIC v. Pearl*, 2013 U.S. Dist. LEXIS 50347 (M.D. Fla. Apr. 8, 2013).

While analyzed in a separate section, the Report and Recommendations make clear it urges dismissal for the same reasons and on the same grounds as the unjust enrichment claims because it considers the claims essentially identical. They are not. Plaintiffs are entitled to plead these claims alternatively and have the proper elements addressed.

Additionally, while specific points will be addressed below, Plaintiffs respectfully re-assert its prior objections as discussed above with respect to unjust enrichment.

A.      The Report and Recommendation errs in asserting quantum meruit claims in Michigan, Pennsylvania and Arizona have no legal significance

The Report recommends dismissal of Plaintiffs' quantum meruit claims in Michigan, Pennsylvania and Arizona because they have no "independent legal significance."  In other words, the Report asserts these states make no distinction between unjust enrichment and quantum meruit and therefore they should be dismissed out of hand for the same reasons as Plaintiffs' unjust enrichment claims.  Respectfully, this conclusion is in error.

### I. Michigan

The Report and Recommendation relies upon the Michigan case of *Morris Pumps v. Centerline Piping*, 729 N.W.2d 898 (Mich. Ct. App. 2006) for the proposition that unjust enrichment and quantum meruit are interchangeable and without distinction.  Respectfully, *Morris Pumps* makes no such holding.

*Morris Pumps* recognizes that both quantum meruit and unjust enrichment flow from the theory of restitution.  Unfortunately, it suffers from the same confusion of nomenclature that often occurs with respect to these two separate equitable doctrines as the Court recognizes in its Report.  However, despite this confusion, Michigan courts have long recognized the distinction between implied-in-fact contracts and implied-in-law contracts, despite overlapping elements:

"Although the set of facts which show a contract implied in fact and those circumstances which justify quantum meruit relief may overlap considerably, they are not one and the same." *Roznowski v. Bozyk*, 73 Mich. App. 405, 409 (Mich. Ct. App. 1977).

> Absent a valid, express contract or some bar to enforcement of its terms, a party may recover for services performed in quantum meruit. . . "[T]he court conclusively implies an intent to pay for services, in order to prevent unjust enrichment." . . The more general equitable doctrine of unjust enrichment is based on the principle that a party should not be allowed to profit at another's expense. *Dickinson Homes v. Barrette*, 2009 Mich. App. LEXIS 1137, 13-14 (Mich. Ct. App. May 21, 2009)(internal citations omitted).

"This Court has also explained that although the set of facts that show a contract implied in fact and those circumstances that justify quantum meruit relief may overlap considerably, they are not one and the same." *Heefner v. Cornell (In re McKim Estate)*, 238 Mich. App. 453, 458-459 (Mich. Ct. App. 1999).  See also, *Horak v. Goodwin*, 2000 Mich. App. LEXIS 666 (Mich. Ct. App. June 16, 2000) and *Kuhn v. NBD Bank*, 1998 Mich. App. LEXIS 2128 (Mich. Ct. App. Aug. 28, 1998).[13]

Inasmuch as Michigan has repeatedly recognized a distinction, Plaintiffs submit it is inappropriate for the Report to assume otherwise, particularly so as the Report recommends dismissal on that basis.

ii.    Arizona

The Report and Recommendation relies upon the Arizona case of *Murdock-Bryant Constr., Inc. v. Pearson*, 703 P.2d 1197 (Az. 1985)  for the proposition that unjust enrichment and quantum meruit are interchangeable and without distinction.  Respectfully, *Murdock-Bryant*  makes no such holding.

In fact, the only issue before the Arizona Supreme Court in that case was "whether a defendant may be held liable on a quantum meruit theory to make restitution for benefits received when defendant was neither a party in the contract under which plaintiff rendered services nor a party responsible for the wrong which permitted plaintiff to rescind the contract and seek restitution." *Id.* at 1200.

---

[13]The Michigan Court of Appeals has designated these two cases as unpublished opinions and, as such, are not precedentially binding.  It is cited to illustrate the long history of distinction between the causes of action under discussion.

*Murdock-Bryant* suffers also from the confusion of terminology which the Report recognizes. As with other states, Arizona (and *Murdock-Bryant)* recognizes the equitable doctrines flow from the remedy of restitution but loose language does not clarify much in that case.   However, the substantially differing elements that must be proved for the differing equitable claims <u>does</u> clarify that Arizona distinguishes between the two.

In Arizona, five elements must be proved to make a case of unjust enrichment: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment and (5) an absence of a remedy provided by law.  *Community Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995).

Quantum meruit, on the other hand has but three elements, completely omitting any requirement of showing lack of justification or absence of a remedy at law:  (1) that plaintiff is entitled to restitution, i.e., that the other party was "unjustly enriched at the expense" of the claimant; (2) that he rendered services which benefitted the other party; and (3) that he conferred this benefit under circumstances which would render the other party's retention of the value without payment inequitable.  *Allinson v. Bingham*, 2003 Ariz. App. Unpub. LEXIS 165 (Ariz. Ct. App. 2003).

Where one claim imposes additional and differing essential elements, Plaintiffs submit it is inaccurate to suggest they are identical or treated interchangeably.  Clearly, they are not.  The distinction between them in both quantity and content of essential elements establishes they <u>cannot</u> be deemed identical or interchangeable.  Certainly both doctrines require a showing of retention of an enrichment but common elements do not erase the differing ones.  Both negligent infliction of emotional distress and intentional infliction of emotional distress have the existence of emotional

distress as common element but they are clearly recognized as and treated as separate torts. Under the reasoning employed in the Report, that distinction would be eradicated due to the existence of a common element.

