UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LEGENDS COLLISION CENTER, LLC,
JAN'S EUROPEAN AUTO BODY
INCORPORATED, ROBERT K ISHAM
and AIRPORT ENTERPRISES
INCORPORATED,

     Plaintiffs,

v.                                   Case No:   6:14-cv-6006-Orl-31TBS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, STATE FARM
FIRE AND CASUALTY COMPANY,
FARMERS INSURANCE COMPANY OF
ARIZONA, FARMERS INSURANCE
EXCHANGE, ZURICH AMERICAN
INSURANCE COMPANY,
PROGRESSIVE PREFERRED
INSURANCE COMPANY,
PROGRESSIVE ADVANCED
INSURANCE COMPANY,
PROGRESSIVE CASUALTY
INSURANCE COMPANY, GEICO
CASUALTY COMPANY, GEICO
GENERAL INSURANCE COMPANY,
GEICO INDEMNITY COMPANY,
GOVERNMENT EMPLOYEE'S
INSURANCE COMPANY, ALLSTATE
FIRE AND CASUALTY INSURANCE
COMPANY, ALLSTATE INDEMNITY
COMPANY, ALLSTATE INSURANCE
COMPANY, ALLSTATE PROPERTY
AND CASUALTY INSURANCE
COMPANY, UNITED SERVICES
AUTOMOBILE ASSOCIATION, USAA
CASUALTY INSURANCE COMPANY,
USAA GENERAL INDEMNITY
COMPANY, AMERICAN FAMILY
MUTUAL INSURANCE COMPANY,
LIBERTY MUTUAL INSURANCE
COMPANY, SAFECO INSURANCE
COMPANY OF AMERICA, HARTFORD
CASUALTY INSURANCE COMPANY,

HARTFORD INSURANCE COMPANY
OF THE MIDWEST, CSAA FIRE &
CASUALTY INSURANCE COMPANY,
NATIONWIDE INSURANCE COMPANY
OF AMERICA, NATIONWIDE MUTUAL
INSURANCE COMPANY, NATIONWIDE
AFFINITY INSURANCE COMPANY OF
AMERICA, SENTRY INSURANCE
MUTUAL COMPANY, METROPOLITAN
CASUALTY INSURANCE COMPANY,
METROPOLITAN GROUP PROPERTY
AND CASUALTY INSURANCE
COMPANY, METROPOLITAN
PROPERTY AND CASUALTY
INSURANCE COMPANY, INFINITY
INSURANCE COMPANY, TRAVELERS
PROPERTY CASUALTY COMPANY,
TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA, TRAVELERS
CASUALTY INSURANCE COMPANY OF
AMERICA, TRAVELERS INDEMNITY
COMPANY, SAFEWAY INSURANCE
COMPANY, COUNTRY MUTUAL
INSURANCE COMPANY, UNITED
AUTOMOBILE INSURANCE COMPANY,
ENCOMPASS INSURANCE COMPANY
OF AMERICA and MERCURY
CASUALTY COMPANY,

      Defendants.

_____

## REPORT AND RECOMMENDATION

      This case comes before me on referral from the district judge, for report and

recommendation on the questions of state law argued in the following motion papers:

- Moving Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 94);

- Certain Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 95);

- Certain Defendants' Amended Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 96);

- Geico Casualty Company, Geico General Insurance Company, Geico Indemnity Company, Government Employees Insurance Company's Motion and Supporting Memorandum to Dismiss Plaintiffs' First Amended Complaint (Doc. 97);

- Plaintiffs' Omnibus Response to Motion to Dismiss Amended Complaint (Doc. 99);

- Geico Casualty Company, Geico General Insurance Company, Geico Indemnity Company and Government Employees Insurance Company's Reply in Support of Motion and Supporting Memorandum to Dismiss Plaintiffs' First Amended Complaint (Doc. 104);

- Moving Defendants' Reply in Further Support of Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 105);

- Consolidated Reply in Support of Certain Defendants' Motions to Dismiss Plaintiffs' First Amended Complaints (Doc. 106); and

- State Farm's Notice of Supplemental Authority (Doc. 107).

After due consideration, I respectfully recommend that the motions to dismiss the state law claims be **granted**.

