**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**LEGENDS COLLISION CENTER, LLC, et al.**                    **PLAINTIFFS**

**VS.**                                                                                 **CAUSE NO: 6:14-CV-6006**

**STATE FARM MUTUAL AUTO INSURANCE COMPANY, et al.**          **DEFENDANTS**

---

**PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S REPORT AND
RECOMMENDATION**

---

Come now, Plaintiffs in the above-captioned cause and serve this, their Objections to

Magistrate's Report and Recommendation and state to the Court the following:

The Report and Recommendation issued as Document No. 108 addresses only the state law

claims set forth in the Plaintiffs' Amended Complaint ("Amended Complaint" or "AC"). Each of

these are discussed below.

## LAW OF THE CASE

The Report improperly breaches the law of the case by recommending findings directly

contrary to prior rulings and recommending dismissal on grounds which should not have been

considered at all. In the previous Report and Recommendation (Doc. No. 83), adopted by the Court

as its order, the Court recognized the complaint sufficiently plead a claim for tortious interference

with business prospects but for one purported insufficiency, a failure to identify which Defendants

interfered with which Plaintiffs' prospective customers. See Doc. No. 83, pp. 39.

The Report specifically recognized the conduct described was sufficient pled for tortious

interference(*Id.* pg. 35-36), refuted the Defendants' assertions the claim must be pled with

particularity (*Id.* at pg. 40), recognized that under Arizona law, Plaintiffs are not required to identify

specific individuals with whom Defendants interfered (*Id.* at pg. 38).  An issue decided at one stage

of a case is binding at later stages of the same case.  *Royal Ins. Co. v. Latin Am. Aviation Servs., Inc.*,

210 F.3d 1348, 1350 (11th Cir. 2000),  *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th

Cir. 1997).  Parties are entitled to rely upon the orders of the court.  "To hold otherwise would be

to permit parties the option of deciding which orders to obey, or conversely to condemn parties to

the instability of guessing which orders to abide and which to ignore. This will not do."  *In re

Demos*, 57 F.3d 1037, 1039 (11th Cir. 1995). See also, *In re Moss*, 258 B.R. 391, 399 (Bankr. W.D.

Mo.) aff'd, 266 B.R. 408 (B.A.P. 8th Cir. 2001) aff'd, 289 F.3d 540 (8th Cir. 2002) ("For the integrity

of the courts . . . it is imperative that parties be able to rely on orders of the court.").

The Plaintiffs amended their complaint in compliance with and in reliance upon the Court's

prior order.  Yet the current Report contradicts the prior order.  For example, the current Report

recommends dismissing the tortious interference claim because the complaint fails to identify with

specificity the individuals with whom each individual Defendant interfered. [Doc. 108, pg. 11], and

fails to provide the "who, what, where, when and how" of the interference [Doc. 108, pg. 12].  These

conflict directly with the prior order and Plaintiffs could not have reasonably anticipated amendment

was required.

Having complied with the previous order, it would be highly inequitable for the Court to

dismiss a claim for reasons previously determined to be adequate pleading.  It would be particularly

inequitable in the current circumstances, for local authority generally holds that once having ruled

on a matter, the Defendants should not have even raised these issues again in successive motions.

*Pines Properties, Inc. v. Am. Marine Bank,* 2003 WL 25729925, at \*2 (S.D. Fla. June 24, 2003).

As the Court has previously ruled on the arguments, the issues were settled and are binding in subsequent stages of the litigation. *Id.* See also, *Agostini v. Felton,* 521 U.S. 203, 236 (1997), *U.S. v. Excobar–Urrego*, 110 F.3d 1556, 1560 (11th Cir.1997). It was improper for the Defendants to raise these issues in subsequent motions.  It is a breach of the law of the case for the Report to recommend dismissal on grounds contrary to prior rulings.

### 1.    Shotgun pleadings

The Report recommends dismissing Plaintiffs' amended complaint *with prejudice* because it contains impermissible shotgun pleadings that "improperly placed the burden on Defendants and the Court to determine which allegations pertain to which counts of the FAC." Dkt. 108 at 7.  The Report cites *Yeyille v. Miami Dade County Public Schools*, ___ F. App'x. ___, No. 15-13053, 2016 WL 692050 (11th Cir. Feb. 22, 2016) for support. The recommendation should be rejected for at least three reasons.

First, the Report cites, then ignores, well settled law the Court must "*liberally construe* the complaint's allegations in plaintiff's favor." Doc. No. 108 at 7 (*quoting Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)). Or, as put in *Anderson v. District Board of Trustees of Central Florida Community College*, it must be "*virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." 77 F.3d 364, 366 (11th Cir. 1996) (emphasis added).

No such impossibility exists here.  The FAC sets forth three theories of liability: Defendants illegally conspired to fix prices and boycott Plaintiffs' shops, Defendants all engaged in illegally interfering with potential customers of Plaintiffs, and Defendants unjustly retained monies due Plaintiffs. The FAC is organized in such a way that the allegations to support each cause of action can be readily identified.

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015), cited in the Report, is instructive. The court said it was "hardly a task at all" to figure out what paragraphs of the complaint were relevant to certain claims because the plaintiffs organized the factual allegations into three subsections. *Weiland* at 1324-25.[1] Plaintiffs' FAC does the same: the FAC is organized into categories with relevant background information and specific material allegations supporting each cause of action. The standard is not perfect efficiency or specificity; rather, it is that allegations must place Defendants on notice of the specific claims against them and the factual allegations that support those claims. *Id.* at 1325. As stated in Plaintiffs' opposition to Defendants' motion to dismiss, the FAC more than adequately meets that requirement. *See* Dkt. 99 in Case No. 14-cv-6006.

