## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**LEGENDS COLLISION CENTER, LLC, et al.**

**PLAINTIFFS**

**VS.**                                             **CAUSE NO. 6:14-CV-6006**

**STATE FARM MUTUAL AUTOMOBILE**
**   INS. CO., et al**                                   **DEFENDANTS**

---

## MOTION TO RECONSIDER

---

Come now, Plaintiffs in the above-captioned cause, and file this, their Motion to Reconsider and state to the Court the following:

1.      In Document No. 119, the trial court issued an order dismissing the Plaintiffs' claims with prejudice.

2.      Plaintiffs respectfully submit the dismissal results in a substantial injustice, as it rests upon an incorrect application of law and factual inaccuracies.   This provides grounds for reconsideration.  *Lamar Advertising of Mobile, Inc. v. City of Lakeland, Fla.*, 189 F.R.D. 480, 489 (M.D. Fla. 1999).

### PRICE FIXING

3.      The complaint contains direct admissions of price fixing by representatives of two different defendants.  The trial court stated the Plaintiffs relied upon the assertions of pages 63 and 64 of the complaint as this direct evidence then found the contents of those pages  irrelevant to a price fixing claim.  Though not explicitly stated, the order implies that incorrect citation to the complaint in Plaintiffs' motion response is a ground for granting dismissal.

4.      Respectfully, this implied conclusion is incorrect.  Plaintiffs understand a court has no duty to scour a record for material disputed facts when passing on a motion for summary judgment, see, e.g.,  *Witbeck v. Embry Riddle Aeronautical Univ., Inc.*, 219 F.R.D. 540, 547 (M.D. Fla. 2004).  However, as the Middle District of Florida previously discussed at length, this is limited to certain motions under Rule 50 and 56 because of the burden of evidentiary allocation.  *Id.* at 546-48.

5.      In contrast, in passing on a motion to dismiss under Rule 12, the court must analyze the complaint for its contents.  A Rule 12 motion tests the complaint's contents to determine whether it provides the short and plain statement required under Rule 8. *Brooks v. Blue Cross & Blue Shield of Florida, Inc*., 116 F.3d 1364, 1368 (11th Cir. 1997).  The court then has a duty to actually read the complaint.  The order cites no authority it may disregard factual allegations that are not brought to its attention in response to a motion.

6.      However, the motion response <u>does</u> bring to the court's attention the relevant admissions of wrongdoing, though apparently with an incorrect pinpoint citation to the complaint. The court was thus fully aware these admissions exist in the complaint.  Within the complaint are set out the statements directly inculpating the Defendant insurers in an agreement to fix prices, including a statement from a Progressive defendant that the insurance companies set body shop rates as a group and disclosed when the next meeting to set rates was scheduled to occur.  (FAC, § 214.) A State Farm representative directly admitted State Farm deliberately suppresses labor rates, intentionally falsifies the so-called market rate, and State Farm committed each wrongful act ascribed to it in *State of Louisiana v. State Farm*, which included price fixing of parts procurement,

control of labor rates, limitation on necessary repair procedures and similar conduct.  (FAC, § 216-17.)

7.      Further, the complaint set out the admission of a USAA representative stating that State Farm–contrary to its public assertions–distributes the results of its so-called survey to the other defendant insurers, which then apply the same rates.  (FAC, § 215.)

8.      The complaint thus included direct admissions of price fixing and an unambiguous admission of information sharing and insurers' agreement to apply and enforce the manufactured market rate determined by State Farm.  The court found these admissions insufficient to adequately plead the price fixing claim because the informants were not identified, the statements were made at unspecified times and places to unidentified individuals, and without assurances the informants were in a position to know what they were talking about.

9.      Respectfully, these reasons for disregarding the contents of the admissions violate established authority.  As the court recognized, it is required to accept the allegations of the complaint as true.  *Renfroe v. Nationstar Mortgage, LLC*, 822 F.3d 1241, 1243 (11th Cir. 2016). The dismissal order cited no authority that this nondiscretionary duty only becomes operative upon the complaint's including additional facts the court subjectively determines its needs to provide supplementary support for the admissions.

