# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

LEGENDS COLLISION CENTER, LLC, et al.,

      Plaintiffs,

v.                                                                 Case No: 6:14-cv-6006-Orl-31TBS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

      Defendants.

_____

## ORDER

This matter comes before the Court without a hearing on the Motion for Reconsideration (Doc. 122) filed by the Plaintiffs and the responses in opposition (Doc. 124-125) filed by various groups of Defendants.   The Plaintiffs seek reconsideration of this Court's order of December 22, 2016 (Doc. 119), adopting the Report and Recommendation of the Magistrate Judge (Doc. 108) and dismissing with prejudice the First Amended Complaint (Doc. 93).

    **I.**    **Legal Standard**

The federal rules do not specifically provide for the filing of a "motion for reconsideration."  *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991), cert. denied, 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992).   However, it is widely recognized that Rule 59(e) encompasses motions for reconsideration.   11 Charles Alan Wright, et al., *Federal Practice & Procedure* § 2810.1 (3d ed.).   In the interests of finality and conservation of scarce judicial resources, reconsideration is an extraordinary remedy, to be employed sparingly.   *U.S. v. Bailey*, 288 F.Supp.2d 1261, 1267 (M.D. Fla. 2003).   A busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.

*Nat. Leasing, Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982).[1]   The decision to alter or amend a

judgment is committed to the sound discretion of the district court.  *O'Neal v. Kennamer*, 958

F.2d 1044, 1047 (11th Cir. 1992).   Appropriate circumstances for reconsideration include

situations in which the Court has obviously misapprehended a party's position, the facts, or

mistakenly has decided an issue not presented for determination.  *Anderson v. United Auto

Workers*, 738 F.Supp. 441, 442 (D. Kan. 1990).

 Generally speaking, the authorities recognize four basic grounds upon which a Rule 59(e)

motion may be granted.

> First, the movant may demonstrate that the motion is necessary to
> correct manifest errors of law or fact upon which the judgment is
> based.   Second, the motion may be granted so that the moving party
> may present newly discovered or previously unavailable evidence.
> Third, the motion will be granted if necessary to prevent manifest
> injustice.   Serious misconduct of counsel may justify relief under
> this theory.   Fourth, a Rule 59(e) motion may be justified by an
> intervening change in controlling law.

11 Charles Alan Wright, et al., *Federal Practice & Procedure* § 2810.1 (3d ed.).

 Parties cannot use a Rule 59(e) motion to relitigate old matters, *Michael Linet, Inc. v.

Village of Wellington, Fla*., 408 F.3d 757, 763 (11th Cir. 2005), or to raise new legal arguments

which could and should have been made during the pendency of the underlying motion, *Sanderlin

v. Seminole Tribe of Florida,* 243 F.3d 1282, 1292 (11th Cir. 2001).   Where a party attempts to

introduce previously unsubmitted evidence in support of a motion to reconsider, the party must

make some showing that the evidence previously was unavailable.  *Mays v. U.S. Postal

Service*, 122 F.3d 43, 46 (11th Cir. 1997) (citing, *inter alia*, *Engelhard Indus. v. Research

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the
United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions
of the former Fifth Circuit handed down prior to October 1, 1981.

*Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963), *cert. denied*, 377 U.S. 923, 84 S.Ct. 1220, 12 L.Ed.2d 215 (1964)).   To avoid repetitive arguments on issues already considered fully by the court, rules governing reargument are narrowly construed and strictly applied.   *St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd.*, 976 F.Supp. 198 (S.D. N.Y. 1996).

## II.   Analysis

The Court dismissed the Plaintiffs' price-fixing claim (Count I) after finding that the First Amended Complaint did not include sufficient factual allegations to suggest that the Defendants had entered into an agreement to fix prices.   (Doc. 119 at 13).   The Plaintiffs assert that Count I should not have been dismissed because the First Amended Complaint included certain "admissions of wrongdoing" that the Court failed to consider.   (Doc. 122 at 2).   As the Plaintiffs implicitly admit, at least one reason the Court failed to consider them is that the Plaintiffs failed to bring them to the Court's attention in its response to the motion, citing instead to a different portion of the First Amended Complaint.   The Plaintiffs now argue that the Court was obligated to go beyond the arguments raised by counsel, scouring the (88-page) First Amended Complaint for allegations to support the Plaintiffs' arguments.   The Plaintiffs provide no citation to authority requiring the Court to act, in essence, as an advocate for a represented party.