### iii.   Alabama

The Report recommends dismissal of Plaintiffs' quantum meruit claim because (a) if viewed as a contract implied in fact, it must be dismissed as Plaintiffs do not allege mutual assent to contract terms; and, alternatively, (b) it is "functionally" the same as the unjust enrichment claim and therefore must be dismissed on the sam e grounds.

With regard to the latter, the Report recommends dismissal of the unjust enrichment claim on unsupported legal and factual grounds.

Legally, the Report finds support in *Green v. Hospital Building Authority of Bessemer*, 318 So. 2d 701 (Ala. 1975) and *Steiger v. Huntsville City Bd. of Education*, 653 So. 2d 975 (Ala. 1995). However, this reliance is misplaced. While both these cases do make the statement that contracts implied in fact must show mutual assent to contract terms (offer, acceptance, consideration), both of those cases, the Alabama Supreme Court has clearly stated <u>this is an alternative </u>to the "usual" route of establishing a prime facie case for quantum meruit, <u>not the exclusive one:</u>

> We note that note no contract, whether express or implied-in-fact, is formed "without an offer, an acceptance, consideration, and mutual assent to terms essential to the contract." . . .<u>Because no express contract or contract implied-in-fact exists between the parties, in order for Mallory to prevail on his claim based on quantum meruit he must establish that Mary Elizabeth knowingly accepted his services and that  he had a reasonable expectation of being compensated for his services.</u>

*Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006)(internal citations omitted).

This is consistent with the only other Alabama case to apply this language to purely equitable

claim:

> Generally, under Alabama law, "[n]o contract is formed without an offer, an acceptance, consideration, and mutual assent to terms essential to the contract." . . . However, a "quasi contract is not a contract at all. A quasi contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent. . . . The purpose of imposing these contractual obligations is to bring about justice. . . . Moreover, these obligations are usually based on unjust enrichment or benefit; the defendant may be required to surrender the benefit he has received or even restore the plaintiff to a former status. . . . As the law may impose any obligations that justice requires, the only limit in the last analysis to the category of quasi contracts is that the obligation in question more closely resemble those created by contract than those created by tort.

*Parker v. CGI Techs. & Solutions, Inc.*, 2012 U.S. Dist. LEXIS 66945, 31-32 (S.D. Ala. May 11, 2012).

In every single other Alabama case in which this particular language is used, the plaintiff asserted breach of contract, or premised a claim upon other documents purported to constitute the equivalent of a contract, such as Board of Education regulations, lease agreements to which the plaintiff was not a party, bonds or sureties, written invention plans or other documents.

<u>In not a single case was a claim for either quantum meruit dismissed on these grounds alone.
Not one.</u>

The Plaintiffs herein make no claim of breach of contract. The Plaintiffs specifically deny the existence of any express contract between themselves and the Defendants. Nor do they premise their right of recovery upon a written document or collection of documents they claim as a contract equivalent. In the absence of such, the authority relied upon in the Report and Recommendations is not applicable.

The inappropriate application by the Report and Recommendation is even more apparent when case law specific to equitable doctrines is reviewed.  The Alabama appellate courts have clearly and unequivocally treated quantum meruit and unjust enrichment as separate and distinct:

> A claim of quantum meruit, or quasi-contract, is a request for equitable relief based on the principle "'that if one knowingly accepts services rendered by another, and the benefit and result thereof, the law implies a promise on the part of the one who so accepts with knowledge, to pay the reasonable value of such services rendered.'" . . . In order to succeed on a claim based on a theory of quantum meruit, the plaintiff must show that it had a reasonable expectation of compensation for its services. . . . However, "[w]hen an express contract exists, an argument based on a quantum meruit recovery in regard to an implied contract fails." . . . The existence of an express contract on a given subject generally excludes an implied agreement on the same subject.
>
> . . .
>
> To establish a claim of unjust enrichment, Carroll was required to prove that LJC or Clark "'"holds money which, in equity and good conscience, belongs to [Carroll] or holds money which was improperly paid to [LJC or Clark] because of mistake or fraud."'" . . . "One is unjustly enriched if his retention of a benefit would be unjust. . . . Retention of a benefit is unjust if (1) the donor of the benefit (here, allegedly [Carroll]) acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit (here, allegedly [LJC or Clark]) engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the' absence of mistake or misreliance by the donor, or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched.

*Carroll v. LJC Def. Contr., Inc.*, 24 So. 3d 448, 458-459 (Ala. Civ. App. 2009).  See also, *Hand Arendall, LLC v. Joiner,* 2012 U.S. Dist. LEXIS 48230, 7-8 (S.D. Ala. Apr. 5, 2012)(quantum meruit), *ANZ Advanced Techs., LLC v. Bush Hog, LLC*, 2009 U.S. Dist. LEXIS 97246, 31-34 (S.D. Ala. Sept. 29, 2009)(both quantum meruit and unjust enrichment claims), *Avis Rent A Car Sys. v. Heilman,* 876 So. 2d 1111, 1122-1123 (Ala. 2003)(unjust enrichment), *Johnson v. Gary L. Jester, P.C.*, 941 So. 2d 307, 309 (Ala. Civ. App. 2006)(quantum meruit).

In each of these cases, the courts have set forth the differing elements of quantum meruit and unjust enrichment, including explicating on more than one occasion that one cause (quantum meruit) requires a showing that plaintiff had reasonable expectation of compensation while the other (unjust enrichment) does not.  In no instance have the Alabama courts (or federal courts applying Alabama law) required a plaintiff asserting either quantum meruit or unjust enrichment to either plead or prove the existence of the elements of a contract, offer, acceptance, consideration, where no claim of breach of contract has been made.