## I. Background

The Court is familiar with the background of this case.   Plaintiffs are a group of Arizona auto body repair shops and Defendants are insurance companies that write automobile insurance in the state of Arizona.   Plaintiffs allege that over a course of years, they have provided motor vehicle collision repair services to Defendants' policyholders and claimants (Doc. 93, ¶ 70).   Plaintiffs complain that Defendants "have engaged in a widespread, concerted and combined course of illegal conduct to depress automobile repair costs and control the automobile repair industry" to the detriment of the body shop industry and the public (Id. at ¶¶ 72, 416).   Defendants allegedly exercise control over the body shop industry by

> (1) price fixing labor rates; (2) price fixing replacement parts; (3) compelling use of substandard or dangerous replacement

parts; (4) compelling use of parts procurement programs or parts sources; (5) boycotting Plaintiffs' businesses; and/or (6) steering customers away from Plaintiffs and similarly situated body shops for refusing to comply with fixed prices, refusing to use substandard or improper parts, or nonperformance of critical processes and procedures.

(Id. at ¶ 72).   Defendants have allegedly interfered

with Plaintiffs' current and prospective business relations by, among other things: (1) intentionally misrepresenting and/or knowingly making false statements regarding the quality, efficiency and ethical reputation of Plaintiffs' businesses and (2) threatening insureds and/or claimants with denial of coverage (or portions of available coverage) if the insured and/or claimant persists in their efforts to patronize Plaintiffs' businesses.

(Id. at ¶ 73).   Defendants' actions are claimed to have "effectively eradicated competition in the collision repair industry."   (Id. at ¶¶ 74, 416).

Plaintiffs filed their original complaint in the United States District Court for the District of Arizona on October 28, 2014 (Doc. 1).   The United States Judicial Panel on Multidistrict Litigation transferred the case to this district for coordinated or consolidated pretrial proceedings before Senior District Judge Gregory A. Presnell (Doc. 31).   On motions to dismiss, this Court dismissed Plaintiffs' quasi estoppel count with prejudice, and the remaining claims without prejudice, with leave to amend (Docs. 83, 91).   Plaintiffs' amended complaint (the "FAC") alleges claims of price fixing and illegal boycott in violation of the Sherman Act, 15 U.S.C. § 1, and state-law claims for tortious interference with business relations and unjust enrichment (Doc. 93).

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."   Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

A FED. R. CIV. P. 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case.   Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984).   In determining whether dismissal on this basis is appropriate, the complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true.   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1359 (11th Cir. 2011).   The Supreme Court has explained that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."   Twombly, 550 U.S. at 546.   The court should liberally construe the complaint's allegations in the plaintiff's favor.   Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).   But, a claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   Twombly, 550 U.S. at 555.   "Factual allegations must be enough to raise a right to relief above the speculative level[.]"   Id.   A complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face."   Id. at 570.   Legal conclusions devoid of factual support are not entitled to an assumption of truth.   Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citing Iqbal, 556 U.S. at 678); Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).

## III. Discussion

Count III: Tortious Interference with Business Relations

To establish a claim for tortious interference with business relations under Arizona law, a plaintiff must allege "(1) the existence of a valid business expectancy; (2) the interferer's knowledge of the business expectancy; (3) the interferer intentionally induced or caused termination of the business expectancy; and (4) damage suffered as a result of

termination of the business expectancy." Dube v. Likins, 167 P.3d 93, 99-100 (Ariz. Ct. App. 2007) (citing Miller v. Hehlen, 104 P.3d 193, 202 (Ariz. Ct. App. 2005)). "A claim for tortious interference with a business expectancy is insufficient unless the plaintiff alleges facts showing the expectancy constitutes more than a mere 'hope.'" Id. (quoting Marmis v. Solot Co., 573 P.2d 899, 902 (Ariz. Ct. App. 1977)). "Finally, the intentional interference must be a '[w]rongful interference [that] rests on improper conduct by the defendant ... not on whether a breach [or termination of the expectancy] followed.'" Id. (quoting Bar J Bar Cattle Co. v. Pace, 763 P.2d 545, 547 (Ariz. Ct. App. 1988)) (emphasis in original). See also Miller, 104 P.3d at 202 ("The interference must be 'improper' before liability will attach."). "[A] competitor does not act improperly if his purpose at least in part is to advance his own economic interests.'" Miller, 104 P.3d at 202 (quoting Bar J Bar Cattle Co., 763 P.2d at 549). Whether a particular action is improper is determined by a consideration of the seven factors set forth in the Restatement (Second) of Torts § 767 (1979):

> (a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,
>
> (d) the interests sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
>
> (f) the proximity or remoteness of the actor's conduct to the interference and
>
> (g) the relations between the parties.

Wagenseller v. Scottsdale Mem'l Hosp., 710 P.2d 1025, 1042 (Ariz. 1985).