Second, this case is far different from *Yeyille*, where the Eleventh Circuit confirmed the dismissal of plaintiff's *third* amended complaint that was mostly "written in narrative, diary-like form," the plaintiff was warned to reduce the length of the complaint, and there was a record of "contumacious disregard for the court's orders by an attorney." 2016 WL 692050 at *2. None of these factors exist here. Plaintiffs have amended once only, the Court has never admonished Plaintiffs for submitting a complaint that was too lengthy, Plaintiffs' FAC uses headings to direct the Court and Defendants to the sections dealing with the respective causes of action, and the Plaintiffs' attorneys have represented nothing but absolute fidelity to the Court's orders.

Third, it is simply untrue that Plaintiffs "comingl[ed]" all proceeding paragraphs by reference. No such incorporation is present anywhere in the FAC yet the Report infers its existence. Such an inference is a direct contravention of the nondiscretionary duty to draw all inferences in the

---

[1] *Strategic Income Fund, L.L.C. v. Spear, Leads & Kellogg Corporation*, 305 F. 3d 1293, 1295-96 (11th Cir. 2002), where the district court attempted to ascertain exactly what facts formed the basis of the plaintiffs' claims despite the Eleventh Circuit's finding that the allegations were "quintessential 'shotgun' pleadings," demonstrates that dismissal with prejudice on the basis of shotgun pleadings is an extraordinary punishment considering Rule 8's liberal pleading standards.

light most favorable to the Plaintiffs. *Jenkins*, 395 U.S. at 421.  The Report recommendation would amount to reversible error, as well as works a substantial inequity in light of the Court's previous directions in companion cases to remove the incorporation by reference.  The current Report recommends dismissal for obeying the Court's previous orders.  The Court should not adopt the Report's conclusion that Plaintiffs' FAC constitutes shotgun pleadings.[1]

    2.    <u>Group pleading</u>

The Report recommends dismissal of Plaintiffs' state claims because the FAC uses impermissible "group pleading."  The recommendation is premised upon an impermissible finding of fact—namely, that each and every Defendant could not have plausibly engaged in identical forms of tortious interference.  The Court is forbidden from making a credibility determination at this stage. *Cohan v. Bonita Resort & Club Ass'n, Inc.*, 2015 WL 2093565, at *5 (M.D. Fla. May 5, 2015).

The complaint alleges each Defendant has engaged in tortious interference with respect to each Plaintiff, describes the forms of conduct in which each Defendant has engaged, provided specific examples of such interference.  In attempting to distinguish the current Report from the prior order, the Report asserts the Plaintiffs continue to assert the Defendants engaged in "group action" of tortious interference.  Respectfully, the complaint does not so assert.  Plaintiffs have alleged and continue to assert each Defendant has engaged in the same forms of interference, though not necessarily <u>every</u> exemplar of such conduct with respect to <u>every</u> prospective customer.  The Plaintiffs never alleged this.

---

[1]  [2] Additionally, the Report should not be adopted because the previous Report  the Court adopted never raised the issue of "shotgun" pleadings. *See United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) ("[A]n issue decided at one stage of a case is binding at later stages of the same case.").  Plaintiffs relied upon the Court's order in framing the FAC and they cannot be expected to address deficiencies that they were not made aware of.  Dismissal with prejudice would be particularly inequitable here, since Defendants previously argued the shotgun pleading issue and the Court either declined to rule in their favor or declined to address them at all.  Plaintiffs had no reason to anticipate the purported deficiencies under the circumstances.

Certainly the Plaintiffs can amend to provide the Court with individual paragraphs describing the tortious conduct of each Defendant in relation to each Plaintiff and will do so if so ordered. However, the Plaintiffs are mindful (and were mindful at the time the complaint was amended) of the Court's dissatisfaction with similar pleading in a companion case, the result of which was the Court threatening to impose sanctions if such were repeated.   The Plaintiffs are therefore in a pleading no-win situation.

When, as here, a complaint alleges all Defendants acted in the same fashion, it is permissible for the Plaintiffs to utilize the shorthand term "the Defendants." *Jackson v. Bank of Am., NA*, 578 F. App'x 856, 860 (11th Cir. 2014), *Crespo v. Coldwell Banker Mortgage*, 599 F. App'x 868, 872 (11th Cir. 2014), *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997).   The practice only runs afoul of the applicable pleading standard where  a complaint  fails to give each defendant notice of the claims against it. *Sprint Solutions, Inc.* v. *Fils-Amie*, 44 F. Supp. 3d 1224, 1227 (S.D. Fla. 2014).

The Report's finding  the FAC fails to give each Defendant notice of the claims against them is not credible.   The extensive discussion of the claim by Defendants in their multiple motions evidences their complete understanding of the claim. *See* Doc No. 99, at 34.   Similarly, the detail with which the Report sets out the allegations of tortious interference make clear it understands the claim, as well, having devoted multiple pages to discussing those allegations.

Thus, pleadings filed by the Defendants and the Court show full understanding of the claim. The Report simply chooses not to believe the allegations, which it is not permitted to do.   The FAC should not be dismissed with prejudice on this ground as the Court is not permitted to weigh the facts alleged. *Toback v. GNC Holdings, Inc*., No. 13-80526-CIV, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013).   The only permissible ground for disbelieving facts asserted in a complaint is when those

facts are of such fantastical nature as to defy known reality, such as claims of time travel, interaction with aliens and alleging recent trips to Pluto. *Ashcroft v. Iqbal*, 556 U.S. 662, 696, (2009). The facts alleged in the complaint clearly do not rise to this objective level.

The Report is also critical of the FAC because, even when "Plaintiffs do refer to Defendants by name, they do not distinguish between related companies." But the previous Report expressly permitted identification of Defendants by corporate family, rather than individual subsidiary company. Respectfully, this is exactly what Plaintiffs have done, *see* FAC ¶64, and asking Plaintiffs to do more is impossible without discovery considering the complex corporate ownership structures of the Defendants' corporate families.