10.     The requirement for such facts further violates the applicable pleading standard.  The court's demand for specific facts–names, dates, locations, and so forth–is not required under Rule 8 notice pleading. The Supreme Court has made clear such detailed factual pleading is not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555, 556 (2007).

11.     Further, not even in complaints subject to particularity pleading require disclosure of witness identities. *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 353 (5th Cir. 2002). As that Circuit has noted with respect to complaints subject to particularity pleading requirements, "the language requiring that "the complaint shall state with particularity all facts on which that belief is formed" . . . requires plaintiffs to plead only facts and makes no mention of the sources of these facts." *Id.* This has been recognized by the Eleventh Circuit. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1239 (11th Cir. 2008). See also, *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1325 (M.D. Fla. 2002).

12.     The reasoning for this is both plain and rational. "Imposing a general requirement of disclosure of confidential sources serves no legitimate pleading purpose while it could deter informants from providing critical information to investigators in meritorious  cases or invite retaliation against them." *ABC Arbitrage,* 291 F.3d at 352-53.   The complaint sets out the informants are employees of the specified defendant companies.  Disclosing their identity in the complaint leaves them vulnerable to coercion, tampering and retaliation by the defendant employers, the very things from which the court is supposed to protect them.  *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 307 (5th Cir. 1972).

13.     Further the Federal Rules do not require disclosure of witnesses until, at the earliest possible time, the exchange of initial disclosures at the commencement of discovery.  F.R.C.P. 26(a)(1)(A)(i).   The trial court cited no authority that permits it to demand disclosure of witnesses prior to discovery, or to dismiss a complaint for not identifying witnesses within it.

14.     As the present complaint is subject only to Rule 8 notice pleading, it cannot be held it must meet a pleading standard not even Rule 9 particularity pleading demands of a complaint. The

trial court cited no authority for its ruling and Plaintiffs respectfully submit that in the absence of such authority, the court's decision that failure to name names and other particularized factual pleading violates established Rule and authority.

15.     The district court also declined to act on information already within its possession. The district court has multiple pleadings filed in this and companion cases which notify the court of the time frame when the admissions were obtained.  The court may and should act on information available in other filings. *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006).  By refusing to do so, the court has effectively built for itself a Chinese wall without basis for doing so.

16.     If the trial court believed additional information was necessary to establish the ability of the informants to know the truth of their own assertions, the court should have so advised of this and given Plaintiffs an opportunity to provide it.  The direct admissions of price fixing were new to the amended complaint; they did not exist when the original complaint was filed, therefore the Plaintiffs were never placed on notice the court found the background information insufficient.[1]

17.     If a plaintiff has no reason to know of a purported deficiency, dismissal with prejudice on those grounds constitutes an abuse of discretion and reversible error.  *Bryant v. Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001).  Thus, at a minimum, the court should have allowed Plaintiffs to amend to provide the background information it found lacking.

---

[1]While the court's dissatisfaction with the direct admissions of wrongdoing has been raised in companion cases, Plaintiffs here point out the court rested its dissatisfaction upon Plaintiff's failure to attach affidavits or transcripts of these admissions to the complaint.  While this is itself error, as a plaintiff is not required to produce evidence as part of a complaint (*SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 431 (4th Cir. 2015),  it is not the same error identified for the present complaint.

18.     The district court also dismissed with prejudice on the ground that neither the direct admissions nor the circumstantial evidence of agreement "establish that the Defendants have entered into an agreement to fix prices."  Respectfully, the complaint is not required to establish anything. All the complaint is required to do is set forth a short and plain statement of the facts giving rise to the cause of action.  In this case, all that is required of the Plaintiffs is to set forth facts <u>suggesting</u> the existence of an agreement.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

19.     The court's conclusion the complaint fails to establish the violations of law asserted places upon the complaint the requirement that it prove the case.  That is not the law.   It is not necessary for a complaint to allege specific facts that conclusively establish a right to relief, not even in cases requiring Rule 9 particularity pleading.  *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313 (11th Cir. 2002).  See also, *Brock v. U.S. Steel Corp.*, 2010 WL 405620, *1 (N.D. Ind., 2010)(citing *Erickson v. Pardus*, 551 U.S. 89, 127 (2007)), *Rankow v. First Chicago Corp.*, 870 F.2d 356, 366 (7th Cir. 1989).