If the Plaintiffs had properly identified the (additional) material on which they now seek to rely, it would have made no difference.   The Plaintiffs now point to paragraphs 214-217 from the First Amended Complaint as, in the Plaintiffs' words, "directly inculpating the Defendant insurers in an attempt to fix prices."   (Doc. 122 at 2-3).   However, when those four paragraphs are read in context with the paragraph that preceded them (which the Plaintiffs did not cite), it is clear that what is being asserted is not participation in an agreement to fix prices but instead – at worst – conscious parallelism, an issue addressed at length in the relevant order:

213. Despite the fact that State Farm Defendants go through elaborate efforts to keep the market rate survey results a secret and none of the other Defendant insurers perform market rates surveys, **every Defendant insurer refuses to pay more than what State Farm designates as the market rate**.

214. And, importantly, Defendant insurers' price fixing of labor rates is not limited to Arizona; rather, it occurs on a national scale. For example, in Pennsylvania, a representative of Progressive Defendants explained that body shops do not "affect pricing;" rather, the insurance companies get together to determine rates and that new rates would likely be determined at a "big meeting" that was scheduled in April 2015.

215. In Oklahoma, a representative of USAA Defendants told a body shop that USAA's rates would likely be increasing soon because the new State Farm survey result had just been circulated. Similarly, an Allstate Defendant representative in Georgia has stated that rates were contingent upon State Farm.

216. One of State Farm Defendants' agents admitted that State Farm Defendants deliberately suppress labor rates so that the "prevailing competitive price" is "whatever State Farm wants it to be." The agent further admitted that State Farm Defendants purposefully rely on out-of-date financial information, including labor rates that are "about twenty years old," for the market rate survey.

217. The same agent stated that the allegations in the Louisiana Attorney General's action against State Farm, *State of Louisiana, ex rel. Caldwell v. State Farm*, No. 6:14-cv-6017 … are true. Specifically, the agent stated that "we all do that," "every iota is the truth . . . when you read [the complaint], it's like, 'that's us.'"

(Doc. 93 at 40) (boldface added).   In the absence of an agreement to do so, it is not a violation of the antitrust laws for the other Defendant insurance companies to "refuse[] to pay more than what State Farm designates as the market rate."   Even after construing all reasonable inferences in favor of the Plaintiffs, these paragraphs do not include factual assertions that, taken as true, suggest that the Defendants entered into an agreement to set the prices that they would pay for auto repairs.   Most of the assertions in these paragraphs are concerned with State Farm setting its rates and the other insurers following along (as opposed to entering an agreement to do so).   But

even the assertions that could conceivably be interpreted as being about price-fixing – such as the paraphrased assertion that "insurance companies get together to determine rates" (Doc. 93 at 40) fall short of positively asserting the existence of an agreement and could have a benign explanation.   The assertions are entirely vague, and there is no way to tell the context in which they were made.   Moreover, the "representatives" are not identified – even by position – and therefore there is no way to assess whether the people making these assertions would have known of any price-fixing.[2]

The Plaintiffs' remaining arguments regarding Count I do not warrant extended discussion. The Plaintiffs complain that they were previously unaware of the deficiency of the aforementioned assertions, and that a dismissal with prejudice was therefore an abuse of discretion.   (Doc. 122 at 6).   But the deficiency that led to the dismissal was in regard to the allegations of an agreement to fix prices – a deficiency the Court has pointed out repeatedly and which the Plaintiffs have had numerous opportunities to correct.   The Plaintiffs object that the Court required them to "establish" the existence of an agreement, when all that is required is that they "merely give fair notice of the claim" to the Defendants.   (Doc. 122 at 6).   Not so.   Plaintiffs must provide enough factual allegations to raise a right to relief above the speculative level, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007).   Stating a claim under Section 1 of the

---

[2] The Plaintiffs complain that they should not be required to identify their witnesses at this stage of the proceedings (Doc. 122 at 4).   The Court did not suggest otherwise.   All that would be required is something to explain why the speaker possesses the information.   To put it another way, if one assumes that State Farm is part of a secret price-fixing conspiracy – with billions of dollars in penalties at stake if its existence were to be revealed – it seems exceedingly unlikely that every one of the tens of thousands of State Farm employees is let in on that secret.   Thus, merely saying that the speaker works for State Farm is not enough, on its own, to make that person's vague assertions about the conspiracy plausible.

Sherman Act requires "a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.   Beyond these points, the Plaintiffs spend numerous pages re-raising arguments already rejected by the Court in connection with the motions to dismiss.

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Reconsideration (Doc. 122) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 24, 2017.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party