The Recommendation that Plaintiffs' quantum meruit claim must be dismissed because it is "functionally equivalent" to the claim of unjust enrichment is contrary to unequivocal Alabama law. The Recommendation that Plaintiffs are required to plead facts showing the elements of contract formation are contradicted by unequivocal Alabama law.

Factually, the Complaint does assert facts showing all of the elements of the claim for quantum meruit: (1) the Plaintiffs rendered services for the benefit of Defendants by fulfilling Defendants' obligation to pay for repairs to the vehicles of their respective claimants and insureds (Complaint, ¶¶ 65, 75,130); (2) Plaintiffs perform these services professionally and at all times expected compensation (Complaint, ¶¶ 65, 131); (3) Defendants accepted the benefits of those repairs but failed and refused to provide full compensation therefore (Complaint, ¶¶ 66-69, 77-78, 82-83, 94-95, 109, 131).

Under applicable federal authority, the Court is required to assume the truthfulness of these factual assertions.  Should the Defendants wish to challenge them, they are free to do so properly via an answer.  As noted above, the proper method of challenging factual assertions is an answer, not a motion to dismiss.

The Complaint also sets out facts as to each element of unjust enrichment: (1) Plaintiffs performed valuable services by repairing the wrecked vehicles of Defendants' insureds and claimants (Complaint, ¶¶ 63, 65, 75, 130, 136); (2) Defendants have wrongfully failed to make full and complete payment for those repairs thereby retaining funds rightfully belonging to Plaintiffs (Complaint, ¶¶ 94-96, 101-102, 104, 131 and 137); (3) Defendants acted unconscionably by coercing Plaintiffs through economic exploitation, illegally fixing prices and making numerous false and misleading statements to Plaintiffs (as well as members of the public) regarding "market rate" and causing substantial damage to Plaintiffs as a result (Complaint, ¶¶ 95-99, 101-113, 140-41.).

As the above shows, the Report and Recommendation regarding quantum meruit under Alabama law is without legal or factual substance.   Should the Court decide to accept the recommendations nonetheless, Plaintiffs respectfully request the Court provide Alabama authority requiring pleading the elements of contract formation in equitable cases not asserting breach of contract claims, and Alabama authority permitting a court to conflate the distinct elements of the equitable claims.

### iv.    Illinois

The sole basis set forth by the Report and Recommendation for dismissing the Illinois Plaintiffs' claim for quantum meruit is the Complaint fails to set forth "facts showing that it would be unjust to deny them compensation from Defendants for any unrequested benefits they provided Defendants."

Respectfully, this is in error, both legally and factually.

The Illinois appellate courts have regularly and routinely held allegations that services were performed with the expectation of compensation therefore, that defendant benefitted from those

services but failed to make full payment therefore constitutes sufficient factual allegations for establishing retention of benefits is unjust.

"In the Illinois courts, in order to state a cause of action for unjust enrichment, one need allege only "that there was an unjust retention of a benefit, including money, by one party to the detriment of another party, against the fundamental principles of justice, equity, and good conscience." *Blumenthal v. Brewer*, 2014 IL App (1st) 132250, P12 (Ill. App. Ct. 1st Dist. 2014) *Michael Reese Hosp. & Medical Center v. Chicago HMO*, Ltd., 196 Ill. App. 3d 832, 836 (Ill. App. Ct. 1st Dist. 1990), *Douglass v. Wones,* 120 Ill. App. 3d 36, 44 (Ill. App. Ct. 2d Dist. 1983*), Kenneke v. First Nat'l Bank*, 65 Ill. App. 3d 10, 12 (Ill. App. Ct. 1st Dist. 1978).

This is consistent with the Restatement of Restitution.  In discussing whether or not an enrichment is unjust, the Restatement notes, "[m]ost of these decisions carry the reasonable implication, even if they do not state directly, that the plaintiff's restitution claim would be viable if the benefits in question had not been paid for." See Restatement (Third) of Restitution and Unjust Enrichment § 25, Reporter's Note b (2011).

Thus, the Report's recommendation that Illinois Plaintiffs' quantum meruit claim be dismissed for failing to allege facts showing Defendants' retention of benefits is unjust conflicts with clear and explicit authority under Illinois law, as well as the principles set forth by the Restatement, itself a source utilized repeatedly in the Report and Recommendation.

Factually, the Complaint alleges numerous facts setting for the elements of the quantum meruit claim, including that retention of monies owed by the Defendants is unjust: Plaintiffs performed professional services for Defendants' insureds and claimants, Defendants were responsible for payment of those services by way of their obligations to insureds and claimants,

Defendants failed and refused to make full payment for those services, Defendants' failure and refusal to make full payment for services rendered is unilateral and without legitimate basis, Defendants profited from retaining those funds due and owing to Plaintiffs, Plaintiffs have been substantially damaged as a result of Defendants' actions (Complaint, ¶¶ 81, 83, 92, 111-16, 117-19, 121, 123-26, 132-34, 149-51, 154-55, 157-58.).

Presumably the Defendants intend to allege they have paid all that is due.  However, should Defendants choose to make that argument, they must do so by way of an answer.   "[Defendants'] denials of Plaintiff's allegations will not be considered by the Court. The proper vehicle for the denial of allegations is in an answer, not a motion to dismiss." *Ulbrich,* 2012 U.S. Dist. LEXIS 114941 (S.D. Fla. Aug. 15, 2012).

Should the Court decide to accept the Recommendations with respect to Illinois Plaintiffs' quantum meruit claim, Plaintiffs respectfully request the Court provide Illinois-specific authority requiring additional facts for this claim.