Plaintiffs allege that Defendants have tortuously interfered in their businesses by making misleading and false statements to steer prospective customers away from Plaintiffs' shops (Doc. 93, ¶ 463).   The tortious interference count begins at paragraph 461 of the FAC.   No preceding paragraphs are incorporated by reference.   If the earlier paragraphs are excluded then the FAC fails to state a cause of action for a host of reasons.   The alternative, and what I believe Plaintiffs intended, is that all 460 preceding paragraphs, including the antitrust counts, are included in this count.   The incorporation of each preceding count into each succeeding count is a form of "shotgun pleading" and is prohibited.   Yeyille v. Miami Dade Cty. Pub. Sch., ___ F. App'x ___, No. 15-13053, 2016 WL 692050, at *1 (11th Cir. Feb. 22, 2016).   The Eleventh Circuit has condemned shotgun pleading, observing that "'the unifying characteristic of all types of shotgun pleadings is that they fail to … give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'"   Id. (quoting Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015)).   By commingling all of their factual allegations, regardless of the counts they pertain to, Plaintiffs have improperly placed the burden on Defendants and the Court to determine which allegations pertain to which counts of the FAC.

The FAC is also a group pleading.   It routinely alleges conduct committed by "Defendants" or "Defendant insurers," meaning all 42 insurance companies named in the case, against "Plaintiffs" who are four auto body shops.   The FAC states that references to "Defendant insurers" are intended to convey that each and every Defendant engaged in the same conduct and "should be read in such a way that each defendant is having the allegations made about it individually."   (Doc. 93, ¶ 64).   When Plaintiffs do refer to Defendants by name they do not distinguish between related companies.   For example,

Plaintiffs collectively refer to GEICO General Insurance Company, GEICO Indemnity Company, and Government Employees Insurance Company as "GEICO Defendants."[1]

In my last report and recommendation, I discussed Plaintiffs' reliance on collective allegations against "Defendants," and I noted that the use of group pleading has been an issue since the start of this litigation (Doc. 83 at 5-6).   On June 11, 2014, the Court *sua sponte* dismissed the original complaint in the Florida  case, in part because of the use of group pleading:

> With limited exceptions, the allegations of wrongdoing are attributed, collectively, to every Defendant and alleged to have been perpetrated upon every Plaintiff.   While there may be situations in which such collective descriptions are sufficient, at least some of claims asserted here require individualized allegations.

(Case No. 6:14-cv-310, Doc. 110 at 2).   The Florida Plaintiffs amended their complaint by adding the following sentence to each paragraph that referred generally to "Defendants:"

> The individual Defendants specifically included within the use of the term "the Defendants" in this paragraph include 21 Century Centennial Insurance Company, 21 Century Indemnity Insurance Company, Acceptance Indemnity Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Insurance Company, Bristol West Insurance Company, Direct General Insurance Company, Encompass Indemnity Company, Esurance Property & Casualty Insurance Company, Esurance Insurance Company, First Acceptance Insurance Company, Inc., Florida Farm Bureau General Insurance, Florida Farm Bureau Casualty Insurance Company, Foremost Insurance Company, GEICO General Insurance Company, Hartford Accident and Indemnity Company, Hartford Underwriters Insurance Company, Horace Mann Insurance Company, Infinity Auto Insurance Company, Liberty Mutual Insurance Company, Mercury Insurance Company of Florida, MGA Insurance Company, Inc., National General Insurance Online, Inc., Nationwide Insurance Company of Florida, Inc., Nationwide Mutual Insurance

---

[1] GEICO Casualty Company is named in the FAC, but there are no factual allegations against this Defendant and it is not included in Plaintiffs' collective reference to "GEICO Defendants."   (Doc. 93, ¶¶ 21, 25).

> Company, Ocean Harbor Casualty Insurance Company, Old
> Republic Insurance Company, Progressive American
> Insurance Company, Progressive Select Insurance Company,
> Safeco Insurance Company of America, Security National
> Insurance Company, Sentry Insurance A Mutual Company,
> State Farm Mutual Automobile Insurance Company, The
> Cincinnati Insurance Company, Travelers Indemnity
> Company, USAA Casualty Insurance Company, United
> Services Automobile Association, Westfield Insurance
> Company, Windhaven Insurance Company, and Zurich
> American Insurance Company.