Continuing, the Report attempts to clarify exactly why the FAC fails: "What is missing are averments of fact to supply the who, what, when, where, and how to support Plaintiffs' claims." Doc. No. 108, at 12. But this attempt at clarification only reveals how off-base the recommendation is from the appropriate legal standards,[1] the previous R&R and this Court's holding that Rule 8, not Rule 9 applies,[2] and the case law requiring the Court to read the allegations of the FAC in the light most favorable to Plaintiffs.[3] The Report plainly applies the Rule 9(b) standard to Plaintiffs' non-Rule 9(b) claim, which, if adopted, would constitute plain error. As the Eleventh Circuit has made clear, requiring a complaint to plead the "who, what, when, where and how" of a claim *is* the

---

[1] "Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).

[2] *See* 6:14-md-02557-GAP-TBS, Dkt. Nos. 192, at 40 (rejecting Defendants' argument that Rule 9's heightened pleading standard should govern).

[3] *Anderson News*, 680 F.3d at 185 ("A court ruling on [a motion to dismiss] may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible."); *see also Evergreen Partnering Group, Inc. v. Pactiv Corp.*, 720 F.3d 33, 45 (1st Cir. Mass. 2013) ("It is not for the court to decide, at the pleading stage, which inferences are more plausible than other competing inferences, since those questions are properly left to the factfinder.").

pleading standard of Rule 9, not Rule 8.[1]  See also, *iSource Loans, LLC v. SunTrust Mortgage, Inc.*,

2014 WL 3730289, at *3 (E.D. Va. Mar. 10, 2014)(emphasis added)(internal citations omitted).  See

also, *Kraft Food Ingredients Corp. v. PCI Int'l Consultants, Inc.*, 2008 WL 4001184, at *4 (W.D.

La. Aug. 27, 2008).  The Report's reliance upon the absence of Rule 9(b) specificity to dismiss the

tortious interference claim is, therefore, plain and reversible error.     It also violates the law of the case

as the previous order refused to require the specificity Defendants demanded specifically because

the claims asserted are <u>not</u> subject to Rule 9(b).

Notwithstanding this, the FAC does identify the specifics the Report claims are missing.  And,

contrary to the Report's assertion, there are no material variations in the FAC; and, even if there are,

the Court is mandated to construe those variations in Plaintiffs' favor, not completely buy into

Defendants' contortion of the allegations.

<u>3.</u>     <u>Specific Allegations of Tortious Interference</u>

The Report improperly disregards the specific examples of interference alleged in the FAC.

Concerning Plaintiffs' examples, the Report is critical because the FAC does not allege GEICO's

actions were "unlawful." Doc. 108, pg. 14.  The Report faults the FAC for failing to allege GEICO

made "false or misleading statements" to the insured and because the alleged statements made to

Plaintiffs' customer did not fit into one of the nine categories of statements identified in paragraph

297 of the FAC. *Id*. The Report is wrong on the law, misrepresents the FAC's allegations, and is

inconsistent with the Magistrate's prior report and recommendation.

---

[1] *Joseph v. Bernstein*, 612 F. App'x 551, 556 (11th Cir. 2015), *U.S. ex rel. Seal 1 v. Lockheed Martin Corp*., 429 F. App'x 818, 821 (11th Cir. 2011), *Mitchell v. Beverly Enterprises, Inc*., 248 F. App'x 73, 74 (11th Cir. 2007), *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064 (11th Cir. 2007), *Hill v. Morehouse Med. Associates, Inc.*, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003).

First, there is no requirement Plaintiffs must expressly allege "Defendants' conduct was unlawful;" indeed, that can be easily inferred from the allegations Defendants violated Arizona's law of illegal tortious interference. *United Metro Materials Inc. v. Florence Copper Inc.*, No. 2007 WL 5439750, at *2 (Ariz. Ct. Ap. July 12, 2007). Federal courts routinely condemn attempts to compel use of "magic words" to sufficiently plead pursuant to Rule 8. *See*, *Alexander v. City of Chicago*, 994 F.2d 333, 340 (7th Cir. 1993), *Platinum Estates, Inc. v. TD Bank, N.A.,* 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012). Notwithstanding, Plaintiffs do allege Defendants' conduct was unlawful. *See, e.g.*, ¶¶ 72, 83, 172, 184.

Second, Arizona does not require Plaintiffs allege GEICO's tortious interference was carried out using "false or misleading statements." *See* Doc. No. 108, pg. 14. In Arizona, Plaintiffs are required to allege "(1) the existence of a valid business expectancy; (2) the interferer's knowledge of the business expectancy; (3) the interferer intentionally induced or caused termination of the business expectancy; and (4) damage suffered as a result of termination of the business expectancy." *Id.* at 5-6 (*quoting Dube v. Likins*, 167 P.3d 93, 99-100 (Ariz. Ct. App. 2007); *see also Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1042 (Ariz. 1985).

The Report errs because it requires more than Arizona law requires. Nevertheless, Plaintiffs' specific example against GEICO does allege GEICO misled the customer by representing to "the insured that Gerber would perform the vehicle repairs to the same standards as Legends," FAC at ¶ 305, which was false, FAC ¶¶ 306-310.

Additionally, the Report completely ignores the allegations at paragraphs 311-312 of the FAC, which demonstrate *inter alia* Defendant Encompass threatened to use false statements that

Legends "overcharge[s]," [1] misrepresented that Legend's "refuse[d] to attempt . . . repair" and Encompass would "guarantee" the repairs if the customer brought the vehicle to a different repair facility when the reality is (1) Legends has never overcharged a client and has demonstrably reasonable labor rates; (2) Legends never refused to perform repairs on the vehicle, it refused to perform the repairs in the way that Defendant Encompass (an insurance company, not a repair professional) directed; and (3) the allegations of the FAC are that Defendants' do not warranty auto repair work – the body shops warrant repairs (*see, e.g.,* FAC ¶¶ 297(8)-(9)), 336-340).