20.     A complaint is not even required to establish a prima facie case, much less conclusively establish the right to relief.  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002),  *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003).[2]

---

[2]See also, *Marks v. CDW Computer Centers, Inc.*, 901 F. Supp. 1302, 1308 (N.D. Ill. 1995): "In reviewing the claims here, we keep in mind that the plaintiff is not required to prove that he can win on the pleadings, but only that his allegations are sufficient to state a cause of action." <u>Rankow, et al., v. First Chicago Corp., 870 F.2d 356, 366 (7th Cir.1989)</u>.

21.    The trial court's requirement that the complaint must establish the right to relief thus violates established law.   The dismissal order provided no authority permitting dismissal upon the ground the complaint fails to establish the right to relief, or imposes any burden other than that set forth in the Federal Rules of Civil Procedure and their interpretive case law, including *Twombly* and *Swierkiewicz*.

22.    The trial court further found that all the complaint alleged was conscious parallelism. However, the only manner in which the court could reach this conclusion is by disregarding facts alleged, and drawing inferential conclusions favorable to defendants rather than plaintiffs, which it is not permitted to do.   For example, the trial court gave no heed to the admission of the USAA representative, who explicitly stated that State Farm circulates its purported survey results to other insurers which then impose them as the so-called market rate.   See FAC, ¶ 215.

23.    As this allegation does appear in the complaint, the court was required to accept it as true, which precludes the conclusion the insurers engaged only in conscious parallelism.   Conscious parallelism requires that each defendant reach a conclusion independently of each other.   The USAA representative's admission precludes reaching such a conclusion–it specifically states State Farm circulates its so called market rate to other insurers and the other insurers adopt and impose this rate. As the court is required to accept as true that State Farm circulates "market rates" to other insurers, it cannot simultaneously conclude the insurers acted independently, unless it chooses to draw the negative inference that despite having received State Farm's new "market rates," each insurer simply ignored it but nonetheless by happenstance reached an identical, independent conclusion without ever performing a market study to determine market rates, and independently reached identical "market rates" which are contradicted by actual rates.

24.     But again, the court is not permitted to draw inferences unfavorable to the plaintiff. Even assuming the scenario described above were feasible, which is highly unlikely, the court is not permitted to choose an inference that would result in dismissal when there exists an inference that would preclude such a result. *Mann v. Adams Realty Co., Inc.*, 556 F.2d 288, 294 (5th Cir. 1977).

25.     In this case, there are no inferences to be drawn. The USAA representative stated unequivocally that State Farm circulates its market rate to other insurers and they act upon that information by adopting and imposing the State Farm rate ceiling.

26.     Further, to evade liability, parallel conduct requires that conduct not only be independent, it must be a response to common market conditions of which all defendants are aware. *In re Musical Instruments & Equip. Antitrust Litig*., 798 F.3d 1186, 1193 (9th Cir. 2015). The facts alleged in this case do not permit the conclusion the court reached as it specifically states, repeatedly, that the body shop market does not exist as the insurers allege–that prices for all aspects of the repair process–labor, parts, paint, materials, supplies and administrative costs–are consistently higher than acknowledged by the insurer defendants. It cannot be said, and it certainly cannot be said with dispositive authority, that the insurers are responding to common market conditions which do not actually exist in the body shop industry. The only manner the court could reach the conclusion it did was to disregard the facts alleged in the complaint, to assume the Plaintiffs were lying in their description of rates and repair requirements, which the court was not permitted to do.

27.     The dismissal order thus refuses to acknowledge multiple asserted facts which directly contradict its conclusions. The order, however, does not provide any authority which permits it to ignore facts alleged, or discount their importance.

28.     The same errors of law were committed in the court's findings with respect to plus factors.  Having already decided the direct admissions of price fixing were insufficient to establish the statutory violations alleged, the trial court ignored them in the discussion of plus factors, which, again, it is not permitted to do under binding Supreme Court authority. *Continental Ore Co. v. Union Carbide & Carbon Corp*., 370 U.S. 690, 699 (1962)(abrogated by statute on other grounds).