<u>v.</u>      <u>New Jersey</u>

The Report and Recommendation concludes the New Jersey Plaintiffs' quantum meruit claims must be dismissed because "Plaintiffs could not have reasonably expected Defendants to pay them what they thought their services were worth, given Defendants' persistent refusal to do so in the past.  To the extent the New Jersey Plaintiffs provided a service to Defendants, the facts alleged show that it was not provided at Defendants' request or by mistake, or that doing the repairs without first negotiating price with Defendants was necessary to protect the interests of Plaintiffs, Defendants, or any third parties."

Again, the Report significantly errs in terms of both law and fact.

-28-

(a)      Reasonable expectation of payment

The Report once again relies upon the unsupported statement that Plaintiffs' expectations with regard to <u>amount</u> of payment negates the claim for quantum meruit.  This conflicts with more than one state law.

For quantum meruit, the essential elements of the claim are: (1) the performance of services in good faith,   (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.  *Starkey v. Estate of Nicolaysen*, 172 N.J. 60, 68 (N.J. 2002).

The Report asserts Plaintiffs' Complaint falls through an improper conflation of elements (3) and (4).  However, as previously noted, the elements do not require a reasonable expectation of the <u>amount</u> of compensation, merely a reasonable expectation of compensation at all.  New Jersey law does not support the Report's conclusion that quantum meruit is defeated as a matter of law because the Defendants have repeatedly avoided full payment in the past.

Reasonable value is a question of fact to be determined from the proofs forwarded by the parties. *West v. IDT Corp*., 2006 U.S. Dist. LEXIS 33204 (D.N.J. May 25, 2006)("In a quantum meruit action, plaintiff must provide competent evidence "to enable a jury intelligently and fairly to place a reasonable value upon the services claimed to have been rendered.")(rev'd on other grounds); *Weichert Co. Realtors v. Ryan,* 128 N.J. 427, 441 (N.J. 1992)("The commission amount should be determined on the basis of proofs tending to show the reasonable value of Tackaberry's services, including evidence of customary brokers' fees for similar transactions.");

In fact, the New Jersey Court appellate courts have more than once reversed and remanded a case where the plaintiff was not permitted an opportunity to rebut the defendant's unilateral

valuation of the services rendered.  *Bergen Builders, Inc. v. Horizon Developers, Inc.,* 44 N.J. 435, 438 (N.J. 1965)*, Littlefield v. Kearns,* 5 N.J. Super. 68, 72 (App.Div. 1949).

It is unquestionable that evidence of reasonable value of work performed is incumbent upon the Plaintiffs in pursuit of this claim.  However, the Report's findings as to reasonable expectation of payment precludes Plaintiffs from producing the same, both by way of production of their own records to a jury but also by way of expert evaluation.  Allowing the Defendants to unilaterally decide the reasonable value of Plaintiffs' services <u>and</u> the Court adopting that view violates New Jersey law.

Again, presumably the Defendants intend to dispute Plaintiffs' factual allegations they are entitled to full compensation for work performed but if they choose to do so, they must do so by way of an answer, not a motion to dismiss.  *Ulbrich*, LLC, 2012 U.S. Dist. LEXIS 114941, *5, (S.D. Fla. Aug. 15, 2012).

Should the Court elect to adopt this position, Plaintiffs respectfully request the Court provide reference to specific New Jersey authority allowing the court to dismiss a quantum meruit claim on the ground the Court accepts the Defendants' valuation of services at the pleading stage.

(b)     <u>Whether or not Plaintiffs performed services not requested by the Defendants is irrelevant</u>

The Report further recommends dismissal of this claim because Plaintiffs put forth no facts to show the services rendered were requested by the Defendant.  Respectfully, the Plaintiffs are not required to show any such thing.

The elements of quantum meruit under New Jersey law only require a showing that Defendants accepted the services provided, <u>not</u> that those specific services were requested.  The

Recommendation effectively creates an entirely new element into the cause of action, one New Jersey has not seen fit to create.

Furthermore, such a requirement specifically contradicts affirmative New Jersey authority which exclusively places the choice of repairs in the hands of the consumer, _not_ the insurance company.  New Jersey Administrative Code 11:3-103.(e).  Whether or not the Defendants requested Plaintiffs' services is irrelevant.  They are not permitted to choose or request the services of any repair facility on behalf of consumers.

Additionally, if the Defendants choose to dispute Plaintiffs' factual allegations, which include the fact that choice of repair facilities is exclusive to the consumer, they must do so by way of an answer, not a motion to dismiss.  _Ulbrich_, LLC, 2012 U.S. Dist. LEXIS 114941, *5, (S.D. Fla. Aug. 15, 2012).

The creation of a new, additional element into state law which does not have such an element is improper.  Should the Court elect to adopt this position, Plaintiffs respectfully request the Court provide reference to specific New Jersey authority which permits the Defendants' preferences to legally override that of the consumers as set out in New Jersey Administrative Code.

© The finding that Plaintiffs did not assert facts to show "failing" to negotiate with Defendants was necessary to protect Plaintiffs' interests is factually inaccurate

As this was a part of the overall unjust enrichment findings of the Report and Recommendations and is thoroughly discussed above, Plaintiffs refer the Court to that discussion above for extensive analysis, Subsection I.A., B., and C.  Plaintiffs will only remind the Court here they have no obligation whatsoever to negotiate, bargain or discount their prices, nor does New

Jersey provide any legal compulsion for doing so and therefore Plaintiffs cannot have "failed" to allege fact justifying an act they are not legally required to perform.

As to the purported factual deficiencies, for the Court's ease of reference, Plaintiffs do reproduce here the specific paragraphs of the New Jersey Complaints which contain the facts the Report alleges are missing:     New Jersey(6:14-cv-6013):   ¶¶ 37, 40, 44-46, 57-63, 64-66, 68-73,
78-82, 94-95.