See A&E Auto Body, Inc. v. 21st Century Centennial Ins. Co., No. 6:14-cv-310-Orl-31TBS,

2015 WL 304048, at *3 (M.D. Fla. Jan. 21, 2015).

In its January 21, 2015 Order dismissing the Florida amended complaint, the Court

condemned this practice:

> Not surprisingly, the term "the Defendants" appears
> throughout the Amended Complaint.   As a result of the
> unwarranted inclusion of these names wherever that phrase
> appears, the Amended Complaint is more than twice as long
> as the (already lengthy) Complaint, and much more difficult to
> read.   This is unacceptable, and will result in sanctions if not
> cured in subsequent pleadings.   A requirement to provide
> "individualized allegations" cannot reasonably be read as a
> requirement to repeat the name of every individual Defendant,
> over and over.
>
> Counsel for the Plaintiffs argue that, wherever they use the
> term "the Defendants," they always intend to refer to every
> single Defendant.   But this does not appear to always be the
> case.   For example, in the paragraphs quoted above, the
> Plaintiffs allege that "the Defendants" enter DRP agreements
> with the individual Plaintiffs.   But according to the list that the
> Plaintiffs attached to the Amended Complaint, only a handful
> of the Defendants have entered into DRPs with any Plaintiff.
> (Doc. 167-4).   And some Defendants have informed the Court
> that they have never participated in a DRP with any  repair
> shop.   The Plaintiffs should insure that their  references to
> "the Defendants" are, in fact, intended to encompass every
> single Defendant.

Id. at *3-4.   In a footnote, the Court observed:

> Plaintiffs have not addressed the Court's concerns over their attempt to proceed collectively on state law claims, such as conversion and unjust enrichment, which would seem to require individualized allegations.   As those claims are being dismissed on other grounds, and in the absence of detailed briefing on the issue, the Court will not spend more time on the issue.   However, the issue has not been settled, and any party may raise it in connection with future pleadings.

Id. at *4 n.8.

I previously recommended dismissal in this and 13 related cases due to group pleading (Doc. 83).   In doing so I explained in detail why group pleading was found insufficient in the Florida, Tennessee, Utah, and Louisiana cases (Id. at 6-9).   In analyzing the tortious interference counts, I addressed the different levels of specificity required by 12 states to identify the prospective contractual relationship that is allegedly being interfered with and noted that Arizona and some other states "allow a plaintiff to state a claim for tortious interference with prospective contractual relationship based on interference with an identifiable class of customers."[2]   (Id. at 38).   Plaintiffs cite to this statement and argue that they have plead a business expectancy with an identifiable class of customers, "namely Defendants insureds and/or claimants, Plaintiffs' current customers, and customers that represented to Defendant insures that a Plaintiff's business was their choice repair facility."   (Doc. 99 at 42).   Plaintiffs' argument ignores

---

[2] Defendants continue to argue that Arizona law does not permit a claim for tortious interference with business relations based on interference with an identifiable class of customers (See e.g., Doc. 104 at 5).   Defendants correctly note that the case cited in my prior report and recommendation, Dube v. Likins, 167 P.3d 93 (Ariz. Ct. App. 2007), expressly declined to decide the issue.   See id. at 100-01.   However, in Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cty., Inc., 637 P.2d 733, 740 (Ariz. 1981), the Arizona Supreme Court held that the defendant's publication of defamatory reports about the plaintiff's business would likely have deterred potential customers and therefore supported a claim for tortious interference.   Antwerp supports a finding that a claim for tortious interference with business relations can be based on interference with an identifiable class of customers.   See also 9A Ariz. Prac., Bus. Law Deskbook § 33:8 (2015-2016 ed.).

the remainder of my report and Judge Presnell's order dismissing the complaint.   The

Court found that "[e]ven in those states that allow a plaintiff to establish a claim for

tortious interference with business relationships or prospective economic advantage

based on interference with an identifiable class of customers," "at a minimum, Plaintiffs

should allege sufficient facts specific to each Defendant, or at least each corporate family

of Defendants, to tie that Defendant to the wrongdoing alleged."   (Doc. 83 at 11, 38).

Plaintiff's allegations fell short of this standard because they attributed allegations

of wrongdoing collectively to every Defendant (Id. at 39).   As the Court explained in its

Orders dismissing the Tennessee, Utah, and Louisiana actions, Plaintiffs' general

allegations that "'some unidentified Defendants–or all Defendants–interfered with some

unidentified customers of some unnamed Plaintiff does not satisfy the requirements of

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).'"   (Id. (quoting

Brewer Body Shop, LLC v. State Farm Mut. Auto. Ins. Co., 101 F. Supp. 3d 1256, 1260

(M.D. Fla. 2015); Alpine Straightening Sys. v. State Farm Mut. Auto. Ins. Co., 6:14-cv-

6003-Orl-31TBS, 2015 WL 1911635, at *1 (M.D. Fla. April 27, 2015); Parker Auto Body,

Case No. 6:14-cv-6004, Doc. 118 at 3; S. Collision & Restoration, LLC v. State Farm Mut.