Third, the Report is critical because GEICO did not make "any of the nine purported statements" and because the alleged damages are unrelated to Plaintiffs' steering allegations.  Dkt. 108 at 14.  That recommendation further demonstrates the Report's violation of the requirement to read the FAC in the light most favorable to Plaintiffs.  *Compare* FAC ¶ 297(4) & (8) *with* FAC ¶ 304 (combining warnings regarding rental car reimbursement with delay in using non-preferred shop), ¶ 305 (issuing assurance to customer that work would meet a particular standard), ¶ 310 (demonstrating GEICO's inaction and significant delay after Legend's submitted repair estimates). And, although damage determinations are a fact-dependent inquiry not appropriate for this stage of the litigation,[2] a proper reading of paragraphs 304-310 is that Legends' damages for tortious interference are not limited to a failure to reimburse for rental charges and storage fees; rather,

---

[1]   [1] Evidence of these representations actually being made to customers lies only in Defendants' possession. FAC ¶ 302-303.

Legends is seeking reimbursement for damages relating to steering initial repair away from Legends *and* the failure to reimburse after GEICO declared the vehicle a total loss.[1]

The Report's conclusion further errs as the complaint <u>never</u> asserted the false and misleading statements set out in the complaint constituted the entire universe of methods used by the Defendants to interfere with Plaintiffs' prospective customers.  On the contrary, the complaint makes clear the list of false and misleading statements are only some of the statements made by Defendants, that Defendants engage in defamatory and coercive behavior.  See FAC, ¶ 463.

Simply put, contrary to the Report's myopic reading of the FAC, there are numerous averments to support Plaintiffs' allegations and, most critically, this is not the time for Plaintiffs to prove their case.

For the same reasons, the Report's remaining criticism of the specific allegations fail. *Compare* FAC ¶¶ 316, 320-21 *with* ¶ 297(4).  With regard to the failed instances of steering, the Report fails to apprehend the significance of the failed attempts to interfere and fails to utilize the information properly.  The reality is Plaintiffs only know of the Defendants' interference when a customer reports it to them or is witnessed by a Plaintiff, which occurs *very* rarely.  Only the Defendants have full, specific knowledge of the extent and success of their interference.  As that information is solely within the possession of the Defendants, the Court may not dismiss the claim for failing to provide specific facts.  Not even complaints subject to the particularity pleading of Rule 9 may be dismissed on this ground under these circumstances.

[1]  [2] Plaintiffs do not waive any rights regarding Legends' entitlement to damages under its unjust enrichment theory as a result of GEICO Defendants' non-reimbursement of repair costs and storage fees.

Plaintiffs must accompany their allegations with facts indicating why the charges against Defendants are not baseless and why additional information lies exclusively within defendants' control. *Id.* at 646; *Hekker v. Ideon Grp., Inc.*, 1996 WL 578335, at *4 (M.D. Fla. Aug. 19, 1996). That is precisely what Plaintiffs have done. The failed attempts to interfere support the allegation Defendants engage in the actions described in the complaint; they show the charges against the Defendants are not baseless. Or, in the language of the Supreme Court, they provide factual content allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. See also, *Anderson v. Ward*, 373 F. App'x 968, 969 (11th Cir. 2010). While not accruing damages for Plaintiffs, the failed attempts to interfere are just as important as the successful ones, the only difference between the two at the pleading stage is Plaintiffs more often know the specifics of the failed attempts. The specifics of the successful ones are held within the possession and control of the Defendants.

Although required, the Report fails, if not outright refuses, to draw anything but inferences unfavorable to the Plaintiffs in derogation of its nondiscretionary duty. Rather than draw the reasonable inference Defendants are indeed acting in the manner described in the complaint, the Report picks apart individual examples and decides they are insufficient to state a claim for tortious interference for lack of damages. But this recommendation discourages plaintiffs from providing additional facts for the purpose of supporting the general allegations of the complaint.

Further, the examples set out in the FAC are merely that, *examples*. As the Supreme Court has repeatedly stated and the Eleventh Circuit has acknowledged, plaintiffs are not required to plead specific facts to make out a plausible cause of action under Rule 8. The Plaintiffs here are therefore

not required to set out each and every instance of interference, successful or unsuccessful, of which they have knowledge.  Providing that information is exactly what discovery is for.

The complaint sets out facts showing successful instances of interference, and examples of unsuccessful attempts, both of which include details of the manner in which that interference was conducted.  The successful attempts mirror the unsuccessful ones, the only difference being the fortitude of the consumer in resisting the Defendants importunements. Plaintiffs have provided more than sufficient facts and inferences to put meat on the tortious interference bone.  The Report's conclusion to the contrary is a breach of the applicable pleading standard.

This is particularly apparent when compared to other instances of tortious interference allegations.  In similar claims against insurers, the arguments are identical to those made in the present litigation, that plaintiffs failed to specify the "who, what, where, when and how" of the interference.  However, courts addressing these arguments have resoundingly rejected them.[1]

The District Court of Connecticut found the following description more than sufficient to withstand a motion to dismiss for lack of specificity:  In this instance, plaintiffs have adequately stated that they had relationships with third  parties, insureds and claimants who used their services and those customers who were unlawfully steered away. Plaintiffs have alleged that defendants knew of these relationships because defendants paid the claims for such repairs. The Court finds that these allegations satisfy the first two requirements of plaintiffs' tortious interference claim.  *A & R Body Specialty v. Progressive Cas. Ins. Co.*, No. 3:07-CV-0929 WWE, 2013 WL 718622, at *5 (D. Conn.

---

[1] *A & R Body Specialty v. Progressive Cas. Ins. Co.*, No. 3:07-CV-0929 WWE, 2013 WL 718622, at *5 (D. Conn. Feb. 27, 2013), rejecting Progressive's complaint that plaintiffs have failed to identify specific repair shops, employees or agents of defendants, individuals with whom defendants interfered, or any specific communication that caused the tortious interference. An existing or "reasonable prospect" of such contractual or business relationships with customers or prospective customers is required for the business relationship requirement of a tortious interference with business expectancy claim.

Feb. 27, 2013).   A copy of the complaint in *A & R Body Specialty v. Progressive Cas. Ins. Co.*, No.

3:07-CV-0929, District of Connecticut, is attached hereto as Exhibit "1."