29.     The court again imposed the requirement that the plus factors "establish the existence of an agreement . . ."  The complaint is not required to establish or conclusively show a right to relief, merely give fair notice of the claim to the defendants.

30.     Further, for reasons not stated, the order implies that only plus factors set out in *Twombly* were cognizable plus factors, and/or that authority recognizing plus factors "predat[ing] *Twombly*" was somehow not legitimate.   The court provided no authority for this approach.

31.     The court also appears to have approached the case cited in the Plaintiffs' opposition to dismissal as if it is the only authority recognizing the plus factors the court appears to have found suspect, or that *Twombly* somehow overruled these plus factors.  This is incorrect.  These plus factors are continually recognized across the judiciary, both before and after *Twombly.*  See, *Hyland v. HomeServices of Am., Inc*., 771 F.3d 310, 315 (6th Cir. 2014), *In re Travel Agent Comm'n Antitrust Litig*., 583 F.3d 896, 907 (6th Cir. 2009), *In re Pool Prod. Distribution Mkt. Antitrust Litig.,* 988 F. Supp. 2d 696, 711 (E.D. La. 2013), *Advanced Tech. Corp. v. Instron, Inc.,* 925 F. Supp. 2d 170, 178 (D. Mass. 2013), *Cason-Merenda v. Detroit Med. Ctr.,* 862 F. Supp. 2d 603, 629 (E.D. Mich. 2012), *Fleischman v. Albany Med. Ctr.*, 728 F. Supp. 2d 130, 161 (N.D.N.Y. 2010), *Merck-Medco Managed Care, Inc. v. Rite Aid Corp*., 22 F. Supp. 2d 447, 469 (D. Md. 1998).

32.     Further, *Twombly* itself made clear the plus factors set out within that opinion did not

constitute the universe of possible plus factors, but were merely examples and did so explicitly in

reliance upon authority pre-dating that ruling.  *Twombly*, 550 U.S. at 556 and FN 4.

33.     The trial court provided no authority for its apparent conclusion that the plus factors

set out in the complaint and authority relied upon in pleadings has somehow been overruled or

otherwise discredited.

34.     The court also erred in its conclusion that "a common motive to fix prices and the

ability to share price information are both likely prerequisites to a price-fixing conspiracy, the

existence of either (or both) is not enough to tip the scales from parallel behavior to collusion."

35.     This is a legally incorrect conclusion.  The existence of  plus factors in conjunction

with parallel conduct is exactly what meets the requirement of suggesting the existence of an

agreement.  See, *In re Publ'n Paper Antitrust Litig*., 690 F.3d 51, 62 (2d Cir. 2012).  All that is

required, if a plaintiff were relying solely upon parallel conduct, is to allege parallel conduct and at

least <u>one</u> plus factor.  *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc*., 709 F.3d 129, 137

(2d Cir. 2013), *In re Ins. Brokerage Antitrust Litig*., 618 F.3d 300, 323 (3d Cir. 2010).

36.     The dismissal order effectively holds that even when a complaint does allege parallel

conduct and recognized plus factors, it is de facto insufficient for the stated reason that if that were

all that was required then all antitrust complaints would survive dismissal.  Respectfully, the law

holds that <u>is</u> all that is required. See, authority, supra.  The court thus dismissed the complaint on the

grounds that it successfully set out everything it was required to set out.

37.     In this case, the complaint set out multiple plus factors which the trial court declined

to acknowledge in addition to the two discussed above.  These included actions contrary to their

interests if taken independently (FAC, ¶¶ 405-409), substantive control of market share (FAC, ¶¶ 77-83, 178), exchanging information (FAC, ¶¶ 215, 228), conduct which is unlikely to be the result of chance, coincidence or independent decision (see, e.g., FAC ¶¶ 435-441), and making uniform price structure changes contemporaneously (FAC, ¶¶ 223-28, 435).