New Jersey (6:14-cv-6012):   ¶¶ 31-32, 36, 38, 41, 45-47, 56-62, 63-65, 67, 69-72, 77-80, 81, 92-93, 97-98.

### vi.    Kentucky

The Report recommends dismissing the Kentucky Plaintiff's quantum meruit claim because the Complaint does not allege that "it rendered any services or furnished any materials to Defendants (as opposed to Defendants' insureds and claimants)."

Respectfully, Plaintiffs are somewhat confused by this recommendation.  It seems to suggest that services must be requested by the Defendants rather than rendered to the Defendants.  It also appears to suggest that services or materials can only be rendered to one person/entity at a time.

Plaintiff readily admits these are interpretations and may be the result of over-analysis of the Report's choice of language.  However, the recommendation is without logic in the absence of either or both of these assumptions.

With respect to the former assumption, Kentucky law does not require that services actually be requested by the Defendant to satisfy element (s) of quantum meruit, only rendered to the Defendant.  Such a requirement would directly contravene Kentucky law which leaves exclusive authority of choice of repair facility to the consumer.  Kentucky Revised Statute § 304.12-275.  The Defendants are, by operation of affirmative statute, required to accept the choice of consumers.

-32-

With respect to the latter, logic dictates otherwise.

In any event, Kentucky law has already provided a result, regardless of either interpretation's validity or lack thereof.  In the context of health insurance, the Eastern District of Kentucky (applying Kentucky law) concluded that a healthcare provider who rendered services to the defendants' insureds successfully satisfied all the elements of Kentucky quantum meruit law by providing the services for which the defendant insurer was obliged to pay:

> Coventry is paid by the state to make healthcare services available to its members. Accordingly, Coventry should be required to pay providers who fulfill that obligation. The services would be received by the members. Coventry also should know that healthcare services are not free and that providers expect to be paid. If ARH is not reimbursed for the reasonable value of the services it provides, Coventry or any other MCO receiving out-of-network services would be unjustly enriched. Thus, all prongs of the quantum meruit analysis are satisfied.

*Appalachian Reg'l Healthcare v. Coventry Health & Life Ins. Co.*, 2013 U.S. Dist. LEXIS 44389 (E.D. Ky. Mar. 28, 2013).

Though not healthcare related, the Kentucky Plaintiff is in the exact same position as was decided in *Appalachian*: the Defendants are paid by their insureds to provide benefits, including liability coverage where liability exists.  The Defendants are obliged to pay for repairs to the vehicles of their respective insureds and claimants.  The Plaintiff is the entity which provides the repair services.  The consumers receive those services.  The Defendants are fully aware repair services are not free and that body shops intend to be paid for those services.  Failing to pay for those services unjustly enriches the Defendants and, according to *Appalachian*, all four elements of quantum meruit recovery are present.

Plaintiff respectfully submit the Report and Recommendation as to this recommendation is in error.  Should the Court decide to accept this recommendation, Plaintiff respectfully requests the Court provide Kentucky authority supporting its position.[14]

vii.     Washington

The Report recommends dismissal of the Washington Plaintiffs' quantum meruit claim because the Plaintiffs "have not pled that any Defendant–as distinct from an insured–requested that any Plaintiff perform any repairs.  Again, respectfully the Report's conclusion is in error.

While quoting from a Washington case, the Recommendation does not take into account the weight of additional Washington authority regarding the elements of a quantum meruit cause of action:  (1) valuable services rendered; (2) to persons from whom payment was sought; (3) which were accepted and enjoyed by the persons; and (4) under circumstances that reasonably notified them that the plaintiff expected to be paid.  *Groom, Inc. v. Kabrick,* 2009 Wash. App. LEXIS 607 (Wash. Ct. App. Mar. 17, 2009).  See also *Bailie Communications v. Trend Business Sys.*, 61 Wn. App. 151, 159 (Wash. Ct. App. 1991).

The definition of the elements predates that set forth in the case relied upon by the Report and Recommendation, *Young v. Young*, 191 P.3d 1258. If one examines the language of *Young* with cursory review, it is clear the *Young* court recast the language of the quantum meruit elements.

---

[14]The Report and Recommendation notes that Kentucky courts "often conflate quantum meruit and unjust enrichment[,]" though it does not appear to have made its recommendation based upon this.  However, out of an abundance of caution, Plaintiff draws the Court's attention to *Flinn v. R.M.D. Corp.*, 2012 U.S. Dist. LEXIS 26964 (W.D. Ky. Feb. 29, 2012), which noted, "Although the elements required to prove claims for unjust enrichment and quantum meruit admittedly appear similar, perhaps even redundant, Kentucky courts apply two distinct tests for them, and this Court will duly regard them as independent theories of recovery."

-34-

There was not even reference to any authority by the *Young* court in reformulating the language of the elements.

While the difference may seem trivial, it is not, particularly in light of the Report and Recommendation.  Until–and after–*Young*, the elements of quantum meruit required a showing of rendering of valuable services to person from whom payment was sought.  While no doubt intending to streamline language, *Young* actually changed both the wording and the import of the elements. No explanation was provided, nor, as noted, authority for the alteration.

Under the traditional elements, which continue in use alongside the language of *Young*, it is not necessary for a defendant to request services, merely that services be rendered to the person sought to be charged for payment.  The allegations of the Complaint meet this definition: Plaintiffs rendered valuable services enabling the Defendants to execute their obligation to their respective insureds and claimants.  Plaintiffs have acknowledged the obligation by making partial payment for those services and accepted them.  Plaintiffs are professional repairers, performing their trade in commerce–for payment–and are entitled to full payment for those services.  (See Complaint, ¶¶ 5.2, 5.4.)