Auto. Ins. Co., No. 6:14-cv-6005-Orl-31TBS, 2015 WL 1911768, at *1 (M.D. Fla. April 27,

2015)).   In overruling Plaintiffs' objections and dismissing the complaint, the Court

explained that "Plaintiffs have no support for their continued insistence on pleading

tortious interference on a group basis, and this Court has consistently ruled that group

pleading will not suffice in this context."   (Doc. 91; 6:14-md-2557-GAP-TBS, Doc. 222 at

24).

Despite the Court's guidance, Plaintiffs have done little to correct these pleading

defects in their FAC.   They continue to assert that group pleading is permitted and that

the evidence to prove their tortious interference claim is within the control and possession of Defendants.   Plaintiffs allege that "Defendants utilize false, misleading and/or disparaging statements to coerce prospective customers not to select Plaintiffs' repair facilities, to stifle business at Plaintiffs' repair facilities, and/or to divert business away from Plaintiffs' repair facilities."   (Doc. 99 at 45).   The FAC alleges that Defendants have employed "uniform steering practices for several years" in which "[a]fter the consumer selects one of the Plaintiffs' shops as their choice repair facility, the respective Defendant insurer's agent provides a document containing, or verbally transmits, one or more of nine specific false or misleading statements (Doc. 93, ¶¶ 297, 301).   What is missing are averments of fact to supply the who, what, when, where, and how to support Plaintiffs' claims.   Absent these facts, it is not plausible to believe that every Defendant made the same statements to every prospective customer, or that every customer who elected to use one of Defendants' preferred shops was improperly steered by the Defendants.   The over breadth of Plaintiffs' averments is evidenced by the facts alleged in the FAC, which contains specific examples of alleged steering.   Those allegations, which pertain to only a few Defendants, demonstrate that there are material variations in the facts pertaining to each customer Plaintiffs believe was steered by a Defendant and do not support Plaintiffs' generalized allegations.

The allegations of specific instances of steering are also insufficient to state a claim.   Although Defendants address many of the specific instances directly in their motions, Plaintiffs take a more general approach in their response.   They discuss a limited number of specific instances of steering in the context of a single element of their tortious interference claim, but they fail to explain how any one example states a claim independent from the other examples.

For instance, in discussing whether they adequately plead the existence of a business expectancy, Plaintiffs cite to paragraphs 304-310[3] of the FAC and make the following argument:

> For example, in the case of one particular insured, GEICO diverted business away from Legends first by coercing the insured to commence repair at GEICO's preferred repair facility notwithstanding the insured's express request to have the vehicle repaired by Legends and, second, by later declaring the vehicle – which had been purportedly repaired by Gerber - a total loss eight months after the insured placed the vehicle in Legends' custody for the purpose of initiating re-repair to the vehicle.   *See* Amended Complaint at ¶¶ 304-313.   Accordingly, the Amended Complaint adequately alleges a business expectancy, and any dispute as to the existence of a business expectancy constitutes an issue of fact that is not ripe for adjudication at this early stage of the litigation.

(Doc. 99 at 42).

Paragraph 304 alleges that an unidentified GEICO insured was in an automobile accident and that while she was hospitalized, GEICO had her vehicle towed to a DRP shop (Doc. 93, ¶ 304).   When the insured "inquired whether she could have her vehicle repaired at Legends," GEICO's agent said she would be responsible for the towing fees, that Legends would have to submit estimates for the repair and get them approved, and that her insurance deductible would be waived if the vehicle was repaired at the DRP shop.   The agent also warned the insured that she had almost expended her coverage for a rental car (Id. at ¶¶ 304-05).   The insured had her vehicle repaired at the DRP shop then brought her vehicle to Legends after determining that the repairs were not competently performed (Id. at ¶¶ 306-09).   Legends provided an estimate that GEICO refused to authorize, and GEICO eventually declared the vehicle a total loss (Id. at ¶

---

[3] Plaintiffs actually cite to paragraphs 304-313, but paragraphs 311-313 are unrelated to 304-310.

310).   GEICO then "refused to fully reimburse Legends for storage fees and rental vehicle charges that were required as a result of GEICO Defendants' inaction."   (Id.).