The Middle District of Tennessee found the following more than sufficient pleading under

Rule 8 to withstand a motion to dismiss, refusing to give credence to Progressive's complaints of

lack of specificity[1]:

> Here, Price's Collision alleges that Progressive steered clients away from its shop by
> actively discouraging its insureds from having repairs done at Price's Collision, by
> publicly and privately discrediting Price's Collision, and/or by refusing to pay the full
> amount for required and proper repairs. Whether Price's Collision can prove these
> contentions remains to be seen, but, for now, the Court accepts the allegations as true
> and finds them sufficient to state the element that Progressive interfered with a
> present or prospective business relationship.

*Price's Collision Ctr., LLC v. Progressive Hawaii Ins. Corp*., No. 3:12-00873, 2013 WL 5782926,

at *5 (M.D. Tenn. Oct. 28, 2013).   A copy of the complaint filed in *Price's Collision Ctr., LLC v.*

*Progressive Hawaii Ins. Corp*. is attached hereto as Exhibit "2."

As with the Arizona Plaintiffs' complaint, the plaintiff in *M.V.B. Collision Inc. v. Allstate*

*Insurance Company* asserted a claim for tortious interference with business prospects and supported

its claim by providing examples of that conduct and asserting, upon information and belief, that

Allstate had engaged in "numerous other instances of steering which has interfered with Mid Island's

business with its customers."   See copy of complaint, *M.V.B. Collision, Inc., v. Allstate Insurance*

*Company*, Cause No. 2:07-cv-187, Eastern District of New York*, attached hereto as Exhibit "3."

---

[1]"Substantively, Progressive argues that Price's Collision has identified only three customers in the Complaints,
customers who all had their vehicles repaired at Price's Collision, making it "disingenuous to claim that Progressive
interfered with these business relationships." (Case No. 3:12-00874, Docket No. 17 at 6). Even so, Price's Collision's
allegations are not limited to the identified insureds, but include potential customers, and the cause of action
encompasses interference with prospective business relationships."

In Alabama, *Kirby's Spectrum Collision, Inc. v. Government Employees Insurance Company*, the Plaintiff's allegations of tortious interference were permitted to go forward on the allegations that GEICO systematically and continuously directed customers and potential customers away from the plaintiff shop, making deceptive, misleading, derogatory and/or false statements about the plaintiff, disparaging the quality of workmanship, availability of warranty, and threatening that GEICO would not pay or make full payment for repairs.

A copy of the *Kirby's Spectrum Collision, Inc. v. Government Employees Insurance Company,* Cause No. 1:09-cv-663, Southern District of Alabama, is attached hereto as Exhibit "4."

All of the arguments the Defendants make in the present case are identical to those made in multiple other cases in multiple other federal jurisdictions.  All of them are subject to Rule 8 pleading standards and all of the pleading challenges have been denied by those federal courts.

It is only in the Middle District of Florida that such arguments have found fertile ground. The Plaintiffs provide far greater detail of the type, nature and content of the interference, provided far more specific examples, and generally provide substantially greater specificity than other complaints for similar actions by auto insurers.

Despite being contrary to every other jurisdiction, the Middle District of Florida finds validity to arguments rejected by multiple other district courts.  The Report cites no authority for its singular approach to Rule 8.  Indeed, the Middle District of Florida has previously recognized that specificity is *not* required pursuant to Rule 8's notice pleading standard.  *National Numismatic Certification, LLC. v. eBay, Inc.*, 2008 WL 2704404, at *16 (M.D. Fla. July 8, 2008)(internal record citations

omitted)[1].   See also, *Arbitron Inc. v. Renda Broad. Corp.,* No. 3:13 CV 716-J-34JRK, 2014 WL
1268587, at *3 (M.D. Fla. Mar. 27, 2014) and *Punta Gorda-Charlotte Harbor Dev., LLC v. Allstate
Ins. Co.,*, 2009 WL 3418260, at *2 (M.D. Fla. Oct. 20, 2009).

The Report should not be adopted except to the extent that it concludes that Defendants'
"legitimate competitive reason" defense is premature.

## **Unjust Enrichment**

The Report recommends dismissal of Plaintiffs' unjust enrichment with prejudice because:
(1) Plaintiffs have not conferred a benefit upon Defendants because "incurring an obligation to pay
is not a benefit;" (2) Plaintiffs agreed to perform the repairs knowing what the Defendants would
pay; (3) Plaintiffs' unjust enrichment claim uses impermissible group pleading and shotgun pleading.
Doc. No. 108, pp. 18, 19.

4.      Arizona law holds Plaintiffs have conferred a benefit upon the Defendants

In various ways, the Report concludes the complaint fails to allege Plaintiffs conferred a
benefit upon the Defendants.  This conclusion directly conflicts with well-established state law.

Arizona, like other states, has adopted the definition of "benefit" set forth in the *Restatement
of Restitution*.  The Arizona Supreme Court has specifically recognized that services conferred which

---

[1]"PNG's pleading objections are mostly without merit. Although conclusory allegations are ignored for purposes of
evaluating the sufficiency of a plaintiff's claims, such allegations do not condemn the entire pleading. Here, Plaintiffs
allege that the survey was "illegitimate" and "false." Plaintiffs also allege that the survey solicited opinions about
ACG from dealers who never had dealt with ACG coins and ignored the positive comments of those who had. The
gist of the allegation is that PNG concocted the results of the survey to damage smaller grading companies.
Accordingly, PNG is on notice of the substance of Plaintiffs' claims, and the basic notice requirement of Rule 8(a) is
satisfied."

allow one to execute a duty owed to a third party or execute a contract with a third party constitutes a benefit. *Murdock-Bryant Const., Inc. v. Pearson*, 703 P.2d 1197, 1203 (Ariz. 1985).[1]

The Plaintiffs have alleged they conferred a benefit upon the Defendants–their services allowed the Defendants to execute their independent obligation to insureds and claimants. See Plaintiffs' Amended Complaint, Doc. No. 93, ¶¶ 70-71, 82, 154, 469. At the present stage of litigation, Plaintiffs are not required to prove their case.