38.     With respect to the particular plus factors alleged in the complaint, authority across the judiciary contradicts the trial court's ruling.  See *In re London Silver Fixing, Ltd., Antitrust Litig.*, 2016 WL 5794777, at *16 (S.D.N.Y. Oct. 3, 2016)(parallel conduct in conjunction with common motive to conspire and instances of actions against self-interest sufficient to allege price fixing cause of action); See also, *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th Cir. 2010)(parallel conduct with allegations of common motive, opportunity to conspire and information sharing sufficient to allege price fixing cause of action),  *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 988 F. Supp. 2d 696, 716 (E.D. La. 2013), *Brown v. Cameron-Brown Co.*, 1980 WL 1856, *6 (E.D. Va. 1980)(parallel conduct with allegations of common motive to conspire and opportunity to conspire sufficient to allege price fixing cause of action)(denial of motion to dismiss affirmed, reversed on other grounds,  652 F.2d 375 (4th Cir. 1981)).

39.     Further still, information sharing has been identified as a super plus factor, plus factors which, when pled, present the strong inference of collusive conduct.  William E. Kovacic, PLUS FACTORS AND AGREEMENT IN ANTITRUST LAW, Vol. 110: 393, 397, 423-24, Mich. Law. Rev. (December 2011).   Thus, information sharing, which this court dismissed as unimportant, is considered substantially probative of collusion.

40.     From any and all points of analysis, the district court applied incorrect or no authority to its handling of plus factors.  As the dismissal fails to account for specifically pled facts which contradict the court's conclusions, and relies upon misapplication of authority, or no authority in the face of contradictory extant law, the Plaintiffs respectfully submit reconsideration is both necessary and appropriate.

**BOYCOTTING**

41.     The dismissal order gave two reasons for finding the boycotting claim insufficiently pled: (1) the complaint does not allege "that one or more of [the Plaintiffs] refused to accept State Farm's market rate and, in response, the Defendants began badmouthing the noncompliant shops."; and (2) there are no allegations that the Defendants have engaged in a concerted refusal to deal with any of the Plaintiffs' shops, ever."

42.     Both of these conclusions are demonstrably factually inaccurate, and demonstrably legally insupportable.

43     With respect to the former, the FAC is replete with allegations of the very thing the order claims is missing–the defendants boycott the Plaintiffs for refusing to quietly submit to the State Farm-created fixed price ceilings, or even attempting to negotiate rates:

> In ¶ 72:     boycotting Plaintiffs' businesses; and/or steering customers away from Plaintiffs and similarly situated body shops for refusing to comply with fixed prices[.]

> In ¶ 74:     The purpose of Defendant insurers' illegal combination and/or utilization of aggregated market power is to eradicate competition within the automobile repair industry so as to create a system that rewards body shops for cutting corners, which ensures that Defendant insurers maximize profits, and that punishes body shops—such as Plaintiffs' businesses—that are unwilling to compromise the quality and safety of American consumers' repair to comply with Defendant insurers' demands.

In ¶ 180:     Further, when body shops have attempted to negotiate with Defendant insurers, Defendant insurers have responded with threats of pecuniary harm, retaliation, boycotting and coercion[.]

In ¶ 203:     Instead, upon receiving rate information that they unilaterally determine to be too high, State Farm Defendants contact the individual body shop and command (through threats to the body shop's pecuniary harm, retaliation, boycotting and coercion) the shop to lower its rates or they unilaterally alter the shop's rate information without consent.

In ¶ 293:     Steering is the practice of convincing or attempting to convince a consumer to withhold patronage from an auto repair shop for failing to comply with the insurers' demands (typically, relating to lowering labor rates or usage of aftermarket or salvaged parts).

In ¶ 296:     Defendant insurers have engaged in the widespread, comprehensive, and uniform practice of steering, or threatening to steer, Plaintiffs' customers and/or Defendant insurers' insureds and/or claimants away from Plaintiffs' shops and to a preferred or captive auto repair shops as a means of financially punishing Plaintiffs for noncompliance with Defendant insurers' demands relating to, inter alia, labor rates, parts sourcing and pricing, procedures and processes utilized and/or billed, and paint and materials costs.

In ¶ 406:     A single insurer engaging in the actions described in this Complaint would generate such a small effect upon the large investments of the Defendant insurers that it would not noticeably alter investment returns. An increase in the number of insurers facilitating coordination of price fixing of labor rates and replacement parts, compelling use of substandard or dangerous replacement parts, compelling use of parts procurement programs, and boycotting body shops or illegally steering consumers away from body shops, including Plaintiffs' shops, that refuse to comply with either fixed prices or use of substandard or improper parts, results in an increase in the profit for all.