The Report ignores the element recitation which remains valid and in use in the State of Washington.   *Young* neither overruled nor amended those elements, as shown by authority subsequent to *Young*.  Plaintiffs submit it is not within the privilege of the Court to choose between the applications, particularly where, as here, the facts of the Complaint fully meet one of those. Plaintiffs submit the Court is not permitted to simply ignore valid law which contradicts its desired result.

This is particularly relevant as the Report and Recommendation acknowledged the purported existence of differing quantum meruit elements in analyzing the Virginia law claims.   While Plaintiffs object to that set of recommendations as well, it is relevant here for noting the court is aware of its obligations when parallel lines of authority exist.

Should the Court decide to accept the Recommendation on this point, Plaintiffs respectfully request the Court provide applicable Washington state authority which permits ignoring valid, extant authority from that state.

viii.    Virginia

The Report and Recommendation suggests Virginia Plaintiffs' quantum meruit claim must be dismissed because "they have not alleged facts showing that it would be unjust to deny them compensation from Defendants for any unrequested (by Defendants) benefits they conferred on Defendants" and "they have not pled that any Defendant requested any Plaintiff to perform any repair." Respectfully, these recommendations contradict the facts of the Complaint and Virginia law. In fact, in the latter portion of this discussion, the elements of quantum meruit recited by the Report do not appear anywhere in Virginia state authority.

The Report does initially appear to accurately set forth the elements of quantum meruit in Virginia:   (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value. *Nossen v. Hoy*, 750 F. Supp. 740, 744 (E.D. Va. 1990).

However, thereafter the Report recommends incorporating additional elements not set forth by Virginia law, specifically that Plaintiffs plead facts showing that benefits were requested by the Defendants.  That is not what Virginia law requires.

This is particularly important as the Report and Recommendations reserved making any findings on how Virginia (and other states) define "benefit."  In other words, the Report declined to define "benefit" but thereafter recommended dismissal because the Plaintiffs did not plead it would be unjust for Defendants to retain those undefined benefits without compensation.

As the Court is aware, the factual allegations of the Complaint are deemed true for purposes of a motion to dismiss challenge.  The Plaintiffs have alleged they performed valuable services, they are entitled to payment for those services, the Defendants are the parties obliged to make payment for those services, the Defendants have acknowledged that obligation by making partial payment for those services and without justification refused to make full payment, such actions resulting in financial harm to the Plaintiffs and a windfall profit to Defendants.  These are more than sufficient facts to establish it is unjust for Defendants to retain the funds they were obliged to pay out to the Plaintiffs.  (See Complaint, ¶¶ 51, 53, 62, 116-117, 121-22.)

The Report's finding that Plaintiffs failed to plead unjust retention is therefore without factual basis.  Furthermore, if the Defendants wish to assert they have paid all that is due, they are free to dispute the facts of the Complaint, but not by way of a motion to dismiss.  They are required to do so by way of an answer, asserting any affirmative defense they choose and bear the subsequent burden of proof and persuasion for those affirmative defenses.

Under Virginia law, it is not necessary for Plaintiffs to plead the Defendants requested the benefits, merely that such benefits were conferred with the Defendants' knowledge and acceptance

thereof.  The Report's unilateral creation of a "request" element violates Virginia law.  Such an additional element cannot even be reasonably inferred, particularly as Virginia case law has never held, neither explicitly nor effectively, required.  Examples of this include:

- *Franconia Two, LP v. Omniguru Sys.*, 82 Va. Cir. 256, 261 (Va. Cir. Ct. 2011)(sublessee occupant obliged in quantum meruit to reimburse landlord for water bills, though not a party to lease between landlord and tenant; occupant knew water, the benefit, was being provided to it, utilized the same but failed to make payment for same.   Court held it was unjust for occupant to enjoy benefit without compensating for it.

- *EDI Precast, LLC v. Mid-Atlantic Precast, LLC*, 2012 U.S. Dist. LEXIS 85119 (W.D. Va. June 20, 2012)(subcontractor entitled to quantum meruit recovery under Virginia law from contractor for work performed outside the subcontract requirements; defendant contractor did not request the additional work but was aware of and accepted it.

- *Gutterman Iron & Metal Corp. v. Figg Bridge Developers, L.L.C.*, 82 Va. Cir. 304, 306 (Va. Cir. Ct. 2011)(subcontractor permitted to go forward with quantum meruit claim for compensation against owner of property for work performed at request of general contractor; owner received benefit of subcontractor's efforts.

- *R. M. Harrison Mech. Corp. v. Decker Indus., Inc.,* 75 Va. Cir. 404, 405 (Va. Cir. Ct. 2008)(same circumstances as *Gutterman*, above)

Under the purported alternate line of elements for the claim, the Report does quote elements from a Fourth Circuit case, purporting to set out the elements of quantum meruit under Virginia law, *Raymond, Colesar, Glaspy Huss, P.C. v. Allied Capital Corp*, 961 F.2d 489 (4th Cir. 1992).  The elements of Virginia quantum meruit as set out by the Fourth Circuit are: (I) the plaintiff rendered valuable services, (ii) to the defendant, (iii) which were requested and accepted by the defendant, (iv) under such circumstances as reasonably notified the defendant that the claimant, in performing the work, expected to be paid by the defendant.

-38-

However, a review of that case and the authority that case cites show the Fourth Circuit took substantial liberties with reciting the elements, as none of the Virginia state cases upon which it relied actually set out the elements as recited by the Fourth Circuit.  In fact, <u>no Virginia case whatsoever sets out the elements of this claim as set forth in *Raymond*.</u>  Nor does any case cite to *Raymond* for these elements but for a single Fourth Circuit case, wherein it cited itself and which is not cited or relied upon for those elements, either.