Notably absent from the FAC is any allegation that GEICO's actions were unlawful. Plaintiffs do not allege that GEICO made false or misleading statements to its insured, and there are no allegations that GEICO made any of the nine purported statements that every Defendant supposedly uses to steer an insured who identifies one of the Plaintiffs' shops as a potential repair facility (Id. at ¶ 297).   Plaintiffs argue that it is improper for a Defendant to offer incentives for using a DRP shop, but this argument is not supported by averments in the FAC.   And, Legends' alleged damages, i.e., the refusal to fully reimburse storage and rental fees, is wholly unrelated to Plaintiffs' allegations that the insured was steered away from Legends' shop.   While Plaintiffs say in their response to the motions to dismiss that GEICO declared the vehicle a total loss in order to boycott Legends' and avoid having to pay it for repair services, storage fee, and rental vehicles charges, there are not averments in the FAC to support this argument.

Paragraph 316 of the FAC alleges that State Farm told a customer it would authorize repairs at a DRP shop immediately but that it would take 15 days to get an appraiser to authorize the repair at Plaintiff Jan's Spectrum's shop (Doc. 93, ¶ 316).   This is another example where Plaintiffs' specific averments do not support their general allegations of "uniform steering practices."   (Id. at ¶ 301).   State Farm did not make one of the purported false statements that every Defendant allegedly uses to steer insureds, and the specific allegation against State Farm is not consistent with Plaintiffs' general allegation that Defendants conceal the fact that they are the cause of delay in non-DRP shops providing an estimate.

Paragraphs 320 and 321 of the FAC concern more delays in having an adjuster provide an estimate.   Plaintiffs complain that Defendants provide immediate estimates and immediately authorize rental vehicle charges at DRP shops, but that "it will take longer for the estimator to review the subject vehicle" at a non-DRP shop and do not authorize rental vehicle charges until the estimator reviews the vehicle."   (Id. at ¶ 320-21).   Accepting these allegations as true, they do not amount to tortious interference. There is no assertion that Defendants' statements are false or that it is illegal for Defendants to permit DRP shops to make estimates or authorize rental vehicles.   An underlying theme throughout the FAC is the parties' frequent disagreement over what repairs are needed and the cost of those repairs.   A delay in authorizing repairs or rentals under these circumstances would be expected and is consistent with Plaintiffs' allegations that DRP shops provide preferential timing of repairs and that Defendants authorize DRP shops to make estimates (Id. at ¶¶ 152, 163).

The remaining specific instances of steering which Plaintiffs have alleged fail for a variety of reasons.   Some speculate that a Defendant improperly steered Plaintiffs' potential customers merely because they chose a different repair shop after talking to a Defendant (see id. at ¶¶ 314, 315, 317), others rely upon legal conclusions, unsupported by averments of fact (See id. at ¶ 322 (Allstate "convinced" Airport Auto's customer to have the vehicle repaired at a DRP shop)).   Some allegations evidence an ongoing disagreement between a Plaintiff and Defendant concerning prices and repair procedures but do not rise to the level of improper conduct (Id. at ¶¶ 312, 324).   Despite Plaintiffs' representations, a number of the "asserted specific, direct … instances of steering" do not actually involve specific customers or steering (Id. at ¶¶ 319 (Plaintiff Jan's Spectrum, a DRP shop for Defendant Farmers, has received fewer repairs from Farmers since

initiating this lawsuit), 320-21, 323, 325-28).   Two instances involve purported threats to steer by a Defendant, but do not actually allege that steering occurred (Id. at ¶¶ 311, 313).   Other allegations are examples of boycotting, which are not alleged as a basis for the tortious interference count (Id. at ¶¶ 319, 326-28, 463-64).   No allegations actually identify by name a specific customer that was steered away from a Plaintiffs' business. Finally, allegations of unsuccessful attempts at steering, (Id. at ¶ 312), no matter how deplorable the conduct, (Id. at ¶ 318), do not constitute tortious interference because Arizona law requires actual damages resulting from the interference, and Plaintiffs have not alleged a cognizable injury in any situation where a Defendant tried but failed to steer someone away from one of Plaintiffs' businesses.   See Dube, 167 P.3d at 99-100.

 For all of these reasons, I respectfully recommend that the tortious interference count be dismissed.

 Some Defendants also argue that there is a legitimate competitive reason to interfere because they have contractual relationships with their insureds and a financial interest in the cost of repairs (Doc. 94 at 17-18).   Plaintiffs counter that the focus is on whether Defendants acted improperly, not whether they were privileged to interfere (Doc. 99 at 49).   Arizona recognizes a competitor's privilege to tortious interference with business relations.   See Bar J Bar Cattle Co., 763 P.2d at 549; Edwards v. Anaconda Co., 565 P.2d 190, 193 (Ariz. Ct. App. 1977); Restatement (Second) of Torts § 768 (1979).   But, because it is not evident that Defendants are "competitors" of Plaintiffs (Doc. 93, ¶ 337), a decision on the privilege defense would be premature.   See Chanay v. Chittenden, 563 P.2d 287, 292-93 (Ariz. 1977) ("Unless, as a matter of law, it appears to the trial court that the defendant has a privilege to interfere with another's contract relations, that is an issue best left to the trier of fact.").