The Report makes clear it applied Florida law to this Arizona state law claim, specifically quoting Florida law and its own interpretation thereof to find Defendants received no benefit, only an obligation to pay, and finding, "The same reasoning applies here." See Doc. No. 108, pg. 18.

However, the same reasoning does not apply here. Florida law does not apply at all and Arizona law, which does apply, holds diametrically opposed to the Report's conclusion. As it quoted Florida law and its own reasoning for application of Florida law, the Report clearly favors Florida law on this issue, but such favor is prohibited. The Court is required to apply the law of Arizona to this state law claim, whether or not it feels this produces the "best" outcome. *West*, 311 U.S. at 236-237, *Watson*, 945 F.2d at 369.

> 5.     Whether or not Defendants requested repair services is irrelevant under Arizona law

As part of its finding no benefit has been conferred, the Report notes Defendants were not the ones who requested Plaintiffs perform repairs. Per the Report's logic, this means the Defendants were not benefitted by the performance of those repairs.

___

[1]Other Arizona authority recognizing and applying the *Restatement* definition of benefit include but are not limited to *John A. Artukovich & Sons, Inc. v. Reliance Truck Co.*, 614 P.2d 327, 329 (Ariz. 1980) and *Pyeatte v. Pyeatte*, 661 P.2d 196, 202 (Ariz. Ct. App. 1982)

This conclusion also directly contravenes Arizona state law.  Arizona courts have repeatedly noted that a defendant does not need to be the requesting party for purposes of restitution.  *Murdock-Bryant Const., Inc.*, 703 P.2d at 1201-02.  The Arizona Supreme Court has specifically stated restitution rests upon whether or not a defendant was unjustly enriched by plaintiff's services not whether or not the defendant affirmatively requested those services be rendered and that such concepts "are a part of Arizona jurisprudence." *Id.* (emphasis added.), recognized by District Court for the District of Arizona in *The Armored Grp., LLC v. Supreme Corp.*, 2010 WL 2595280, at *7, FN 1, (D. Ariz. June 24, 2010).  See also, *Flooring Sys., Inc. v. Radisson Grp.*, Inc., 772 P.2d 578, 581 (Ariz. 1989).

As Arizona law specifically finds a request for services need not be made by a defendant sought to be held liable, the Report's finding no benefit has been conferred for lack of such a request directly contravenes Arizona law.  The Court is required to apply the law of Arizona as Arizona has announced it and may not depart from it.  *West*, 311 U.S. at 236-237, *Watson*, 945 F.2d at 369.   As such, the Report's conclusion on this issue may not be adopted.

6.      The Report's "Request" Conclusion Conflicts With Corollary Arizona State Law

Under its Insurance Unfair Practices and Frauds statute, Arizona law specifically reserves the choice of repairer to the consumer.  Ariz. Rev. Stat. Ann. § 20-468. This is so even over the objections of an insurer, and the insurer may not refuse to payment.  The Report's finding an unjust enrichment claim's "benefit" element is contingent upon the Defendants' requesting repairs instead of consumers directly contravenes Arizona statute. Neither the insurer's request, consent nor agreement is required before the insurer's obligation to pay for repairs is triggered.

Additionally, the court's ruling destroys the spirit of the intended protection provided to consumers.  Arizona enacted a statute specifically reserving choice of repairer to the consumer, unambiguously setting out not only affirmative law but also public policy.  The insurance code is designed primarily to protect consumers, not insurers or their agents. *State v. Arizona Pension Planning*, 739 P.2d 1373, 1376 (Ariz. 1987).

The potential for abuse under the Report's finding is obvious–if request for services must originate from the insurer, the insurer may defeat the consumer's choice of body shop simply by remaining silent until the consumer capitulates and moves to a body shop of which the insurer approves.  Such economic coercion of consumers is an existing reality as set forth in the complaint.

7.    Duty to Perform Repairs

The Report concludes the complaint fails to allege repair services performed by Plaintiffs allows Defendants to execute their duty to perform repairs.  This is correct, the complaint does not allege that.  However, as Plaintiffs never alleged the Defendants had a duty to actually perform repairs, it is irrelevant that the complaint fails to allege their services worked to extinguish Defendants' duties to do so.

What the Plaintiffs alleged is the Defendants have a duty to pay for repairs.  The Report appears to substitute "duty to repair," which Plaintiffs have not alleged, with "duty to pay for repairs," which Plaintiffs have alleged.   Respectfully, it is inappropriate for the Report to do so modify the complaint.  The complaint does allege repeatedly the Defendants have a duty to pay for repairs.  See Plaintiffs' Amended Complaint, Doc. No. 93, ¶¶ 70-71, 82, 154, 469.

However, even if there was potential ambiguity, the Report still errs.  The Court must draw all reasonable inferences in favor of the Plaintiffs, not the Defendants.  The complaints alleges there

exists a duty to pay and further alleges the Defendants have acknowledged and admitted this obligation through partial payment.  These allegations, which the Court is required to accept as true, do not rationally permit an inference negative to the Plaintiffs, even were the Court permitted to draw negative inferences, which it is not.

As the Report inaccurately reports the contents of the complaint to find a basis for dismissal, Plaintiffs submit the Recommendation should not be adopted.  If the Defendants wish to refute the allegations of the complaint, they may do so by way of an answer and they must bear the burden of proof for this affirmative defense.  Given the allegations of the complaint, the Report makes an unwarranted negative factual conclusion in breach of its duty to analyze the allegations of the complaint in favor of the Plaintiffs.

To the extent the Report intended to imply it was necessary for Plaintiffs to allege the Defendant insurers have a duty to actually perform repairs, Plaintiffs respectfully submit this is impermissible.  Plaintiffs have not alleged this and the Report fails to cite any legal authority that Plaintiffs are required to allege something they never intended to allege.