In ¶ 449:     Defendant insurers have actively participated in, and gained economic advantage from, a common scheme, agreement, or conspiracy designed to pressure, intimidate, and/or coerce each of the Plaintiffs into complying with the Defendants' price-fixing scheme. This common scheme constitutes a continuing agreement, understanding, combination, and/or conspiracy to unreasonably restrain trade, so as to limit or exclude Plaintiffs' and customers' participation in the market.

In ¶ 452:    Defendant insurers have enlisted, and continue to enlist, third-party consumers in need of auto repairs as unwitting participants in Defendant insurers' common scheme to coerce and punish Plaintiffs.

In ¶¶ 453 and 454:    Evidence of Defendant insurers' concerted boycotting against insurers includes, but is not limited to: all Defendant insurers making the same false statements, fraudulent misrepresentations and misleading innuendos about Plaintiffs to consumers who have identified Plaintiffs as their intended repair facility; refraining from disclosing quality of repair issues at preferred, compliant shops, such as Service King; timing of boycotting to engage with intentional punishment directed by one or two insurers and enlisting the other Defendants into boycotting a particular Plaintiff at the same time.

Defendant insurers' ongoing conduct in furtherance of the common scheme to boycott, and thereby coerce and/or punish Plaintiffs, has had substantial negative impact on the Plaintiffs' business practices and relationships, the ability of customers to freely obtain safe and full repairs, and the functionality of the relevant market.

In ¶ 465:    The purpose of these actions was twofold: to punish the Plaintiffs who complained about or refused to submit to the various oppressive and unilateral price ceiling the Defendant insurers were enforcing upon them, and to direct potential customers of the Plaintiffs to other vendors who would comply with the maximum price ceilings that Defendant insurers unilaterally imposed.

44.    In addition to these specific statements asserting the defendants boycotting was the result of refusal to submit to fixed prices, the complaint provides the affidavit of a former Progressive employee which specifically stated Progressive steers (boycotts) customers away from shops which buck the system as punishment for noncompliance.  The FAC also sets out dozens of pages of specific examples of the boycotting conduct described in the complaint.

45.    The order's conclusion, then, that the FAC fails to allege the identified cause and effect is demonstrably inaccurate.

46.     The order's second conclusion is legally impermissible.  The court's statement

that the complaint fails to allege the Defendants engaged in a concerted refusal to deal is

somewhat ambiguous.  It is unclear whether the court meant to express the notion that the

complaint must allege the defendants directly (as opposed to use of an intermediary party)

refused to deal with the Plaintiffs, or that the boycotting was unsuccessful and therefore the claim

insufficiently pled.  Given the court's next sentence after reaching this conclusion–"to the

contrary, the First Amended Complaint is replete with assertions that the Plaintiffs are continuing

to repair vehicles owned by the Defendants' insureds and, indeed, could not survive financially if

they did not do so"–the Plaintiffs are inclined to believe the court meant the latter. This belief is

supported by the court's previous orders which specifically stated that because the alleged

boycott was unsuccessful, the claim must fail. However, which of these the court intended, both

are prohibited conclusions.

47.     The definition of a boycott includes the withholding <u>or</u> the enlistment of third

parties to withhold patronage or services from the target. *St. Paul Fire & Marine Ins. v. Barry*,

438 U.S. 531, 541 (1978)(emphasis added).  There are thus two paths a boycott–a refusal to

deal– can take: the perpetrators can directly withhold their own patronage from the target, or the

perpetrators can enlist others to withhold their patronage from the target.[3]

48.     The FAC states that the path taken by the defendant insurers was enlistment of

third parties to withhold patronage.  FAC, ¶ 452.  The FAC further provides dozens of pages of

---

[3]Certainly a boycott can take both paths, as well, instead of only one, but such is not
required, as use of the word "or" in the Supreme Court's ruling establishes.

examples showing the boycotting efforts by the Defendants to persuade, coerce or financially

intimidate consumers into withholding their patronage from the Plaintiffs' shops.