Virginia state law, however, is replete with the actual elements of quantum meruit:  (1) a benefit received by the defendant from the plaintiff; (2) knowledge of the benefit by the defendant; and (3) the defendant's acceptance and/or retention of the benefit without remuneration to the plaintiff would be inequitable, leading to unjust enrichment.  *Gutterman Iron & Metal Corp.*, 82 Va. Cir. at 307.  See also, *R. M. Harrison Mech. Corp. v. Decker Indus., Inc.*, 75 Va. Cir. 404, 407 (Va. Cir. Ct. 2008), *R. M. Harrison Mech. Corp.,* 75 Va. Cir. 404), *T & M Elec. v. Prologis Trust,* 70 Va. Cir. 403, 405 (Va. Cir. Ct. 2006)  *E. E. Lyons Constr. Co. v. TRM Dev. Corp.*, 25 Va. Cir. 352, 354 (Va. Cir. Ct. 1991).

Indeed, with the exception of the Fourth Circuit, federal courts in Virginia also recognize and apply these elements of quantum meruit as set out by Virginia courts.  *EDI Precast, LLC v. Mid-Atlantic Precast, LLC,* 2012 U.S. Dist. LEXIS 85119 (W.D. Va. June 20, 2012)*, Grayson & Kubli, P.C. v. Goldstein,* 2006 U.S. Dist. LEXIS 96494, 9-10 (E.D. Va. Apr. 20, 2006), *Liberty Mut. Ins. Co. v. Carr,* 1993 U.S. Dist. LEXIS 14150 (W.D. Va. Sept. 28, 1993), *Nossen v. Hoy*, 750 F. Supp. 740, 744-745 (E.D. Va. 1990).

Plaintiffs respectfully submit it is inappropriate to rely upon a single case which itself provides no applicable authority for its findings and which is contradicted by all of Virginia state authority.

It is therefore clear that Virginia law neither explicitly nor implicitly requires a "request" element.  As noted above, quantum meruit claims do not rest on the intentions of the parties. Therefore the Report's conclusion that Virginia Plaintiff's quantum meruit claim must fail for failing to show a request for services by the Defendants violates Virginia law.

Finally, the "request" element invented by the Report directly contravenes other applicable Virginia law:

A. No person shall:

   1. Require an insured or claimant to utilize designated replacement or repair facilities or services, or the products of designated manufacturers, as a prerequisite to settling or paying any claim arising under a policy or policies of insurance;

   2. Engage in any act of coercion or intimidation causing or intended to cause an insured or claimant to utilize designated replacement or repair facilities or services, or the products of designated manufacturers, in connection with settling or paying any claim arising under a policy or policies of insurance;

Va. Code Ann. § 38.2-517.

The Report's inclusion of the non-existent "request" element of quantum meruit would necessarily eviscerate this statute.  The choice of repair facility and parts belongs exclusively to the consumer.  The consumer is the requesting party as a result of that exclusive right.  By requiring the defendant insurers stand as the requesting party would just as necessarily lead to the conclusion that if the responsible insurer does not request services it is not liable for payment of those services.  That is a result that cannot be permitted to stand.

Should the Court decide to accept this recommendation, Plaintiffs respectfully request the Court provide Virginia state authority which sets out a request from the defendant is a pre-requisite to quantum meruit relief.

## VI.    TORTIOUS INTERFERENCE

### All States

The Report and Recommendation determined that all Plaintiffs' state law tortious interference claims should be dismissed for improper group pleadings, while acknowledging the factual allegations themselves were sufficient to withstand a motion to dismiss with the exception of Alabama, discussed below).

Specifically, the Report noted, "Absent well pled allegations that the Defendants joined in a conspiracy or acted in concert, liability for tortious interference must be established on an individualized basis."

Respectfully, Plaintiffs disagree.  No state requires a conspiracy or concert of action among defendants which commit the same wrongful acts, nor do Plaintiffs mean to imply the Report suggested as much directly.  However, the net result of the Recommendation is to unnecessarily lengthen the Complaint for no reason whatsoever with repetitive paragraphs consisting of the same facts, the only distinction between them being the name of the Defendant, as the Defendants all engage in the same behavior.

As has been previously noted in other pleadings, Defendants have complained about "group pleading" before and, at the Court's direction, Plaintiffs amended their complaint such that each Defendant was named individually in each and every applicable paragraph.  Neither the Defendants

nor the Court were satisfied with this, though likely for different reasons, and despite the fact that it was exactly what the Defendants asked for and what the Court directed.

As Plaintiffs have pointed out before, as well, the "group pleading" of which Defendants complain is acceptable for practical purposes in instances where each defendant has engaged in the same activity. There is no requirement that such practical shorthand is limited to situations involving conspiracy or group action.

In *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997), the Court held that "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually. We also note that, under the liberal requirements of notice pleading, '[n]o technical forms of pleading ... are required.'" The Eleventh Circuit is not alone. Numerous courts, including the Middle District of Florida, have recognized that in complaints where each defendant is alleged to have engaged in identical activities, group pleading is permitted. *EEOC v. Gargiulo, Inc*., 2006 U.S. Dist. LEXIS 23927 (M.D. Fla. Mar. 22, 2006).