<u>Count IV: Unjust Enrichment</u>

To recover on a claim for unjust enrichment in Arizona, a plaintiff must show "(1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) the absence of justification for the enrichment and impoverishment and (5) the absence of any remedy at law."  <u>Mousa v. Saba</u>, 218 P.3d 1038, 1045 (Ariz. Ct. App. 2009) (citing <u>Cmty. Guardian Bank v. Hamlin</u>, 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995); <u>W. Corr. Group, Inc. v. Tierney</u>, 96 P.3d 1070, 1077 (Ariz. Ct. App. 2004)).  <u>See also Wang Elec., Inc. v. Smoke Tree Resort, LLC</u>, 283 P.3d 45, 49 (Ariz. Ct. App. 2012) (quoting <u>Freeman v. Sorchych</u>, 245 P.3d 927, 936 (Ariz. Ct. App. 2011)).  "In short, unjust enrichment provides a remedy when a party has received a benefit at another's expense and, in good conscience, the benefitted party should compensate the other."  <u>Wang Elec., Inc.</u>, 283 P.3d at 49.  "The remedy is flexible and available when equity demands compensation for benefits received, 'even though [the party] has committed no tort and is not contractually obligated to the [other].'"  <u>Id.</u> (quoting <u>Murdock-Bryant Constr., Inc. v. Pearson</u>, 703 P.2d 1197, 1202 (Ariz. 1985)).

Plaintiffs argue that Defendants received a "benefit," as the term is defined in the Restatement of Restitution § 1 which provides:

> A person confers a benefit upon another if he gives to the other possession or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage. He confers a benefit not only where he adds to the property of another, but also where he saves the other from expense or loss.  The word 'benefit,' therefore, denotes any form of advantage....

Restatement (First) of Restitution § 1, cmt. b.   Plaintiffs argue that they conferred a

benefit on Defendants by satisfying a debt or a duty owed by Defendants to their insureds

(Doc. 99 at 50-51).   According to Plaintiffs, "Defendants were obligated–*i.e.*, had a *duty* to

the insured and claimant–to provide certain services and materials to its insureds and

claimants, … and Plaintiffs satisfied Defendants' obligations and duties in providing those

services and materials to Defendants' insureds and claimants without being fully

compensated."   (Id. (emphasis in original)).

Plaintiffs render their services to the vehicle owners, not the Defendants, who incur

an obligation to pay for the repairs (See e.g., Doc. 93, ¶¶ 71, 186).   In A&E Auto Body,

Inc. v. 21st Century Centennial Ins. Co., No. 6:14-cv-310-Orl-31TBS, 2015 WL 304048, at

*5 (M.D. Fla. Jan. 21, 2015), the Court explained:

> The efforts to state a claim in Counts I and II fail because the
> Plaintiffs have not conferred a benefit upon the Defendants.
> The Plaintiffs point to the repairs they performed, asserting
> that they "benefitted Defendants and Defendant's
> insured/claimants for whom Defendants are required to
> provide payment for repairs."   (Amended Complaint at 43).
> However, the Amended Complaint provides no support for this
> assertion.   The repairs at issue obviously provided a benefit
> to the owners of the vehicles.   But so far as the Amended
> Complaint discloses, the only effect of such a repair on the
> insurance company is the incurring of an obligation to pay for
> it.   Cf. Adventist Health System/Sunbelt, Inc. v. Medical Sav.
> Ins. Co., 2004 WL 6225293 at *6 (M.D. Fla. Mar. 8, 2004)
> (Fawsett, J.) (in unjust enrichment case, stating that "a third
> party providing services to an insured confers nothing on the
> insurer except a ripe claim for reimbursement," and citing
> cases).

The same reasoning applies here.   Plaintiffs do not allege that repairs are done at

Defendants' request, that Defendants have a duty to repair the vehicles, or that repairing

the vehicles discharges Defendants' obligations to their insureds.   Plaintiffs aver in the

FAC that Defendants are "responsible for paying for their respective insureds' and

claimants' repairs."   (Doc. 93, ¶ 71).   But, incurring an obligation to pay is not a benefit, and it appears from the FAC that Defendants have the same obligation to pay before and after repairs are made.   Therefore, the FAC does not allege that Plaintiffs have enriched Defendants and I respectfully recommend that the unjust enrichment claims be dismissed.