8.    <u>Reasonable expectation of payment</u>

The Report concludes the Plaintiffs were aware of what Defendants were going to pay before performing work, and that Plaintiffs are not entitled to receive more than they agreed to accept for work performed, therefore there has been no unjust enrichment.  This misrepresents the contents of the complaint and fails to adhere to Arizona law, as is required.

Arizona authority makes clear a Defendants' behavior is wholly irrelevant to a restitution complaint.  As the Arizona Supreme Court stated, it is not necessary for a court to find the defendant

intended to compensate the plaintiff for the services rendered.  *Flooring Sys., Inc. v. Radisson Grp., Inc*., 772 P.2d 578, 581 (Ariz. 1989).

Intent to pay, or pay only a given amount, is wholly outside the question before the Court. Restitution, as specifically stated by the Arizona Supreme Court, is predicated upon the obligation of one to pay for the benefit received from another, <u>regardless</u> of the intentions of the parties.  *Id.* Restitution pays no heed to the defendants' intent at all.  *Murdock-Bryant Const., Inc*., 703 P.2d at 1203, *TM2008 Investments, Inc. v. Procon Capital Corp*., 323 P.3d 704, 710 (Ariz. Ct. App. 2014), *Pyeatte v. Pyeatte*, 661 P.2d 196, 203 (Ariz. Ct. App. 1982).

Thus, whether the Defendants had ever paid, or intended to pay, more is irrelevant, per express pronouncement of the Arizona Supreme Court. This Court is required to give full effect to that pronouncement. *West*, 311 U.S. at 236-237, *Watson*, 945 F.2d at 369.

The Report is therefore prohibited from reaching the conclusion it did by affirmative Arizona law.  Under Arizona law, the Plaintiffs are not required to either plead or prove a subjective expectation of amount of payment.  They are required to plead and prove only the elements of the claim.  The complaint more than adequately pleads the elements of the cause of action.

The Plaintiffs have therefore set out the necessary allegations of each element of the unjust enrichment claim.  The Report's conclusions to the contrary are prohibited by Arizona state law.

The Report's additional error is factual.  The Report finds the Plaintiffs agreed to perform repairs at the amount the Defendants would pay, or they could have negotiated a different price or refused the custom of Defendants' insureds and claimants.  However, these conclusions are directly contrary to the contents of the complaint.  The Plaintiffs repeatedly averred they did <u>not</u> agree to perform repairs at the Defendants' dictated terms, that payment was offered on a non-negotiable

take-it-or-leave-it basis, that attempts to obtain full payment for all repair services was met with refusal and economic coercion, threats and other forms of economic punishment.  Plaintiffs further averred they have no reasonable economic choice to doing business with Defendants' insureds and claimants because nearly all of their customers are insurance-paying customers and the Defendants effectively control up to ninety percent (90%) of the private passenger insurance market in the State of Arizona.

Refusing business from nearly all the available pool of customers is tantamount to closing the body shop doors.  Plaintiffs submit going out of business is not a reasonable alternative and certainly does not constitute voluntary agreement.  The facts set forth in the complaint directly contradict the Report's reliance upon the finding the Plaintiffs neglected a suitable opportunity to contract for more favorable terms.

The Report provides no authority allowing it to recommend court action based upon hypothetical facts which contradict the contents of the complaint.  In fact, the only discernable authority strictly prohibits dismissal of claims based upon hypotheticals or purported alternatives not pled in the complaint as this requires a weighing of the asserted facts, which the Court is not permitted to do.  *Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1368 (M.D. Fla. 2005).

For the foregoing reasons and upon the cited authority, the Report's recommendation is an impermissible deviation from established Arizona state law and the federal pleading standard and should not be adopted.

9. <u>The Plaintiffs have not pled the existence of any contract between themselves and the Defendants</u>

The Report recommends dismissal on the alternative (or additional) ground there exists a contract covering the subject matter of the unjust enrichment claim.   However, the Report's conclusion fails for several reasons.   First, the Report does not actually identify between whom a contract purportedly exists.   It appears to assert the existence of multiple contracts: between the Plaintiffs and their customers, between the Plaintiffs and the Defendants.

With respect to the former, Defendants insureds and claimants are not the parties sought to be held liable for repair costs under the complaint.   Whether or not any such contracts exist does not provide a basis for dismissal of the claim under Arizona law.   The Arizona courts have specifically spoken on this issue, finding the purported existence of a contract between a plaintiff and third party does not preclude unjust enrichment recovery against a named defendant.   *Commercial Cornice & Millwork, Inc.*, 739 P.2d at 1355, 1356.   In *Commercial Cornice*, the Arizona Court of Appeals specifically reversed a trial court for dismissing a restitution claim on the grounds set forth by the Report.

With respect to the purported existence of contracts between any Plaintiff and any Defendant, the complaint specifically avers no such contract exists.   Having so averred, the Report's conclusion perforce relies upon arguments of Defendants in their motions to dismiss and the Report's own unilateral decision such exists.

By looking outside the complaint for a basis to excuse Defendants from liability, the Report relies upon the affirmative defense of a contract.   *Boldstar Tech., LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1291 (S.D. Fla. 2007).   See also, *Green v. Amjak Enterprises, Inc.,* No. 2:06CV264FTM29SPC, 2006 WL 2265455, at *2 (M.D. Fla. Aug. 8, 2006).   The court is prohibited from applying an affirmative defense which does not plainly appear on the face of the complaint.

*Twin City Fire Ins. Co.*, 609 F. App'x 972, 976-77 (11th Cir. 2015). As the contents of the complaint directly contradict any such thing, the conclusion there exists a contract is clearly an improper application of an affirmative defense.

The Report doubly errs by not only assuming the existence of a contract affirmatively negated in the complaint, it does so without even knowing the contents of the purported contract, whether the contract terms cover the present controversy, or whether the contract is even valid and enforceable. The Report, again in direct contradiction to the contents of the complaint, makes the negative inference conclusion that some contract exists with unknown terms, entered by undetermined parties but should nonetheless be applied to preclude the unjust enrichment claim.