49.     Thus, the complaint more than adequately alleges one of the two methods by

which a refusal to deal may be executed.  To the extent the dismissal order intended to state that

the insurers must themselves refuse to deal with the Plaintiffs, the order is demonstrably legally

infirm.  The district court cited no authority for the proposition that it is permitted to discard one

of the methods of establishing a boycott under the Sherman Act.

50.     With regard to the second interpretation, it is beyond cavil that success of a

boycott is not an element of the claim.  The Supreme Court cannot have made this more clear.  A

Sherman Act § 1 violation is complete with the formation of the agreement.  No act in

furtherance of the agreement need ever be taken, and a plaintiff need never provide proof beyond

the agreement itself for liability to be imposed.  This has been the Supreme Court's ruling since

the dawn of antitrust litigation, whether civil or criminal, and it has been followed by the

appellate courts which constitute binding authority over this court.  *Summit Health, Ltd. v.

Pinhas*, 500 U.S. 322, 330 (1991), *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 252

(1940), *Nash v. United States*, 229 U.S. 373, 378 (1913), *United States v. Flom*, 558 F.2d 1179,

1183 (5th Cir. 1977).

51.     This is further reflected in the Eleventh Circuit's jury instructions for Sherman

Act § 1 claims, which note:   the  ultimate success or failure of the conspiracy to accomplish its

purpose does not matter, so long as the Plaintiff sustained some damage as a result of the

conspiracy.  Eleventh Circuit  Pattern Jury Instruction 3.1.  See also Fifth Circuit Pattern Jury

Instruction 6.1

52. Thus, no Sherman Act plaintiff is required to plead or prove the success of a § 1 claim. Dismissal predicated upon a failure to show success of a boycott is therefore legally infirm. The order provides no authority to support the dismissal on this ground, which does, in fact, violate extant legal authority.

53. As neither stated ground for dismissal of the claim is permitted under existing binding law, the Plaintiffs respectfully submit that predicating dismissal upon grounds which are demonstrably factually and legally incorrect constitutes a significant injustice and reconsideration of the dismissal is appropriate.

54 In the event the court declines to reconsider its dismissal in light of the forgoing, the Plaintiffs respectfully request the court provide the following in its order:

- Federal authority permitting a district court to demand supplementary evidence before accepting the allegations of the complaint as true;
- Federal authority permitting a district court to require detailed factual pleading for causes of action subject to Federal Rule of Civil Procedure 8 notice pleading;
- Federal authority permitting a district court to dismiss a complaint for failing to specifically identify witnesses within the complaint;
- Federal authority permitting a district court to dismiss a complaint on the grounds that it did not conclusively establish a right to relief;
- Federal authority permitting a district court to disregard allegations in a complaint that directly contradict the stated grounds for dismissal;
- Federal authority permitting a district court to select inferences favorable to defendants in passing on a motion to dismiss;
- Federal authority permitting a district court to dismiss an antitrust complaint that includes parallel conduct and multiple recognized plus factors;
- Federal authority which holds that only the plus factors described in *Twombly* are permitted considerations, and/or plus factors recognized in authority which pre-dates *Twombly* are no longer valid;
- Federal authority prohibiting use of third parties to effectuate a boycott under the Sherman Act;
- Federal authority requiring a direct communication of refusal to deal from boycotter to target to adequately plead a Sherman Act boycott cause of action;
- Federal authority requiring success of a boycott to adequately plead a Sherman Act boycott cause of action.

Respectfully submitted, this the 9th day of January, 2017.

**LEGENDS COLLISION CENTER, LLC, et al.**

BY:    /s/ Allison P. Fry
          Allison P. Fry
          John Arthur Eaves, Jr.

          John Arthur Eaves, Attorneys at Law
          101 N. State Street
          Jackson, MS 39206
          Tel:    601.355.7961
          Fax:    601.355.0530
          Allison@eaveslaw.com
          Johnjr@eaveslaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically on the 9th day of January, 2017, and will be served upon all ECF-registered counsel by operation of the Court's electronic filing system.  Parties and counsel may access this filing through the Court's system.

/s/ Allison P. Fry