This approach has been recognized as reasonable under circumstances such as the present cause by numerous courts and even in cases under the heightened pleading standard of Rule 9. "It may at times be appropriate and convenient for a pleading to use the short-hand term "Defendants . . ." *Falat v. County of Hunterdon*, 2013 U.S. Dist. LEXIS 37398 (D.N.J. Mar. 19, 2013); *Whalen v. Stryker Corp*., 783 F. Supp. 2d 977, 982 (E.D. Ky. 2011)("When faced with a motion to dismiss for failure to plead fraud "with particularity" as required by Rule 9(b) of the Federal Rules of Civil Procedure,  "a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8" of the Federal Rules of Civil Procedure.").

Despite this authority, despite there being no authority whatsoever that requires the assertion of a conspiracy or coordinated activity by Defendants, despite the Plaintiffs having already provided in a prior complaint exactly what the Report recommends to the satisfaction or approval of no one, and despite the fact the Report acknowledges the facts asserted in the complaint substantiating the elements of the tortious interference claims are sufficient to withstand dismissal, the Report still recommends dismissal on this ground.  As there is neither legal nor practical basis for revising a complaint which meets the standards of Rule 11 in this subject, Plaintiffs respectfully object.

## VII.   INSUFFICIENT PAYMENT CLAIMS

In the Reports, there are several bases put forth for dismissing Plaintiffs' insufficient payment claims, primarily based upon various state grounds.   Respectfully, Plaintiffs assert these recommendations are erroneous based upon both legal and factual grounds.

<u>Michigan</u>

The Report recommends dismissing Michigan Plaintiffs' claims for insufficient payment of repair costs because "Plaintiffs still have not identified the source of this alleged duty, and they do not cite any authority suggesting that Michigan law recognizes a cause of action for breach of an unspecified legal duty."

Plaintiffs assert the duty to pay for repairs has been acknowledged by the Defendants through partial payment of the debts owed.  Though most often cast in the procedural context of a statute of limitation, this has been recognized by Michigan law for over a century:

> The statute does not prescribe what effect part payment of a demand shall have, but it is familiar law that it operates as an acknowledgment of the continued existence of the demand, and as a waiver of any right to take advantage, by plea of

-43-

> the statute of limitations, of any such laps of time as may have occurred previous to the payment being made. The payment is not a contract; it is not in itself even a promise; but it furnishes ground for implying a promise in renewal from its date, of any right of action which before may have existed.

*Miner v. Lorman*, 56 Mich. 212, 216 (Mich. 1885). *See also*, *Yeiter v. Knights of St. Casimir Aid Soc'y*, 461 Mich. 493, 497 and FN 6 (Mich. 2000), *Alpena Friend of the Court ex rel. Paul v. Durecki*, 195 Mich. App. 635, 638 (Mich. Ct. App. 1992).

Having acknowledged the debt through partial payment–which is memorialized in Michigan law–Defendants cannot now be heard to deny the same.  In fact, Defendants have not denied they are obligated to pay for repairs of the vehicles of their respective insureds and claimants.  In the absence of such a denial, Plaintiffs submit the Report has both placed form over function and created a defense the defendants themselves do not as yet allege.

What the Defendants are arguing is they are not required to pay the full amount of repairs performed by Plaintiffs.  That is a factual dispute, not a legal one and as such it not appropriate consideration for a motion to dismiss, but must be asserted in an answer. *Ulbrich*, LLC, 2012 U.S. Dist. LEXIS 114941, *5.

Factually, this argument is supported by the Complaint, including but not limited to the following:  Plaintiffs assert the Defendants are responsible for the payment of repairs for their respective insureds and claimants; that Defendants failed to make full payment for repairs, only partial payment;  that Defendants unilaterally and without just or reasonable cause refused to make full payment; that Defendants refused or attempted to refuse to allow Plaintiffs to make necessary repairs;(See Complaint, ¶¶ 53, 89, 90, 92, 97, 104.

Again, if Defendants wish to dispute these facts, they are free to do so by way of a properly filed answer.

Plaintiffs respectfully submit the Recommendation is legally and factually inaccurate and should not be accepted.  Should the Court decide to accept this recommendation, Plaintiffs respectfully request the Court provide Michigan authority setting out that Michigan-licensed insurance companies are not required to pay the claims of their insureds and claimants after acknowledging liability for the same.

## CONCLUSION

For the reasons set forth above, the Plaintiffs respectfully object to the Report and Recommendations.  Plaintiffs request the Reports be rejected as to the objections made herein.

Respectfully submitted, this the 29th day of June, 2015.

**THE ONLY ONE, INC., ET AL**

**LEGENDS COLLISION, LLC., ET AL**

**PACIFIC COAST AUTO BODY, INC., et al.,**

**KALLEMEYN COLLISION CENTER, INC., *et al.*,**

**CAMPBELL COUNTY AUTO BODY, INC.**

**RODENHOUSE BODY SHOP, INC., ET AL**

**CONCORD AUTO BODY, INC.**

**ULTIMATE COLLISION REPAIR, INC.**

**QUALITY AUTO PAINTING CENTER OF ROSELLE, INC., TRADED AS PRESTIGE AUTO BODY**

-45-

**LEIF'S AUTO COLLISION CENTERS, LLC**

**ALLIANCE OF AUTOMOTIVE SERVICE PROVIDERS, INC., ET AL**

**LEE PAPPAS BODY SHOP, INC., ET AL**

**HAURY'S AUTO BODY, ET AL.**

**BY:**   **/s/_____Allison P. Fry**
John Arthur Eaves, Jr.
Allison P. Fry

*Attorneys for the Plaintiff*

John Arthur Eaves,
Attorneys at Law
101 N. State Street
Jackson, MS 39201
Telephone:      601.355.7961
Facsimile:      601.355.0530
allison@eaveslaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a true and correct copy of the foregoing Plaintiff's Response to Defendants' Motion to Dismiss has been served electronically via the ECF system all counsel of record registered to receive note.

/s/ Allison P. Fry

-46-