Defendants argue that Plaintiffs' claims also fail because they agreed to perform repairs with knowledge of what Defendants would pay, and thus, there is no inequity.   I agree.   "'To recover on a theory of unjust enrichment, [plaintiff] must allege and prove that [defendant] acquired the [benefit] under circumstances which renders [defendant's] retention of the [benefit] inequitable.'"   Burge v. Freelife Int'l, Inc., No. CV09-1159-PHX-JAT, 2009 WL 3872343, at *4 (D. Ariz. Nov. 18, 2009) (quoting Johnson v. Am. Nat'l Ins. Co., 613 P.2d 1275, 1279 (Ariz. Ct. App. 1980)).   Plaintiffs allege that over a course of years they have made repairs for Defendants' insureds and claimants.   They complain that State Farm fixed the "market rates" for parts and repairs and that "every Defendant insurer refuses to pay more than what State Farm designates as the market rate."   (Doc. 93, ¶¶ 72, 174, 198, 210-13).   "Every Defendant insurer refuses to pay Plaintiffs' posted labor rate," Defendants refuse to pay Plaintiffs more than the lowest price for parts, and they refuse to pay for administrative costs (Id. at ¶¶ 142, 175, 194, 197).   Defendants do not provide an opportunity to negotiate, and Defendants' directives are presented on a take it or leave it basis (Id. at ¶ 179).   Plaintiffs complain that they must accept Defendants' insureds as customers "[t]o stay in business."   (Id. at ¶ 178).

Plaintiffs argue that in determining whether it would be unjust to allow the retention of benefits without compensation, the Court need only determine that it was not intended or expected that the repairs were made gratuitously and that the repairs were not made

officiously (Doc. 99 at 51-52).   But, Plaintiffs do not allege that Defendants have failed to pay for the repairs.   What Plaintiffs are complaining about is that Defendants do not make "full payment" because Plaintiffs' services are worth more than the prices Defendants are willing to pay (Id. at ¶¶ 472-73).   Plaintiffs have dealt with Defendants for years and know what Defendants will pay.   Given the parties' history, Plaintiffs could not, under any level of reasonableness, have expected to be paid more than what they received.   If they are unhappy with the prices Defendants pay, then they can negotiate higher prices or refuse to make repairs for Defendants' insureds.   See Restatement (Third) of Restitution and Unjust Enrichment § 2, cmt. d ("Because contract is strongly preferred over restitution as a basis for private obligations, restitution is not usually available to a claimant who has neglected a suitable opportunity to make a contract beforehand.").   Unjust enrichment is not available to secure a better bargain for Plaintiffs than the amounts they agreed to when they accepted the work.

The unjust enrichment count is also an impermissible group and shotgun pleading. It begins at paragraph 467 and incorporates all of the preceding paragraphs, including those relating to Plaintiffs' antitrust and tortious interference claims.   As discussed *supra*, the FAC routinely alleges conduct committed by "Defendants" or "Defendant insurers" against all "Plaintiffs."   The result is a pleading that lacks the individualized factual allegations necessary to inform Defendants and the Court of the transactions upon which it is based.   Without this information, Defendants cannot be expected to respond to the FAC in an informed way.

Under Arizona law, there is no claim for unjust enrichment where there is an express contract that governs the relationship between the parties.   Burge, 2009 WL 3872343, at *5.   The FAC alleges that "Plaintiffs enter into repair agreements with

Defendant insurers' insured and claimants…."   (Doc. 93, ¶ 186.   <u>See also</u> Doc. 99 at 51).

It also alleges an established, ongoing course of business that begins with an estimate for

each repair.   Once the appropriate Defendant has approved the estimate, a Plaintiff

makes the repair, and the Defendant pays the Plaintiff.   The Court could find from these

allegations that there is a contract between the interested parties before each specific

repair is made and on this basis, dismiss the unjust enrichment claim.

## IV. Recommendation

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that all of

Plaintiffs' state law claims be dismissed.   Given the amount of time Plaintiffs have had to

correct these deficiencies, none of which is unique to this case, I respectfully recommend

that the state law claims for tortious interference and unjust enrichment be dismissed with

prejudice.

## V. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and

Recommendation's factual findings and legal conclusions.   A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual

finding or legal conclusion the district judge adopts from the Report and

Recommendation.   <u>See</u> 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on April 29, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

> Presiding United States District Judge
> Counsel of Record