The Arizona District Court has already ruled on a similar matter and found an unjust enrichment claim may <u>not</u> be dismissed simply because a defendant has argued the existence of a contract in a motion in contradiction of the contents of the complaint. *Burge v. Freelife Int'l, Inc.*, 2009 WL 3872343, at *5 (D. Ariz. Nov. 18, 2009).

The Report therefore makes multiple errors of law and fact to reach its conclusions. Plaintiffs submit the Report cannot be adopted as to this claim.

10.    <u>Shotgun pleading</u>

As with the tortious interference claim, the Report concludes the unjust enrichment claim must be dismissed due to improper shotgun pleading. As the erroneous grounds for this conclusion apply with equal force to the unjust enrichment claim, Plaintiffs incorporate the argument set forth above so as to avoid unnecessary duplication.

11.    <u>Group Pleading</u>

-24-

As with the tortious interference claim, the Report concludes the unjust enrichment claim must be dismissed due to improper shotgun pleading.  As the erroneous grounds for this conclusion apply with equal force to the unjust enrichment claim, Plaintiffs incorporate the argument set forth above so as to avoid unnecessary duplication.

    12.   <u>FAC Should not be dismissed with prejudice</u>

As part of the discussion on why the above claims should be dismissed with prejudice, the Report notes at various points that given the amount of time Plaintiffs have had to develop their case, it is unlikely they will be able to ever do so and thus recommends dismissal with prejudice. This is an inaccurate representation for several reasons.

In March, 2015, all Plaintiffs in MDL 2557 filed a motion to stay action on all cases pending resolution of the motions to dismiss which were then fully briefed pursuant to the motions instructions given by the Court on September 11, 2014. The motion was denied.  However, the Court clearly stated that each case was sufficiently dissimilar, particularly as to matters of state law, that a ruling in one case did not signify an identical ruling would be forthcoming in other cases and so each case should await independent review. See Order, Doc. No. 175 of MDL Docket No. 6:14- md-2557, dated April 3, 2015.  The Plaintiffs took the Court at its word and proceeded individually.

The complaint at issue has been amended for content only once.  The amount of time which has passed since the amended complaint was filed, six months, has been dedicated to motion practice and awaiting the Court's decision, in direct compliance with the Court's April 3, 2015, order.  The Report seeks to dismiss the complaint, in part, based upon that very compliance.

The Report is also rather misleading on this point. The Plaintiffs were directed to amend

the complaint and did so in compliance with the order. That no amendment was filed during the pendency of the motions to dismiss is not indicative of lack of diligence, and the Court is fully aware of that. While complying with the order to await the Court's decisions, the Plaintiffs have continued working on all aspects of the case, which led to, among other things, the direct admissions of price fixing and intentional misrepresentation of the "market rate."

Since the Court ordered the Plaintiffs not to make assumptions regarding the outcome of individual cases, the Plaintiffs justifiably awaited the individualized handling the Court advised was forthcoming. Plaintiffs submit their fidelity to the directions of the Court should not be used as a basis for assuming dismissal with prejudice is appropriate, particularly where, as here, the bulk of the time interval was spent awaiting the Court's ruling.

13. <u>Legal Authority</u>

In the event the Court determines to adopt the Report and Recommendation, for purposes of creating a clear record, the Plaintiffs respectfully request the Court provide the following:

- Identification of Arizona authority overruling or modifying the existing law that unjust enrichment does not require a request for services from a defendant;

- Identification of Arizona authority requiring all instances of tortious interference must be identical for a cognizable claim of tortious interference with business prospects may lie;

- Identification of Arizona authority holding partial payment of a debt for services extinguishes all legal rights to seek payment of outstanding balance due;

- Identification of Arizona authority holding a defendants' unilateral course of conduct defeats an unjust enrichment claim as a matter of law;

- Identification of Arizona authority holding a defendants' unilateral course of conduct executed by

coercion and/or duress defeats an unjust enrichment claim as a matter of law;

•

Identification of Arizona authority holding determination of reasonable value for services rendered is a question of law, not fact;

•

Identification of Arizona authority holding determination of reasonable value for services rendered is a question of law the court may decide prior to discovery and submission of evidence of value;

•

Identification of Arizona authority holding unilateral conduct by a defendant constitutes an affirmative act of waiver of legal rights and/or creates an estoppel;

•

Identification of federal authority overruling or modifying *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007);

•

Identification of federal authority prohibiting pleading upon information and belief;

•

Identification of federal authority permitting a district court to make credibility determinations of a complaint's allegations where the allegations do not impeach the every day reality standard mandated by the Supreme Court in *Iqbal,* e.g., "claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel.";

•

Identification of federal authority permitting a trial court to apply the law of Florida to an Arizona state law cause of action;

•

Identification of federal authority providing a court may infer the existence of shotgun pleading in the absence of any incorporation by reference and render dismissal based upon that inference;

•

Identification of federal authority permitting a court to dismiss claims based upon application of an affirmative defense(s) that are contradicted by the allegations of the complaint;

•

Identification of federal authority permitting a court to affirmatively adopt the arguments of defendants set forth in motions to dismiss when the allegations of the complaint directly contradict those arguments.

Based upon the authority set forth above, Plaintiffs respectfully object to the Report and Recommendation issued in this cause, Doc. No. 108.

Respectfully submitted, this the 16th day of May, 2016.

> **LEGENDS COLLISION CENTER, LLC, et al**
>
> BY: \_\_\_\_/s/ Allison P. Fry\_\_\_\_
> John Arthur Eaves, Jr.
> Allison P. Fry
>
> Attorneys for the Plaintiffs

John Arthur Eaves,
Attorneys at Law
101 N. State Street
Jackson, MS 39201
Telephone:      601.355.7961
Facsimile:      601.355.0530
allison@eaveslaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically on the 16th day of May, and will be served upon all ECF-registered counsel by operation of the Court's electronic filing system.  Parties and counsel may access this filing through the Court's system.

*/s/ Allison P. Fry*